UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,

      Debtors.

_____/

BANKUNITED FINANCIAL
CORPORATION, BANKUNITED
FINANCIAL SERVICES, INC., CRE
AMERICA CORPORATION, and BU
REALTY CORPORATION,

      Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as Receiver
of BankUnited, FSB,

      Defendant.

_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

Adv. No. 10-02872-LMI

**PLAINTIFFS' RESPONSE TO
FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION
PURSUANT TO FED. R. BANKR. P. 5011(c) TO STAY ADVERSARY PROCEEDING
PENDING RULING ON MOTION TO WITHDRAW THE REFERENCE
<u>WITH RESPECT TO ADVERSARY PROCEEDING No. 10-02872</u>**

**(Hearing Scheduled Wednesday, June 2, 2010 at 10:00 a.m.)**

Plaintiffs BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services,

Inc. ("**BUFS**"), CRE America Corporation ("**CRE,**" and together with BUFC and BUFS, the

"**Debtors**"), and BU Realty Corporation ("**BU Realty**," and together with the Debtors, the

"**Plaintiffs**"), respectfully respond to the Federal Deposit Insurance Corporation's Motion

Pursuant to Fed. R. Bankr. P. 5011(c) to Stay Adversary Proceeding Pending Ruling on Motion

to Withdraw the Reference With Respect to Adversary Proceeding No. 10-02872 (the "**Motion for Stay**").

**Background**

1.      Plaintiffs commenced this adversary proceeding on April 21, 2010 by filing a 22-count Complaint (D.E. #1) (the "**Bankruptcy Court Complaint**") against the Federal Deposit Insurance Corporation, in its capacity as receiver for BankUnited, FSB ("**FDIC-Receiver**").

2.      The Bankruptcy Court Complaint objects to the FDIC-Receiver's $4.9 billion proofs of claim filed in the Debtors' bankruptcy cases, and asserts multiple Counterclaims against the FDIC-Receiver seeking, without limitation, a declaratory judgment as to the estates' ownership interest in certain tax refunds, turnover of property, avoidance and recovery of preferences and fraudulent transfers, and other amounts due to the Plaintiffs.

3.      On the next day, April 22, 2010, Plaintiffs filed a separate Complaint (the "**District Court Complaint**") against the FDIC-Receiver in the United States District Court for the Southern District of Florida, commencing the civil action styled *BankUnited Financial Corporation, et al. v. FDIC*, Case No. 1:10-cv-21307-PCH (the **"District Court Action"**).[1]

4.      In the District Court Action, Plaintiffs seek the determination and allowance of claims filed in the receivership (the **"Receivership Claims"**) of BUFC's former banking subsidiary, BankUnited, FSB ("**BUFSB**") in the amount of not less than $414,930,952;[2] demand an accounting of the disposition of assets of the Receivership and of all property transferred from the Plaintiffs in connection with the Receivership; and demand that the FDIC-Receiver call a meeting of the shareholders of BUFSB to determine whether the FDIC-Receiver shall continue to wind up the affairs of BUFSB, or whether to elect a successor agent for that purpose.

---

[1] The FDIC misstates that Plaintiffs filed the District Court Complaint on the same day that they filed the Bankruptcy Court Complaint. This misstatement is material to the Court's stay analysis, as will be shown, which depends at least in part upon consideration of the sequence of the filings.

[2] The Receivership Claims are substantively identical to many of the claims asserted in the Bankruptcy Court Complaint.

2

5.      Both the Bankruptcy Court Complaint and the District Court Complaint assert both factually and legally complex causes of action, and with respect to Counts III-XXII, closely-related causes of action, potentially involving as much as several billion dollars.  In addition, Plaintiffs anticipate that this Court and/or the District Court may be required to resolve certain jurisdictional and other preliminary issues before the merits of the claims raised in the Bankruptcy Court Complaint can be addressed.

6.      On May 24, 2010, Plaintiffs filed their Motion for Summary Judgment as to Count I of Complaint, and Memorandum of Law in Support (the "**District Court Summary Judgment Motion**") in the District Court Action.  Count I of the District Court Complaint asserts that the Proof of Claims the Plaintiffs filed in the BUFSB receivership must be allowed by virtue of the FDIC-Receiver's failure to disallow it and provide notice to Plaintiffs of any such disallowance within the time period mandated by 12 U.S.C. § 1821(d)(5)(A)(i).  The FDIC-Receiver's response to the District Court Summary Judgment Motion is not yet due.

### Relief Requested

7.      On May 24, 2010, the FDIC-Receiver filed its Motion of the Federal Deposit Insurance Corporation, as Receiver of BankUnited, FSB, for the Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of the Adversary Proceeding Involving the Consideration of Title 12 of the United States Code (the "**Motion to Withdraw Reference**").  (D.E. #11).  On the next day, May 25, 2010, the FDIC-Receiver filed the Motion for Stay, to which this Response is directed.

### Argument

**I.      The Governing Standard.**

8.      Plaintiffs agree with the FDIC-Receiver that the applicable authority upon which to obtain a stay pending disposition of a motion to withdraw reference is Federal Rule of Bankruptcy Procedure 5011(c), which provides as follows:

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or

any proceeding therein before the bankruptcy judge *except that the bankruptcy judge may stay*, on such terms and conditions as are proper, proceedings pending disposition of the motion.

Fed. R. Bankr. P. 5011(c) (emphasis added).  Rule 5011(c)'s plain language makes clear that the grant of a stay pending disposition of a motion to withdraw reference is the *exception*, not the rule. [3]

9.      In seeking to invoke this exception the FDIC-Receiver paints with far too broad a brushstroke, conveniently ignoring the fact that the claims raised in the Bankruptcy Court Complaint fall into three separate categories.  See D.E. #1.  As further described below this distinction is particularly significant, in that, under 28 U.S.C. §157(d), the District Court may determine to withdraw the reference "in whole or in part."

10.      Although the Rule 5011(c) does not specify the standard to be used by this Court in deciding whether to stay proceedings pending a withdrawal motion, courts have applied the same standard used in determining whether to stay proceedings in other contexts.  *In re Nw. Inst. of Psychiatry, Inc.*, 268 B.R. 79, 83 (Bankr. E.D. Pa. 2001) (applying standard used for stay pending judicial review); *In re Eagle Enters.*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001) ("[m]otion for a stay pending decision on a motion for withdrawal of reference follows the same standards as any motion for stay"); *In re Interco, Inc.*, 135 B.R. 359, 361 (Bankr. E.D. Mo. 1991) (applying standard used for stay pending judicial review).

11.      In order to obtain a stay of proceedings, the movant must show that: (i) there is a substantial possibility of success on the merits of the motion to withdraw the reference; (ii) the movant will suffer irreparable injury if the stay is not granted; (iii) the non-moving party will not be harmed by the stay; and (iv) the public interest will be served by granting the stay.   The movant bears the burden of proof on all four factors, and the failure to meet the burden of proof on any of the four factors mandates the motion be denied.  *See In re Section 20 Land Group*, 252

---

[3]    Rule 5011 thus represents a reversal of the practice under the interim rule adopted after the Supreme Court's *Marathon Pipeline* decision.  Under the interim rule, a motion to withdraw the reference automatically stayed all activity on the subject of the motion in the Bankruptcy Court, and it was quickly understood that this rule had a seriously negative impact on the administration of bankruptcy cases.

B.R. 819, 821 (Bankr. M.D. Fla. 2000) (failure to satisfy even one prong of the standard justifies denial of a stay); *In re Lykes Bros. S.S. Co., Inc.*, 221 B.R. 881, 884 (Bankr. M.D. Fla. 1997). *In re Bob Hamilton Real Estate, Inc.*, 164 B.R. 703 (Bankr. M.D. Fla. 1994); *In re Charter Co.*, 72 B.R. 70, 71-72 (Bankr. M.D. Fla. 1987).  A movant *must establish each and every one of the four elements* in order to obtain a stay pending appeal.  *Charter Co.*, 72 B.R. at 72.[4]

## II.    The Motion to Stay Fails to Distinguish Among the Three Separate Elements of the Bankruptcy Court Complaint.

12.    As referenced above, the claims pleaded in the Bankruptcy Court Complaint fall into three separate categories.  Count I states an Objection to the $4.9 billion proof of claim filed by the FDIC-Receiver and docketed in the BUFC, BUFS and CRE Chapter 11 cases as claim no. 103, 6 and 1, respectively.  (D.E. #1:28-30).  Count II seeks a declaratory judgment, pursuant to 28 U.S.C. §2201 and Fed. R. Bank. P. 7001(2) and (9), that certain anticipated tax refunds are property of the BUFC estate pursuant to Section 541(a) of the Bankruptcy Code, and that the FDIC-Receiver holds no more than a general unsecured claim against the estate in respect of such refunds.  (D.E. #1:30)  Counts III through XXII of the Bankruptcy Court Complaint, (D.E. #1:31-38), raise various counterclaims against the FDIC-Receiver, including a series of basic claims arising under various provisions of the Bankruptcy Code such as turnover under Section 542 and avoidance and recovery of various transfers under Sections 544, 547, 548 and 550, and under general principles of state law.

13.    In determining whether to withdraw the reference "in whole or in part" under 28 U.S.C. §157(d) the District Court will be required to assess each element of these claims individually.  Particularly in addressing the critical factor of whether the FDIC-Receiver has a substantial likelihood of success on the merits of the Motion to Withdraw Reference, this Court's

---

[4] The first stay factor, *i.e.*, whether the applicant is likely to succeed on the merits, ordinarily "the most important" consideration, *Garcia-Mir v. Meese*, 781 F. 2d 1450, 1453 (11th Cir.), *cert. denied*, 479 U.S. 889 (1986), requires the movant to "present a substantial case on the merits when a serious legal question is involved."  *Ruiz v. Estelle*, 650 F. 2d 555, 565 (5th Cir. 1981), *cert. denied*, 460 U.S. 1042 (1983); *accord, e.g.*, *Garcia-Mir*, 781 F. 2d at 1453. The remaining three factors under the stay standard require the movant to demonstrate that a balancing of the equities favors a stay pending appeal.  *E.g.*, *Garcia-Mir*, 781 F. 2d at 1453.

approach to the issue of whether to grant a stay pending such determination should be governed by the same principle.

### III.    Plaintiffs Consent to a Limited Stay of Proceedings on Counts III-XXII of the Bankruptcy Court Complaint.

14.    Counts III-XXII of the Complaint in this Adversary Proceeding are virtually identical in substance to claims asserted in the District Court Complaint, arising from the Proof of Claims filed by Plaintiffs in the BUFSB Receivership.  While only the District Court can *allow* those claims against the Receivership under 12 U.S.C.§1821(d)(6), Plaintiffs believe that this Court is the proper forum in which to address the *substance* of those claims as *core* matters under 28 U.S.C. §157(b)(2)(A), (B), (C), (E), (F) and (O).  Thus, rather than forfeit the right to obtain rulings on these core matters, Plaintiffs invoked the jurisdiction of this Court by commencing this Adversary Proceeding one day *prior* to filing the District Court Action.

15.    Plaintiffs do not concede that withdrawal of the reference is proper in respect of Counts III-XXII of the Bankruptcy Court Complaint, nor that the Motion for Stay satisfies the four-part test for a stay pending disposition of the Motion to Withdraw Reference as to those Counts.  Nevertheless, in light of the pending District Court Summary Judgment Motion seeking allowance of the Proof of Claims filed in the BUFSB Receivership, Plaintiffs recognize that a limited stay of proceedings as to Counts III-XXII in this Court will promote the efficient and orderly administration of the two actions and the Chapter 11 estates.  Indeed, if the District Court Summary Judgment Motion is granted then *neither* the District Court *nor* this Court would be required to address the substance of the claims set forth in Counts III-XXII of the Bankruptcy Court Complaint; rather, Plaintiffs' claims would be allowed as a matter of law.[5]

16.    More specifically, Plaintiffs would stipulate to a stay as to Counts III-XXII of the Bankruptcy Court Complaint, through the earlier of the District Court's ruling on the Motion to Withdraw Reference, in which event the stay would expire by its terms, or the District Court's

---

[5] Plaintiffs' consent to the stay is intended to facilitate an efficient disposition of the FDIC's Motion for Stay, and is offered without waiving any right to argue on the merits in opposition to the Motion to Withdraw Reference as to the specified counts.

ruling on the Plaintiffs' District Court Summary Judgment Motion. If the District Court Summary Judgment Motion is granted then, as stated, the merits of Counts III-XXII would not need to be addressed; if the District Court Summary Judgment Motion is denied then it would be appropriate for this Court at that time to hold a statue conference to determine whether to continue the stay in effect pending a ruling on the Motion to Withdraw Reference, or whether the circumstances warranted its termination.

**IV.    The FDIC-Receiver Has Utterly Failed to Meet Its Onerous Burden Under Rule 5011(c) to Obtain a Stay Pending Resolution of Its Motion to Withdraw as to Counts I and II of the Bankruptcy Court Complaint.**

17.    The District Court Summary Judgment Motion seeks determination as a matter of law that the Proof of Claims the Plaintiffs filed with the FDIC in its capacity as receiver for BUFSB, is allowed by virtue of the FDIC-Receiver not having disallowed it and provided notice to Plaintiffs of any such disallowance within the time period prescribed by 12 U.S.C. § 1821(d)(5)(A)(i). The District Court Summary Judgment Motion thus embraces counts III-XXII of the Bankruptcy Court Complaint. Counts I and II of the Bankruptcy Court Complaint, however, are not part of the District Court Action, and a stay would be inappropriate and unwarranted as to those counts.

**A.    The FDIC-Receiver Has Not Shown a Substantial Likelihood of Success on the Merits of its Motion to Withdraw Reference.**

18.    The FDIC-Receiver contends that its Motion to Withdraw Reference "is meritorious and should be granted," because claims in the Bankruptcy Court Complaint "will require consideration and analysis of non-bankruptcy law, namely Title 12 of the United States Code … and other laws of the United States regulating organizations or activities affecting interstate commerce," such that "mandatory withdrawal of the reference is required under Section 157(d). Motion for Stay at 4.

19.    Mandatory withdrawal applies only where the non-title 11 issues "'warrant substantial and material consideration,'" in order to prevent litigants from using withdrawal of the reference as an "escape hatch" to get out of bankruptcy court. *Hvide Marine Towing, Inc. v.*

*Kimbrell (In re Hvide Marine Towing, Inc.)*, 248 B.R. 841, 844 (M.D. Fla. 2000) (quoting *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986)); *Am. Body Armor & Equip., Inc. v. Clark (In re Am. Body Armor & Equip., Inc.)*, 155 B.R. 588, 590 (M.D. Fla. 1993). Further toward that protection, the courts require that the non-title 11 issues be "complicated interpretive issues," and issues of first impression or conflict. *Hvide Marine Towing*, 248 B.R. at 844 (citing *In re Int'l Airways, Inc.*, 222 B.R. 663, 667-68 (S.D. Ga. 1998); *In re C-TC 9th Ave. P'ship*, 177 B.R. 760, 764 (N.D.N.Y. 1995)); *Am. Body Armor & Equip.*, 155 B.R. at 590. Where there are no issues of first impression or conflict, however, but instead the dispute simply involves application (rather than interpretation) of non-title 11 law, courts will generally not find that mandatory withdrawal exists. *John Hine Studios, Inc. v. Wasserman (In re Merryweather Importers, Inc.)*, 179 B.R. 61, 62-63 (D. Md. 1995) (refusing mandatory withdrawal where copyright issues involved were neither complex nor of first impression); *In re Amfesco Indus., Inc.*, No. 88 CV 2662 (ERK), 1988 WL 134153, at *2 (E.D.N.Y. Nov. 14, 1988) (same; holding that the copyright laws involved "are not new; that there is a large body of interpretive law which may be read and analyzed as readily by the bankruptcy judge as by a district court judge").

20.      Section 157(d) further provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

21.      In *EPMI v. CalPX*, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004), summarizing the standard for mandatory withdrawal of the reference under 28 U.S.C. § 157(d), the United States District Court for the Southern District of New York recognized that courts uniformly "have construed § 157(d) narrowly to prevent litigants using it as an 'escape hatch' out of bankruptcy court." 2004 WL 271101, at *2. And with that framework, the court stated that mandatory withdrawal is required for any proceeding "that would otherwise require a bankruptcy

court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *Id.* (quoting *City of N.Y v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)). To satisfy the substantial consideration test, the issues of non-bankruptcy law do not necessarily need to be "unsettled" or involve matters of first impression; however, the focus is on the degree to which the bankruptcy judge would have to consider the federal non-bankruptcy law. *Id.* (citing *McCrory Corp. v. 99c Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 505 (S.D.N.Y. 1993)).

22.     Elaborating on the "significant interpretation" standard, the Second Circuit stated in *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990), *cert. denied*, 502 U.S. 808 (1991), that "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." And, while, as stated, "unsettled law" is not a prerequisite for withdrawal, it is well settled that withdrawal under the narrow interpretation given to Section 157(d) is far more common when the law is unsettled. That is, as the United States District Court for the Southern District of New York has pointed out: "On the occasions when this court grants motions for mandatory withdrawal, it has done so when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws." *O'Connell v. Terranova (In re Adelphi Inst.)*, 112 B.R. 534, 537 (S.D.N.Y. 1990). *See also*, *e.g.*, *In re Laventhol & Horwath*, 139 B.R. 109, 115 (S.D.N.Y. 1992) (denying motion for mandatory withdrawal of reference in case involving RICO violations; "We agree with those courts that have found that the presence of RICO claims does not necessarily dictate withdrawal of the reference…. The facts and law in each case dictate whether substantial interpretation is necessary, and we do not find that the facts and law in this case are such that substantial interpretation of RICO will occur") (internal citations omitted); *Am. Body Armor & Equip.*, 155 B.R. at 590 (denying request for mandatory withdrawal of federal securities claims because "this case requires straightforward application of

9

the [Securities and Exchange Act]"); *Keller v. Blinder (In re Blinder Robinson & Co.)*, 135 B.R. 892, 895 (D. Colo. 1991) (denying mandatory withdrawal of reference because it did "not appear that a finding of a violation of federal securities laws is necessary to the Trustee's success on any of the claims, or that any significant interpretation of federal securities law will be required").

23.     On the face of the existing record, the FDIC-Receiver cannot possibly meet its burden of establishing a substantial likelihood of success on the Motion to Withdraw Reference. For all of its many allusions to unspecified issues arising under Title 12 of the United States Code, neither Count I nor Count II of the Bankruptcy Court Complaint articulate any direct cause of action under Title 12 or even suggest that any "substantial and material consideration" of such issues is in the offing.  For this reason alone, the Motion for Stay should be denied, even if without prejudice to refiling if in fact the FDIC-Receiver interposes defenses to those Counts which meet the test for withdrawal of reference as set forth above.

24.     Moreover, the Motion for Stay contemplates only the possibility that the District Court will withdraw the reference as to all proceedings before this Court.  To the contrary, the possibility exists that the District Court may elect to withdraw the reference only for the actual trial, and leave all pre-trial and discovery matters to this Court.  *See, e.g.*, *Dunmore v. United States*, 358 F.3d 1107, 1117 (9th Cir. 2004) (citing *Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir. 1993)); *Stratton v. Garcia*, 2007 WL 512506, at *2 (E.D. Cal. Feb. 12, 2007) (quoting *Lars, Inc. v. Taber Partners (In re Lars, Inc.)*, 290 B.R. 467, 469 (D. P.R. 2003)).[6]

---

[6]   There also exists the possibility that, after disposing of the Summary Judgment Motion, the District Court may determine to stay or abstain from considering the District Court Action pending a determination of the earlier-filed Bankruptcy Court Action by this Court.  *See Wash. Mut., Inc. v. Fed. Deposit Ins. Corp.*, No. 09-00533 (D.D.C. filed Jan. 7, 2010).  Indeed, in *Washington Mutual*, noting the desire to avoid piecemeal litigation the District Court for the District of Columbia deferred to the bankruptcy court action, both because it had been commenced first, and because the claims related to property considered to be part of the bankruptcy estate such that the bankruptcy court should determine the related issues in litigation.

**B.    The FDIC-Receiver Has Not Shown That the Equities Weigh in Favor of a Stay.**

25.    The FDIC-Receiver contends that in the absence of a stay "there is a substantial risk of duplication of effort and inefficient use of resources" by the parties, and that "any action taken by the Bankruptcy court may be duplicative, inconsistent or potential unnecessary," if the Bankruptcy Court Action is allowed to proceed while the motion to Withdraw Reference is pending.  See Motion for Stay at 5.  Arguing so, the FDIC-Receiver, while at first seeming to recognize its burden to demonstrate that it will suffer irreparable harm if a stay is not granted, see Motion for Stay at 4 (citing *Envtl. Litig. Group, P.C. v. Crawford (In re Price)*, 2007 WL 1125639 (Bkrtcy. N.D. Ala. Apr. 16, 2007); *Miller v. Vigilant Ins. Co. & Design Coverage Corp. (In re Eagle Enters., Inc.)*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001)), in argument all but ignores the burden.

26.    The FDIC-Receiver cannot *possibly* meet its burden as to Count I, as an objection to a proof of claim is a clearly foreseeable consequence of filing such a claim – and particularly a $4.9 billion claim – in the first instance.[7]  Similarly, inasmuch as Count II calls for no more than a determination of the very tax attribute allocation issue that the FDIC has already agreed with the Debtors by virtue of the Tax Escrow Agreement that was submitted to and approved by this Court, the FDIC-Receiver cannot possibly meet its burden on Count II, which would be resolved by resort to a document submitted to and approved by this Court.

27.    To be sure, every final judgment of a bankruptcy court is subject to appellate review in the district court under 28 U.S.C. § 158, but the notion that upon withdrawal of reference a district court would invalidate the prior actions and ruling by the bankruptcy court is unfounded, and more importantly, does violence to Rule 5011(d)'s principle that the mere "filing of a motion for withdrawal of a case or proceeding … *shall not stay*" the bankruptcy court proceedings," except as allowed by this Court.  Fed. R. Bankr. P. 5011(c).

---

[7]  Indeed, Section 502(a) of Bankruptcy Code provides that a proof of claim is deemed allowed unless a party in interest objects, and the FDIC-Receiver in making its irreparable harm argument seems to seek only to maintain a stranglehold on the administration of claims in the Chapter 11 cases by maintaining the overhang of its claim, which Plaintiffs maintain is grossly inflated.

28.    Additionally, and particularly in light of Plaintiffs' consent in part to a limited stay of the proceedings as to Counts III-XXII of the Bankruptcy Court Complaint, there is little for the Bankruptcy Court, as opposed to the parties, to do at present in the Adversary Proceeding. That is, the FDIC-Receiver must respond to the Complaint, and discovery will move forward under a Revised Scheduling Order to be entered by the Court. And even if the District Court were to grant the Motion to Withdraw Reference, that same discovery would then proceed in the District Court, such that it can hardly be characterized a waste or inefficient use of resources for the Bankruptcy Court Action to proceed as to Counts I and II. See n.6, *supra*.

29.    Indeed, in this regard, it is uncertain how long it might take the District Court to rule on the Motion to Withdraw Reference. The disposition of the $4.9 billion FDIC proofs of claim, and ascertaining the relative rights of the Debtors and FDIC-Receiver in respect of anticipated tax refunds and other tax attributes likely to be, at minimum, in the hundreds of millions of dollars, are two of the most significant aspects of the Chapter 11 cases. To grant a stay that would interfere with the prompt disposition of those two key matters would impair the administration of the Chapter 11 estates and the bankruptcy cases.

30.    It is for that reason that the public interest here favors denying the request for a stay because of the importance of expedient resolution of the issues raised in the Adversary Proceeding. A stay would unnecessarily delay timely resolution of those issues. *See*, *Interco*, 135 B.R. at 361 ("...if these proceedings were stayed, Debtors could suffer harm in that such delay would slow their momentum toward reorganization.") (footnote omitted); *In re Spiers GraffSpiers*, 190 B.R. 1001, 1012 (Bankr. N.D. Ill. 1996) ("public interest served by issuing injunctions in Chapter 11 cases is the promotion of successful reorganizations"). .

31.    In the final analysis, the FDIC-Receiver has offered nothing to support its attempt to demonstrate irreparable harm except to suggest that continuing the litigation in this Court will be a waste of resources. That is demonstrably untrue, and it is of course well settled in any event that merely to assert that resources will be expended without more is insufficient to demonstrate irreparable harm to support a stay. *See*, *e.g.*, *Renegotiation Bd. v. Bannercraft Co.*, 415 U.S. 1,

23-24 (1973) ("[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *Continental Ins. Co. v. Wehbe*, 1996 WL 109060, Case No. 96-1176, *2 (S.D.N.Y. March 13, 1996) (holding that possible costs associated with duplicative litigation are not irreparable injury).

### Conclusion

The FDIC-Receiver cannot meet its burden to demonstrate that any element, much less all of the elements, of a stay have been.  Plaintiffs respectfully request that the Court (i) deny the Stay Motion, and (ii) grant such other and further relief as may appear just and proper.

Dated May 28, 2010.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for Plaintiffs
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: ___/s/ Mark D. Bloom_____
MARK D. BLOOM
Florida Bar No. 303836
bloomm@gtlaw.com
JACQUELINE BECERRA
Florida Bar No. 0025135
becerraj@gtlaw.com
SCOTT M. GROSSMAN
Florida Bar No. 0176702
grossmansm@gtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail, postage prepaid (and via e-mail where indicated), for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing in this adversary proceeding.

                                        /s/ Mark D. Bloom
                                        MARK D. BLOOM

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this adversary proceeding:

Mark D Bloom bloomm@gtlaw.com, phillipsj@gtlaw.com; MiaLitDock@gtlaw.com; miaecfbky@gtlaw.com

Scott M. Grossman grossmansm@gtlaw.com, phillipsj@gtlaw.com; MiaLitDock@gtlaw.com; miaecfbky@gtlaw.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this adversary proceeding, and are therefore being served by first class U.S. Mail, postage prepaid (and via-email where indicated):

| | |
|---|---|
| The Honorable Eric H. Holder, Jr.<br>Attorney General of the United States<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0001 | Geoffrey T. Raicht, Esq.<br>McDermott Will & Emery LLP<br>340 Madison Avenue<br>New York, NY 10173<br>(and via email: graicht@mwe.com) |
| Jeffrey H. Sloman, Esq.<br>United States Attorney<br>Southern District of Florida<br>99 NE 4th St.<br>Miami, FL 33132<br>      Attn. Civil process clerk | Bruce J. Berman, Esq.<br>McDermott Will & Emery LLP<br>201 South Biscayne Blvd., Suite 2200<br>Miami, FL 33131-4336<br>(and via email: bberman@mwe.com) |
| Federal Deposit Insurance Corporation,<br>in its capacity as receiver of BankUnited, FSB<br>c/o Ms. Andrea Fulton Toliver, Esq.<br>Regional Counsel<br>Federal Deposit Insurance Corporation<br>10 Tenth St., NE, Suite 800<br>Atlanta, GA 30309-3906 | FDIC as Receiver of BankUnited, FSB<br>1601 Bryan Street<br>Dallas, TX 75201 |
| Kathryn R. Norcross, Senior Counsel<br>Sonya L. Levine, Counsel-Legal Division<br>Federal Deposit Insurance Corporation<br>Legal Division<br>3501 Fairfax Drive, VS-D<br>Arlington, VA 22226 | Robert E. Feldman<br>Executive Secretary<br>Federal Deposit Insurance Corporation<br>550 17th Street N.W.<br>Washington, D.C. 20429 |