UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,[1]

       Debtors.
_____/

BANKUNITED FINANCIAL
CORPORATION, BANKUNITED
FINANCIAL SERVICES, INC., CRE
AMERICA CORPORATION, and BU
REALTY CORPORATION,

       Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as Receiver
of BankUnited, FSB,

       Defendant.
_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

Adv. No. 10-02872-LMI

## AMENDED COMPLAINT

Plaintiffs BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Inc. ("**BUFS**"), CRE America Corporation ("**CRE,**" and together with BUFC and BUFS, the "**Debtors**"), and BU Realty Corporation ("**BU Realty**," and together with the Debtors, the "**Plaintiffs**") sue defendant the Federal Deposit Insurance Corporation, in its capacity as receiver for BankUnited, FSB ("**FDIC-Receiver**"), and allege the following:

_____

[1]  The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

## NATURE OF ACTION

1.      This is an adversary proceeding brought pursuant to Federal Rules of Bankruptcy Procedure 3007(b) and 7001(1), (2), and (9) objecting to the FDIC Proofs of Claim (as defined herein) and asserting counterclaims against the FDIC-Receiver for, without limitation: a declaratory judgment as to the Debtors' estates' ownership interest in certain pending and anticipated tax refunds; turnover of property of the Debtors' estates; avoidance and recovery of preferences and fraudulent transfers, and other amounts due to the Plaintiffs; the determination and allowance of claims filed by the Plaintiffs in the Receivership (as defined below) of BankUnited, FSB (**"BUFSB"**); and an accounting of the disposition of assets of the Receivership and of all property transferred from Plaintiffs in connection with the Receivership.

## PARTIES

2.      BUFSB was a federally chartered savings and loan association and wholly-owned subsidiary of BUFC, with its principal place of business in Coral Gables, Florida.

3.      BUFC is a former unitary savings and loan holding company of BUFSB, incorporated in the State of Florida and formerly headquartered in Coral Gables, Florida.

4.      BUFC is also the 100% owner of (i) CRE, which holds a timeshare interest in certain real property located in New York City; (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products; and (iii) BU Realty, which was organized in 2007 to conduct certain real estate activities.

5.      FDIC-Receiver is the receiver for BUFSB.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this civil action pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. §§ 1331 and 1334.

7.     Venue is proper in this judicial district under 12 U.S.C. § 1821(d)(6) and 28 U.S.C. §§ 1391(e) and 1409.

8.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (F), (H), and (O).

9.     This matter is an adversary proceeding governed by the rules of Part VII of the Federal Rules of Bankruptcy Procedure, pursuant to Federal Rules of Bankruptcy Procedure 3007(b) and 7001(1) and (9).

10.    The FDIC-Receiver's sovereign immunity has been abrogated pursuant to 11 U.S.C. § 106(a) and waived pursuant to 11 U.S.C. § 106(b), as to the claims set forth herein.

## BACKGROUND

11.    On May 21, 2009 (the "**Receivership Date**"), the Office of Thrift Supervision (the "**OTS**") closed BUFSB and appointed the FDIC-Receiver as its receiver.

12.    Immediately after the closure of BUFSB and the appointment of the FDIC-Receiver as receiver for BUFSB, the FDIC-Receiver and the Federal Deposit Insurance Corporation, in its corporate capacity ("**FDIC-Corporate**," and together with FDIC Receiver, the "**FDIC**") entered into a Purchase and Assumption Agreement with BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida ("**New Bank**"), for the purchase of substantially all of BUFSB's assets.

13.     BUFC, BUFS, and CRE, then each filed petitions under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") at 12:05 a.m., 12:31 a.m., and 12:43 a.m., respectively, on May 22, 2009 (the "**Petition Date**"), in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

14.     The automatic stay of 11 U.S.C. § 362(a) in the Debtors' bankruptcy cases prohibits any entity, including the FDIC and New Bank from, among other things, taking any action to obtain possession of property of the Debtors' bankruptcy estates or to exercise control over such property.

## THE FDIC-RECEIVER'S PROOFS OF CLAIM

15.     On November 16, 2009, the FDIC-Receiver filed a separate proof of claim in each of BUFC, BUFS, and CRE's bankruptcy cases, as claims No. 103, 6, and 1, respectively, each of which appear identical in all material respects (collectively, the **"Original FDIC Proofs of Claim"**).  Each of the Original FDIC Proofs of Claim was in an "unliquidated amount," but which the FDIC-Receiver asserted it believes will be "in excess of $4.9 billion."  On August 26, 2010, the FDIC-Receiver filed amended proofs of claim in each of BUFC, BUFS, and CRE's bankruptcy cases, as amended claims No. 103, 6, and 1, respectively, each of which appear identical in all material respects (collectively, the **"FDIC Proofs of Claim"**).

16.     Among the claims asserted by the FDIC-Receiver in the FDIC Proofs of Claim are claims pursuant to a December 31, 1997 Income Tax Allocation Agreement between BUFC and BUFSB (the "**Tax Sharing Agreement**"), a copy of which was attached as Exhibit 1 to the FDIC Proofs of Claim, in the sum of $48,119,104.00.

17.     The FDIC Proofs of Claim also assert claims "in an amount not less than $1,467 million" for Capital Maintenance Obligations, and claims "in amounts undetermined at present" for Tort-Based/Insurance Proceeds Claims.

18.     Other than the Tax Sharing Agreement, the FDIC-Receiver attached no documentation in support of the FDIC Proofs of Claim.

## THE TAX SHARING AGREEMENT

19.    BUFC and BUFSB agreed in the Tax Sharing Agreement to a certain allocation of their current and deferred income tax assets and liabilities as between BUFC, BUFSB and other members of BUFC's and BUFSB's "affiliated group," as such term is defined in Section 1504 of the Internal Revenue Code.

20.    Pursuant to the Tax Sharing Agreement, BUFSB makes all income tax payments on behalf of the BUFC affiliated group, but each member of the group determines its own income tax liability on an annual and separate-entity basis.    Following the separate-entity calculation, each member records a net tax receivable or payable with respect BUFSB, and, within thirty days after BUFSB pays taxes on behalf of the affiliated group, any member with a net tax payable is obligated to pay an amount equal to this payable to BUFSB, and BUFSB is obligated to reimburse any member with a net tax receivable.    Further, any income tax refunds received by BUFSB are to be allocated among and paid to the members of the group in accordance with the separate entity calculation and net tax receivable or payable computations discussed above.

## THE TAX ESCROW STIPULATION

21.    From time to time, BUFC filed consolidated tax returns for itself and its consolidated subsidiaries (including BUFSB), including a certain consolidated tax return titled "Amended U.S. Corporation Income Tax Return" for the fiscal year ended September 30, 2008 on Form 1120X filed by "BankUnited Financial Corp & Subs C/O DSI" on or about September 10, 2009 (the **Amended FY 2007 Return**"), and a certain consolidated tax return titled "U.S. Corporate Income Tax Return" for the fiscal year ended September 30, 2009 on Form 1120 filed by "BankUnited Financial Corporation and Subsidiaries" on or about June 14, 2010 (the **"FY 2008 Return"**).

22.     In conjunction with the filing of the Amended FY 2007 Return, on September 30, 2009, BUFC filed a Form 1139 "Corporate Application for Tentative Refund" (**"Form 1139"**) through which it claimed a refund of $5,566,878 (the "**FY 2007 Refund**").  In conjunction with the filing of the FY 2008 Return, on June 17, 2010, BUFC filed a Form 1139 through which it claimed a refund of $42,552,226 (the **"FY 2008 Refund"**) for taxes paid in fiscal years 2003 (fiscal year ending September 30, 2004), 2005 (fiscal year ending September 30, 2006), and 2006 (fiscal year ending September 30, 2007) (the **"FY 2008 Refund Claim"**), representing the maximum refund available to the consolidated taxpayer group headed by BUFC.

23.     BUFC has requested the issuance of a wire transfer from the United States Treasury to BUFC in the amount of the FY 2007 Refund, and by filing the FY 2008 Refund Claim, BUFC has requested the issuance of the  FY 2008 Refund.

24.     It is anticipated by the Debtors and the FDIC-Receiver that there may be other refunds issued by the United States Treasury and/or by the taxing authorities of different states or municipalities with respect to BUFC and its consolidated subsidiaries (including BUFS, CRE, and BUFSB) (together with the FY 2007 Refund and the FY 2008 Refund, the "**Refunds**").

25.     The FDIC-Receiver has claimed that all, or substantially all, of the Refunds belong to BUFSB and, thus, are property of the FDIC-Receiver and not property of one or more of the Debtors' bankruptcy estates.

26.     The Debtors assert that all, or substantially all, of the Refunds belong to one or more of the Debtors as the case may be and, thus, are property of the bankruptcy estates of one or more of the Debtors as the case may be.

27.     On November 25, 2009, the Bankruptcy Court entered an Order Approving Stipulation Between the Debtors and the Federal Deposit Insurance Corporation With Respect to

the Establishment of An Escrow Account (the "**Tax Escrow Stipulation**"), whereby the Debtors and the FDIC-Receiver agreed – with neither party waiving any of its respective arguments nor admitting or recognizing that all or any part of the Refunds are property of the other merely by entering into the Tax Escrow Stipulation – that the Refunds would be collected and placed in an appropriate segregated bank account, without prejudice to either party's position, to permit interest to accrue thereon while the determination of ownership of the Refunds is being resolved.

28.    All Refunds are by law payable to BUFC, regardless of whether such refunds are on account of taxes paid or losses incurred by BUFSB or its subsidiaries or any of BUFC's other subsidiaries.

29.    Pursuant to the Tax Sharing Agreement, BUFC's sole obligation to each other member of the consolidated tax group with respect to Refunds is to remit, as a function of a debtor/creditor relationship that existed by virtue of the Tax Sharing Agreement and the course of dealing among the parties, an amount equal to such consolidated tax group member's right to remittances under the Tax Sharing Agreement.

## THE RECEIVERSHIP PROOF OF CLAIMS

30.    Pursuant to 12 U.S.C. § 1821(d), the FDIC-Receiver set August 27, 2009 as the last day to file claims against the BUFSB Receivership (the "**Receivership**").  As described in detail below, Plaintiffs asserted claims against the Receivership (each a "**Claim**") by filing a Proof of Claims on August 27, 2009 (the "**Receivership Proof of Claims**") with the FDIC-Receiver.

31.    Plaintiffs reserved all rights to amend and/or supplement the Receivership Proof of Claims at any time and in any respect and to assert any and all other claims of whatever kind or nature that they have, or may have, against BUFSB (this includes but is not limited to, the Reservation of Rights set forth on pages 3-5 of the Receivership Proof of Claims).  Plaintiffs

likewise reserve all rights to amend and/or supplement this Complaint under the Federal Rules of Bankruptcy Procedure.

32.    The Claims are unsecured, unless otherwise noted, and except to the extent that the FDIC-Receiver asserts claims against the Plaintiffs.    To the extent of any such claims asserted by the FDIC-Receiver, Plaintiffs assert that the Claims asserted hereunder are secured.

33.    From and after the Receivership Date, nearly all of the Plaintiffs' books and records have been in the exclusive possession of the FDIC-Receiver and other federal regulatory agencies or New Bank.    The FDIC-Receiver has seized and continues to hold many of the records which are indispensable for a comprehensive assertion of, and the evidentiary support necessary to sustain, the Claims.    In addition, by letter dated August 25, 2009, New Bank advised the Plaintiffs that certain of the documents and information that the Plaintiffs had requested from New Bank would not be made available to the Plaintiffs until after August 27, 2009 – the deadline for filing the Receivership Proof of Claims.    The records the Plaintiffs have managed to obtain – even in the months between the Receivership Proof of Claims bar date and the date of filing this Complaint – have been for the most part incomplete and occasionally inconsistent.    As a result, the Plaintiffs have been unable to conduct the type of exhaustive research and analysis necessary to identify and support with sufficient documentation all of their Claims.

34.    The Receivership Proof of Claims included the following Claims by the Plaintiffs:

**A.    Use of Real Property**

35.    [Intentionally omitted.]

36.    [Intentionally omitted.]

37.    [Intentionally omitted.]

**B.      Unpaid Fees and Commissions**

38.      BUFS is due fees and commissions under that certain Financial Institution Services Agreement dated, March 8, 2008, between BUFSB, BUFS, LPL Financial Corporation and UVEST Financial Services, as to which BUFSB has received payment.  BUFSB is liable to BUFS for such fees and commissions.

39.      BUFSB is due fees and commissions under that certain Referral Agreement dated May 5, 2008 between R.E. Lee International (Cayman) Ltd., BUFSB and BUFS, as to which BUFSB has received payment.  BUFSB is liable to BUFS for such fees and commissions.

**C.      Enterprise Value of BUFS**

40.      [Intentionally omitted.]

**D.      Intellectual Property Use**

41.      [Intentionally omitted.]

42.      [Intentionally omitted.]

43.      [Intentionally omitted.]

**E.      Customer List Use**

44.      BUFS is the owner of certain customer lists and other proprietary trade information (the "**Customer Lists**").

45.      Since the Receivership Date, the FDIC-Receiver used and assigned or attempted to assign for value certain of the Customer Lists without paying compensation to BUFS.

46.      BUFS is entitled to compensation in connection with this use of the Customer Lists.

**F.      Guaranties**

47.      BUFC has executed one or more guaranties assuring third parties of the performance of various contracts or satisfaction of obligations by BUFSB and/or its subsidiaries.

48.     Upon default by BUFSB and/or its subsidiaries on any such contract and/or obligation, BUFC may be liable to third parties as guarantor of such duties and/or obligations of BUFSB.

49.     BUFC, as guarantor, asserts its right of reimbursement, contribution, subrogation and exoneration against FDIC-Receiver in connection with any and all guaranties given by BUFC.

**G.     Artwork and Other Personal Property**

50.     BUFC is the owner of a collection of artwork and other personal property (the "**Personal Property**").

51.     BUFSB or its Receivership estate may have been using certain of the Personal Property without paying compensation to BUFC.

52.     BUFC is entitled to compensation in connection with this use of the Personal Property.

**H.     PAC**

53.     BUFC had established one or more political action committees (the "**PACs**"), including one known as the BankUnited Financial Corporation Political Action Committee (C00248310) (the "**BUFC PAC**"), which are "connected to" BUFC.

54.     The PACs, including the BUFC PAC, hold certain funds to which BUFC is entitled under applicable law.

55.     Upon information and belief, as of June 30, 2009, the BUFC PAC had a balance of $88,869.

**I.     Employee Benefits**

56.     Before May 21, 2009, BUFSB had custody or control over funds belonging to BUFC, which were to be used in connection with the funding of the BankUnited Financial Corp.

Supplemental Tax Deferred Savings Plan (the **"Deferred Compensation Plan"**), as to which plan participants have asserted or may assert liability against BUFC.

57.    Subject to discovery, BUFSB failed to pay to BUFC certain moneys BUFSB was obligated to pay BUFC for use in connection with the Deferred Compensation Plan.

58.    The Receivership owes BUFC at least $39,600 in connection with the Deferred Compensation Plan to the extent such funds are not remitted to BUFC by the Deferred Compensation Plan.

### J.    Real, Personal and Other Property Taxes

59.    [Intentionally omitted.]

60.    [Intentionally omitted.]

### K.    Income Tax Refunds

61.    BUFC is a party to a Tax Sharing Agreement with BUFSB, which provides for the sharing of certain tax attributes and refunds (local, state, and federal), and which provides that BUFSB is liable to BUFC for certain amounts.

62.    Pursuant to the Tax Sharing Agreement, certain inter-company income tax payables, in an amount to be determined through discovery, are owed by BUFSB to one or more of the Plaintiffs as of May 21, 2009.

63.    The Tax Sharing Agreement also requires that any income tax refunds received by BUFSB be allocated and paid by BUFSB to the Plaintiffs.

64.    BUFSB directly and/or indirectly received income tax refunds before May 21, 2009, as to which it failed to pay each Plaintiff its proportionate share.

65.    To the extent FDIC-Receiver has received any income tax refunds after May 21, 2009, FDIC-Receiver is liable to each Plaintiff for its proportionate share of these refunds.

**L.        Employee, Officer, and Director Claims**

66.        [Intentionally omitted.]

67.        [Intentionally omitted.]

**M.        Professional Fee Claims**

68.        BUFC paid professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, as to which BUFC is entitled to reimbursement.

**N.        Intercompany Advances**

69.        The amount due and owing to the Debtors from BUFSB for intercompany advances and payments for the period of October 2006 to May 21, 2009 was at least $46,902,483. *See* attached **Exhibit A**.

70.        Additional amounts to be determined through discovery are due and owing for periods prior to October 2006.

71.        The foregoing amounts represent sums accrued or paid by the Debtors as owed by BUFSB to facilitate its operations or as inter-company income tax payables owed by BUFSB to any or all of the Plaintiffs pursuant to certain tax sharing agreements.

72.        The advances and the tax sharing arrangement were made with the intention and understanding that they be repaid by BUFSB.

73.        This amount does not reflect any setoffs that may be asserted by BUFSB against one or more of the Plaintiffs in respect of such intercompany transactions.

74.        Other amounts are due and owing to BUFS, CRE, and BU Realty from BUFSB in an amount to be determined through discovery, for intercompany advances made with the intention and understanding that they be repaid by BUFSB.

12

**O.    Services**

75.    [Intentionally omitted.]

76.    [Intentionally omitted.]

**P.    Fraudulent Transfers and Preferences**

77.    BUFC, along with its Debtor affiliates BUFS and CRE, continue to operate as debtors-in-possession; no trustee or examiner has been appointed in the bankruptcy cases.  BU Realty has not filed for bankruptcy and continues to operate outside of bankruptcy.

78.    At all relevant times BUFC directly or indirectly owned 100% of the capital stock of BUFSB.

79.    In addition to BUFSB, BUFC also owned the capital stock of BUFS, CRE, and BU Realty.

80.    BUFSB in turn owned the capital stock of a number of separately incorporated subsidiaries.

81.    Upon information and belief, and as to be determined through discovery, at various times one or more of the Debtors were insolvent or were rendered insolvent by the transactions described in paragraphs 83 through 100 below, and had unreasonably small capital, and/or had incurred debts beyond their respective ability to pay.  In this complaint, the term "insolvent" is used with respect to each of the Debtors in the sense that the sum of each of the Debtors' respective debts exceeded all of its respective property, at a fair valuation.

82.    By February, 2009, and possibly even earlier than that, federal regulators, including the FDIC, had assumed effective control of BUFSB.  Among other things, BUFSB conceded to the regulators' extensive powers over itself and its operations; the regulators required the management of BUFC to keep them fully informed of their plans and to obtain their consent for taking many actions; and the managers cooperated with the regulators in achieving

the regulators' goal of reducing their overall costs in handling the collapse and anticipated Receivership of BUFSB.

### (1)    The 548 Transfers

83.    In the two-year period beginning May 22, 2007, during which time one or more of the Debtors were insolvent or were rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors engaged in transactions that, directly and indirectly, transferred interests in property to BUFSB at a time when such Debtors were insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration.  Also, upon information and belief, one or more of those transactions were carried out with actual intent to hinder, delay, or defraud creditors of one or more of the Debtors.    Each of these transactions substantially and immediately diminished the net worth of one or more of the Debtors, and was induced by the FDIC or the OTS at a time when such agencies knew or should have known that appointment of the FDIC as receiver for BUFSB was imminent.

84.    Based on the evidence currently available to the Plaintiffs, the transactions listed in paragraphs 85 through 91 below (without limitation), occurring within two years of the Petition Date, directly or indirectly transferred interests in property from BUFC, BUFS, and/or CRE, to BUFSB and/or BUFSB's subsidiaries under the circumstances described in paragraph 83 above (the "**548 Transfers**").

85.    In or about September, 2007, BUFC transferred $80 million to BUFSB,  without receiving any consideration in return for such transfer.

86.    Some time in or about July or August, 2008, BUFC transferred an additional $80 million to BUFSB, without receiving any consideration in return for such transfer.

87.     At the insistence of the OTS, the transfer described in paragraph 86 above was backdated to reflect such transfer as having been made as of June 30, 2008.

88.     On or about August 7, 2008, BUFC transferred $15 million to Bear Stearns, which transfer is believed to have been for the benefit of BUFSB.  On or about August 13, 2008, BUFC received a transfer in the amount of $15 million from BUFSB.  It is presently unknown whether the August 13, 2008 $15 million transfer from BUFSB to BUFC is related to the August 7, 2008 $15 million transfer from BUFC to Bear Stearns.

89.     During the two years before their bankruptcy filings, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in paragraph 68 hereof for professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, and payments reflected as intercompany advances described in paragraphs 69 through 74 hereof.  The value of the property transferred by the Debtors through such payments remains to be established through discovery and, if necessary, expert testimony.

90.     [Intentionally omitted.]

91.     To the extent that the transactions described herein are determined not to have been made by any of the Debtors to BUFSB and/or any subsidiaries of BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the past two years are avoidable by the Debtors.

### (2)     The 544 Transfers

92.     Based on the evidence currently available to the Plaintiffs, a number of transactions occurring less than four years before the Petition Date have directly or indirectly transferred property or value from one or more of the Debtors to BUFSB and/or its subsidiaries,

including the transfers set forth in paragraphs 93 through 100 below (the "**544 Transfers**"). Subject to discovery, Plaintiffs allege that at some point in time one or more of the Debtors became insolvent or were rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors made one or more of the 544 Transfers at a time when such Debtor was insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration. Subject to discovery, one or more of these transactions substantially and immediately diminished the net worth of one or more of the Debtors.

93.    In or about June, 2005, BUFC transferred $30 million to BUFSB, without receiving any apparent consideration in return for such transfer.

94.    In or about September, 2005, BUFC transferred $25 million to BUFSB, without receiving any apparent consideration in return for such transfer.

95.    In or about December, 2005, BUFC transferred $15 million to BUFSB, without receiving any apparent consideration in return for such transfer.

96.    In or about June, 2006, BUFC transferred $75 million to BUFSB, without receiving any apparent consideration in return for such transfer.

97.    In or about September, 2006, BUFC transferred $40 million to BUFSB, without receiving any apparent consideration in return for such transfer.

98.    During the period beginning four years before the Petition Date, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in paragraph 68 hereof for professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective

employees, officers, and directors, and payments reflected as intercompany advances described in paragraphs 69 through 74 hereof.  The value of the property transferred by the Debtors through such payments is remains to be established through discovery and, if necessary, expert testimony.

99.    [Intentionally omitted.]

100.    To the extent that the transactions described herein are determined not to have been made by any of the Debtors to or for the benefit of BUFSB and/or any subsidiaries of BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the period beginning four years before its bankruptcy filing are avoidable by the Debtors.

101.    All of the transactions described in paragraphs 83 through 100 above were made with the full knowledge and acquiescence (and, in some cases the insistence) of the federal regulators, and one or more of the transactions described in paragraphs 83 through 100 above was made with the actual intent, held by both BUFC's then-managers and the federal regulators who controlled those managers, of hindering or delaying the creditors of one or more of the Debtors.

**(3)    The 547 Transfers**

102.    In the one-year period beginning May 22, 2008, during which time one or more of the Debtors were insolvent, one or more of the Debtors made one or more transfers (a) to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the

transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code (the "**547 Transfers**").

103.    The 547 Transfers include one or more transfers made by one or more of the Debtors during the ninety-day period beginning February 21, 2009, during which time the Debtors were presumed to be insolvent, (a) to or for the benefit of one or more creditors, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.  Subject to further discovery, the foregoing transfers include (without limitation) a transfer from BUFC to BUFSB in the amount believed to be approximately $7.9 million or more  made during the ninety-day period before the Petition Date, in respect of claims by BUFSB against BUFC under the Tax Sharing Agreement discussed in paragraphs 61 through 65 hereof.

104.    On May 21, 2009, the OTS closed BUFSB and appointed the FDIC as its receiver. On this date, the FDIC entered into a Purchase and Assumption Agreement with New Bank providing for the sale of certain assets of BUFSB to New Bank and the assumption of certain liabilities of BUFSB by New Bank.

105.    Sections 548 and 544(b) of the Bankruptcy Code provide for the avoidance of fraudulent transfers made by a Debtor.  Section 548 authorizes the avoidance of certain transfers of interests in property made on or within two years before the Petition Date.   Under § 548(a)(1)(A), a transfer may be avoided if made with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or

such obligation was incurred, indebted.  Under § 548(a)(1)(B), a transfer may be avoided if less than reasonably equivalent value was received in exchange for the transfer and the Debtor either (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

106.    Section 544(b) of the Bankruptcy Code incorporates relevant state fraudulent transfer law, which is Florida state law with respect to the Debtors' claims against the FDIC-Receiver.   The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 *et seq.*, incorporated through 11 U.S.C. § 544(b), provides for the avoidance of transfers (A) made with actual intent to hinder, delay, or defraud any creditor of the debtor, or (B) made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and as to which the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) was insolvent at that time or became insolvent as a result of the transfer or obligation.   The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 *et seq.*, incorporated through § 544(b), further provides for the avoidance of a transfer if the transfer was made to an insider for an antecedent debt, the debtor

was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

107.    Section 547(b) of the Bankruptcy Code provides for the avoidance of preferential transfers made by a Debtor.  Subject to certain applicable statutory defenses, a transfer of an interest of a debtor in property may be avoided if made (a) to or for the benefit of a creditor; (b) for or on account of an antecedent debt owed by the debtor before such transfer was made; (c) made while the debtor was insolvent; (d) made (i) on or within 90 days before the Petition Date or (ii) between 90 days and one year before the Petition Date, if such creditor at the time of such transfer was an insider; and (e) that enabled such creditor to receive more than such creditor would receive if (i) the debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

108.    Sections 544 and 548 cover not only direct transfers of property by the Debtors, but also all transactions in any form that effectively transfer value away from the Debtors and thereby reduce their respective net worth.

109.    The transfers of interests in property described in paragraphs 83 through 100 above (and listed to the extent presently known in paragraphs 85 through 91 and 93 through 100 above) are avoidable fraudulent transfers under §§ 548(a)(1)(A), 548(a)(1)(B), and 544(b) of the Bankruptcy Code.

110.    The transfers occurring on or after May 22, 2007 and described in paragraphs 83 through 100 above (and listed to the extent presently known in paragraphs 85 through 91 and 93 through 100 above) are avoidable under § 548(a)(1)(A) because (1) they took place within two years before the Petition Date; and (2) they were made with the actual intent to hinder or delay

the Debtors' creditors (such intent may have been held both by the BUFC management at the time and by the FDIC and other regulators, who were in control of BUFC and whose intent may be imputed for purposes of § 548(a)(1)(A)).

111.    The transfers occurring on or after May 22, 2007 and described in paragraphs 83 through 100 above (and listed to the extent presently known in paragraphs 85 through 91 and 93 through 100 above) are avoidable under § 548(a)(1)(B) because (1) they took place within two years before the Petition Date; (2) transfers by a parent to a subsidiary that will benefit only a third party are not transfers for reasonably equivalent value, and one or more of the respective Debtors did not receive reasonably equivalent value for the transfers made; and (3) one or more of the Debtors were insolvent or were rendered insolvent by these transfers, and/or were left with unreasonably small capital, and/or either intended or believed at the time that its debts were beyond its ability to pay, and/or such transfers were to or for the benefit of an insider, or such obligations were incurred to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

112.    The transfers described in paragraphs 83 through 100 above (and listed to the extent presently known in paragraphs 85 through 91 and 93 through 100 above) are avoidable under § 544(b) because they occurred more than two, but less than four years before the Petition Date, and were made (A) with actual intent (both management's and the FDIC's) to hinder or delay any creditor of one or more of the Debtors; (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and one or more of the respective Debtors: (i) were engaged or were about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as

they became due; or (iii) were insolvent at that time or became insolvent as a result of the transfer or obligation; or (C) to an insider for an antecedent debt, one or more of the respective Debtors were insolvent at that time, and the insider had reasonable cause to believe that such Debtor was insolvent.

113.    The transfers occurring on or after May 22, 2008 and described in paragraph 102 above are avoidable under § 547(b) because (1) they took place within the year before the Petition Date; (2) one or more of the Debtors were insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) were made for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

114.    The transfers occurring on or after February 21, 2009 and described in paragraph 103 above are avoidable under § 547(b) because (1) they took place within 90 days before the Petition Date; (2) one or more of the Debtors were insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, (b) were made for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

115.    The transfers of property described and set forth in paragraphs 83 through 100, 102, and 103 above are also void, voidable, and/or subject to rescission by one or more of the Debtors on the separate grounds of (a) failure of consideration; (b) unjust enrichment; and (c) unconscionability.

116.    One or more of the Debtors accordingly are entitled to an appropriate remedy to recover the value of all of the improperly transferred property, including the remedies of (1) an equitable lien, (2) a constructive trust, and (3) a resulting trust, each encompassing or comprising all of the assets of the Receivership to the extent necessary to provide full relief to one or more of such Debtors.

117.    At various times during the period covered by the Receivership Proof of Claims, BUFSB may have acted in concert with certain other parties, including federal regulators, in undertaking acts, the effect of which was to injure the Debtors and their creditors, and the intent and result of which were to deprive the Debtors of their assets and thereby cause injury to their creditors.

118.    To the extent that BUFSB benefitted from any of the actions or transactions described in paragraph 117, BUFSB is liable to the Debtors for indemnity or contribution with respect to any claims against the Debtors, including without limitation any claims asserted by any federal or state governments or regulatory agency as well as by any bank receivership.

119.    Because the Claims set forth above are based on void, voidable and/or avoidable transactions, they should be entitled to priority ahead of claims asserted by BUFSB's depositors and other general creditors, all of which should be subordinated to the claims set forth herein. Accordingly, the FDIC is obliged to provide full (100%) payment of each claim (with interest), not a reduced or "pro rata" percentage.

120.    To the extent that the FDIC-Receiver may claim that insufficient funds remain in the Receivership to pay in full any or all of the Claims asserted herein, FDIC-Corporate is responsible for full payment of those Claims.

**Q.    Indemnification, Contribution and Reimbursement**

121.    Persons or entities have asserted to date or may assert in the future claims against Plaintiffs for acts or omissions of BUFSB and/or BUFSB's subsidiaries.

122.    To the extent such claims are or have been asserted and Plaintiffs are required to defend such claims and/or are determined to have any liability for such claims, Plaintiffs assert claims against BUFSB for indemnification, contribution, and reimbursement, including (without limitation) with respect to the following:

(a)    On September 16, 2008, a class action lawsuit was filed against Alfred Camner, Ramiro Ortiz and Humberto Lopez in the United States District Court for the Southern District of Florida, Case No. 08-CV-22572.  The allegations of wrongdoing asserted against Messrs. Camner, Ortiz and Lopez involve or may involve acts or omissions that one or more of them committed for or on behalf of BUFSB and/or BUFSB's subsidiaries. [2]  Messrs. Camner, Ortiz and Lopez may have demanded indemnification from Plaintiffs for the cost of their respective defense of this lawsuit, for which Plaintiffs may have provided a limited indemnification prior to May 21, 2009. Messrs. Camner, Ortiz and Lopez have sought relief from the automatic stay in effect in the Debtors' bankruptcy cases in order to obtain reimbursement for their defense costs from Plaintiffs' Directors and Officers insurance policies in effect from November 10, 2007 to November 10, 2008.  Plaintiffs hereby demand payment in full of the amounts

---

[2] This action has since been dismissed without prejudice.

paid to date by Plaintiffs to Messrs. Camner, Ortiz and Lopez, at least to the extent those payments relate to allegations of wrongdoing by them in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries.  Similarly, Plaintiffs demand payment in full for any proceeds paid by the insurers that issued Plaintiffs' Directors and Officers policies for the period 2007-2008, at least to the extent those proceeds relate to the allegations of wrongdoing by Messrs. Camner, Ortiz and Lopez in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries.

(b)    By letter dated January 6, 2009, Branch Banking & Trust Company ("**BB&T**") issued a formal demand for money from Plaintiffs, alleging that Plaintiffs or their agents unlawfully entered the premises, removed appliances and equipment, and demolished parts of a house for which Plaintiffs had foreclosed their mortgage interest and sold to BB&T via an auction held on April 30, 2008.  BB&T alleges that the trespass, demolition and theft rendered the property unsalable.   To the extent allegations of wrongdoing asserted by this plaintiff or other similarly situated plaintiffs relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

(c)    Capital One Bank has filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging negligence in permitting an individual to open a bank account in its name.   To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

(d)　　George W. Ward, Jr., et al. has filed a lawsuit in the Court of Common Pleas, Hamilton County, Ohio, claiming misrepresentation by a mortgage broker in a consumer mortgage loan matter.  To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

**R.    Other Amounts Due**

123.    [Intentionally omitted.]

**S.    Administrative Claims**

124.    Plaintiffs have paid or incurred liability for costs and/or expenses that inured to the benefit of the Receivership and/or its subsidiaries after the Receivership Date.  These amounts may include, without limitation, liability and/or expenses (including professional fees) incurred by BUFC as a result of New Bank's decision to exclude certain contracts from the Purchase and Assumption Agreement and expenses incurred by BUFC that may have benefitted BUFSB (the "**Administrative Claims**").

**THE FDIC-RECEIVER'S FAILURE**
**TO DISALLOW PLAINTIFFS' RECEIVERSHIP PROOF OF CLAIMS**

125.    As alleged above, Plaintiffs filed their Receivership Proof of Claims with the FDIC-Receiver on August 27, 2009.

126.    12 U.S.C. § 1821(d)(5)(A)(i) requires that, "[b]efore the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation *shall* determine whether to allow or disallow the claim and *shall* notify the claimant of any determination with respect to such claim" (emphasis added).

127.    The FDIC-Receiver failed to determine whether to allow or disallow the Plaintiffs' claims on or before February 23, 2010 – the date that was 180 days after the date the Plaintiffs filed their Receivership Proof of Claims with the FDIC-Receiver – and failed to notify the Plaintiffs of any determination with respect to such claim, in violation of its statutory mandate to do so pursuant to 12 U.S.C. § 1821(d)(5)(A)(i).  Through the date of filing of this complaint, the FDIC-Receiver has failed to notify the Plaintiffs of any determination with respect to their Claims.

128.    12 U.S.C. § 1821(d)(6)(A) provides:

Before the end of the 60-day period beginning on the earlier of—

> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

129.    Plaintiffs filed suit on the Receivership Proof of Claims pursuant to 12 U.S.C. § 1821(d)(6)(A) in the United States District Court for the Southern District of Florida (the **"District Court"**) on April 22, 2010.  By *Order* entered on August 20, 2010 in Case Nos. 10-CV-21307-HUCK (DE #27) and 10-CV-22343-HUCK (DE #19), the District Court ruled, among other things, that "the Bankruptcy Court – which has presided over the Chapter 11 cases since their inception – is at this juncture the most efficient and appropriate forum in which to resolve the Parties' claims."  Order at 5.  And by respective *Order Dismissing and Closing Case*

entered on August 23, 2010 in Case No. 10-CV-21307-HUCK (DE #28), and *Order Remanding and Closing Case* entered on August 23, 2010 in Case No. 10-CV-22343-HUCK (DE #20), the District Court remanded or referred to Plaintiffs' suit on the Receivership Proof of Claims to this Court.

## CONDITIONS PRECEDENT

130.    Any and all conditions precedent to the commencement of this adversary proceeding have been satisfied, occurred or been waived.

## CLAIMS FOR RELIEF

### Count I
### Objection to FDIC Proof of Claim pursuant
### to Federal Rule of Bankruptcy Procedure 3007

131.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-29 and 130 above in their entirety.

132.    The Debtors object to the FDIC Proofs of Claim in their entirety.

133.    To the extent any portion of the FDIC Proofs of Claim is based on a writing, the FDIC-Receiver has failed to file any such writings – other than the Tax Sharing Agreement – with the FDIC Proof of Claim, as required by Federal Rule of Bankruptcy Procedure 3001(c).

134.    The Debtors owe no capital maintenance obligations to any party, including the FDIC-Receiver, and have no liability for any losses sustained by BUFSB or the Receivership.

135.    The FDIC-Receiver has failed to attach to the FDIC-Proof of Claim any writing establishing the existence of any capital maintenance obligations.

136.    The FDIC-Receiver is not entitled to the Refunds or any portion thereof.

137.    Any claims by the FDIC-Receiver in respect of any Refunds or portions thereof are at most general unsecured claims against BUFC's estate.

138.    The FDIC-Receiver is not entitled to any priority claims under 11 U.S.C. §§ 507(a)(9), 503, or 365(o) in respect of any capital maintenance obligations.

139.    [Intentionally omitted.]

140.    [Intentionally omitted.]

141.    The FDIC-Receiver has no ownership interest in any claims, nor any proceeds paid under any applicable insurance policies covering such claims, relating to breaches of fiduciary duties, negligence and/or gross negligence of the directors and officers of BUFC to BUFSB.  BUFC's estate owns all of the foregoing claims and any proceeds paid under any applicable insurance policies covering such claims.

142.    The FDIC-Receiver has no ownership interest in any claims, nor any proceeds paid under any applicable insurance policies covering such claims, relating to professional malpractice, professional negligence and/or gross negligence, breaches of fiduciary duties, constructive fraud and/or fraud of third party professionals of BUFC and/or BUFSB relating to the provision of services to BUFSB.  BUFC's estate owns all of the foregoing claims and any proceeds paid under any applicable insurance policies covering such claims.

143.    [Intentionally omitted.]

144.    The Debtors are not liable to the FDIC-Receiver for any liability in connection with any claims set forth in the FDIC Proofs of Claim.

145.    Alternatively, any claims by the FDIC-Receiver in respect of any claims set forth in the FDIC Proofs of Claim are at most general unsecured claims against one or more of the Debtors' estates.

**Count II**
**Declaratory Judgment pursuant to 28 U.S.C. § 2201 and**
**Federal Rules of Bankruptcy Procedure 7001(2) and (9)**
**that the Refunds are property of BUFC's estate**
**pursuant to Bankruptcy Code Section 541 and that**
**the FDIC-Receiver has merely a general unsecured claim**

146.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-29, 61-65, and 130 above in their entirety.

147.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine the relative rights of, and resolve an actual and existing controversy between, BUFC and the FDIC-Receiver.

148.    The Tax Sharing Agreement does not create any trust running from BUFC to the other members of the consolidated tax group and no grounds exist for implying the existence of such a trust.

149.    The Tax Sharing Agreement creates a debtor-creditor relationship between BUFC and the other members of the consolidated tax group.

150.    The FDIC-Receiver is a mere unsecured claimant with respect to any portion of the Refunds that are due it (if any) from BUFC, but ownership of the entirety of the Refunds is vested solely in BUFC.

151.    Pursuant to Section 541 of the Bankruptcy Code, all Refunds are property of BUFC's Chapter 11 estate.

**Count III**
**Turnover of Personal Property**
**pursuant to Bankruptcy Code Section 542**

152.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 50-52, and 125-130 above in their entirety.

153.    The Personal Property is property of one or more of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541.

154.    The FDIC-Receiver is obligated to turn over the Personal Property to the Debtors pursuant to 11 U.S.C. § 542, plus other presently unknown amounts in respect of the Personal Property.

**Count IV**
**Turnover of funds held by PACs**
**pursuant to Bankruptcy Code Section 542**

155.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 53-55, and 125-130 above in their entirety.

156.    Any and all funds held by the PACs are property of one or more of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541.

157.    The FDIC-Receiver is obligated to turn over any and all funds held by the PACs to the Debtors pursuant to 11 U.S.C. § 542 (or, in the alternative, an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC to payment of 100% of its claim) in the amount of not less than $88,869, plus other presently unknown amounts in respect of the PACs.

**Count V**
**Turnover of funds held in the Plans**
**pursuant to Bankruptcy Code Section 542**

158.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 56-58, and 125-130 above in their entirety.

159.    Any and all funds held in the Deferred Compensation Plan are property of BUFC's bankruptcy estate pursuant to 11 U.S.C. § 541.

160.    The FDIC-Receiver is obligated to turn over any and all funds held in the Deferred Compensation Plan to BUFC pursuant to 11 U.S.C. § 542 (or, in the alternative, BUFC

is entitled to an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC to payment of 100% of its claim) in the amount of not less than $39,600.

### Count VI
**Turnover of unpaid fees and commissions**
**pursuant to Bankruptcy Code Section 542**

161.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 38-39, and 125-130 above in their entirety.

162.    All unpaid fees and commissions set forth in paragraphs 38 and 39 above are property of one or more of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541.

163.    The FDIC-Receiver is obligated to turn over any and all unpaid fees and commissions set forth in paragraphs 38 and 39 above to the Debtors pursuant to 11 U.S.C. § 542, plus other presently unknown amounts.

### Count VII
**Avoidance of preferences**
**pursuant to Bankruptcy Code Section 547**

164.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 77-82, 102-104, 107, 113-120, and 125-130 above in their entirety.

165.    The 547 Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

166.    The Debtors are entitled to recover the 547 Transfers, or the value of such property transferred, from the FDIC-Receiver for the benefit of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 550(a), in the amount of at least $7.9 million, plus other presently unknown amounts.

### Count VIII
**Avoidance of fraudulent transfers**
**pursuant to Bankruptcy Code Section 548**

167.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 77-91, 101, 104-105, 108-111, 115-120, and 125-130 above in their entirety.

168.    The 548 transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1).

169.    The Debtors are entitled to recover the 548 Transfers, or the value of such property transferred, from the FDIC-Receiver for the benefit of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 550(a), in the amount of at least $175 million, plus other presently unknown amounts.

### Count IX
### Avoidance of fraudulent transfers pursuant to Bankruptcy Code Section 544 and Florida Statutes Chapter 726

170.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 77-82, 92-101, 104-106, 108-109, 112, 115-120, and 125-130 above in their entirety.

171.    The 544 transfers are avoidable pursuant to 11 U.S.C. § 544(b)(1) and Chapter 726, Florida Statutes.

172.    The Debtors are entitled to recover the 544 Transfers, or the value of such property transferred, from the FDIC-Receiver for the benefit of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 550(a), in the amount of at least $185 million, plus other presently unknown amounts.

### Count X
### Indemnification, contribution and reimbursement claims

173.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 121-122, and 125-130 above in their entirety.

174.    The FDIC-Receiver is liable to the Debtors for all indemnification, contribution and reimbursement claims set forth in paragraphs 121 and 122 above.

175.    The Debtors are entitled to recover from the FDIC-Receiver all amounts in respect of all indemnification, contribution and reimbursement claims set forth in paragraphs 121

and 122 above, including without limitation all corresponding defense costs and/or judgments or settlements, plus other presently unknown amounts.

## Count XI
### Guaranty claims

176.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 47-49, and 125-130 above in their entirety.

177.    The FDIC-Receiver is liable to the Debtors for all guaranty claims asserted against any of the Debtors in respect of BUFSB, as set forth in paragraphs 47 through 49 above.

178.    The Debtors are entitled to recover from the FDIC-Receiver all amounts in respect of all guaranty claims set forth in paragraphs 47 through 49 above, plus other presently unknown amounts.

## Count XII
### Other amounts due for use of real property

179.    [Intentionally omitted.]

180.    [Intentionally omitted.]

181.    [Intentionally omitted.]

## Count XIII
### Other amounts due for usurping enterprise value of BUFS

182.    [Intentionally omitted.]

183.    [Intentionally omitted.]

184.    [Intentionally omitted.]

## Count XIV
### Other amounts due for intellectual property use

185.    [Intentionally omitted.]

186.    [Intentionally omitted.]

187.    [Intentionally omitted.]

<u>**Count XV**</u>
**Other amounts due for customer list use**

188.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 44-46, and 125-130 above in their entirety.

189.    The FDIC-Receiver is liable to the Debtors for all Customer List use, as set forth in paragraphs 44 through 46 above.

190.    The Debtors are entitled to recover from the FDIC-Receiver all amounts for all Customer List use, as set forth in paragraphs 44 through 46 above, plus other presently unknown amounts.

<u>**Count XVI**</u>
**Other amounts due for real, personal and other property taxes**

191.    [Intentionally omitted.]

192.    [Intentionally omitted.]

193.    [Intentionally omitted.]

<u>**Count XVII**</u>
**Other amounts due for employee, officer, and directors claims**

194.    [Intentionally omitted.]

195.    [Intentionally omitted.]

196.    [Intentionally omitted.]

<u>**Count XVIII**</u>
**Other amounts due for professional fee claims**

197.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 68, and 125-130 above in their entirety.

198.    The FDIC-Receiver is liable to the Debtors for all professional fee claims, as set forth in paragraph 68 above.

199.    The Debtors are entitled to recover from the FDIC-Receiver all professional fee claims, as set forth in paragraph 68 above, plus other presently unknown amounts.

## Count XIX
### Other amounts due for intercompany advances

200.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 69-74, and 125-130 above in their entirety.

201.    The FDIC-Receiver is liable to the Debtors for all intercompany advances in the amount of at least $46,902,483, plus other presently unknown dollar amounts, as set forth in paragraphs 69 through 74 above.

## Count XX
### Other amounts due for services

202.    [Intentionally omitted.]

203.    [Intentionally omitted.]

204.    [Intentionally omitted.]

## Count XXI
### Other amounts due

205.    [Intentionally omitted.]

206.    [Intentionally omitted.]

207.    [Intentionally omitted.]

## Count XXII
### Administrative Claims

208.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-34, 124, and 125-130 above in their entirety.

209.    The FDIC-Receiver is liable to the Debtors for the Administrative Claims, as set forth in paragraph 124 above.

210.    The Debtors are entitled to recover from the FDIC-Receiver all Administrative Claims, as set forth in paragraph 124 above, plus other presently unknown amounts.

### Count XXIII
### Allowance of Plaintiffs' Receivership Proof of Claims

211.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14, 30-130, and 149-210 above in their entirety.

212.    The FDIC-Receiver's failure to consider Plaintiffs' Receivership Proof of Claims and failure to notify the Plaintiffs of the allowance or disallowance of their Receivership Proof of Claims are an abrogation of the FDIC-Receiver's statutory duties.

213.    Each Claim is a valid and proven claim and should be allowed against the Receivership, and the FDIC-Receiver is obligated to pay such Claims (subject to, and in accordance with, 12 U.S.C. § 1821(d)(11)).

### Count XXIV
### Demand for Accounting

214.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-14 and 30-130 above in their entirety.

215.    Plaintiffs are entitled to an accounting of the disposition of assets of the Receivership if any of their Claims are not satisfied in full.

216.    Plaintiffs are entitled to an accounting of all property transferred from Plaintiffs in connection with the Receivership.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

(a)    Disallow the FDIC Proof of Claim;

(b)      Declare that the Refunds are property of BUFC's bankruptcy estate and that the FDIC-Receiver has at most a general unsecured claim as to any amount of the Refund to which it otherwise would be entitled;

(c)      Order the FDIC-Receiver to turn over to the Debtors the Personal Property and provide a complete accounting thereof;

(d)      Order the FDIC-Receiver to turn over to the Debtors any and all funds held by the PACs and provide a complete accounting thereof;

(e)      Order the FDIC-Receiver to turn over to BUFC any and all funds held in the Deferred Compensation Plan and provide a complete accounting thereof;

(f)      Order the FDIC-Receiver to turn over to the Debtors any and all unpaid fees and commissions set forth in paragraphs 38 and 39 above and provide a complete accounting thereof;

(g)      Avoid the 547 Transfers;

(h)      Avoid the 548 Transfers;

(i)      Avoid the 544 Transfers;

(j)      Order the FDIC-Receiver to return to the Debtors the 547 Transfers, the 548 Transfers, and the 544 Transfers, or the value of such property transferred;

(k)      Determine that the FDIC-Receiver is liable to the Debtors for all indemnification, contribution and reimbursement claims set forth in paragraphs 121 and 122 above;

(l)      Determine that the FDIC-Receiver is liable to the Debtors for all guaranty claims set forth in paragraphs 47 through 49 above;

(m)      [Intentionally omitted.];

(n)      [Intentionally omitted.];

(o)      [Intentionally omitted.];

(p)     Determine that the FDIC-Receiver is liable to the Debtors for the Customer List use claims set forth in paragraphs 44 through 46 above;

(q)     [Intentionally omitted.];

(r)     [Intentionally omitted.];

(s)     Determine that the FDIC-Receiver is liable to the Debtors for all professional fee claims set forth in paragraph 68 above;

(t)     Determine that the FDIC-Receiver is liable to the Debtors for all intercompany advances as set forth in paragraphs 69 through 74 above;

(u)     [Intentionally omitted.];

(v)     [Intentionally omitted.];

(w)     Determine that the FDIC-Receiver is liable to the Debtors for all Administrative Claims as set forth in paragraphs 124 above;

(x)     Declare Plaintiffs' Claims to be valid and proven against the Receivership;

(y)     Allow Plaintiffs' Claims against the Receivership in the amount of not less than $414,930,952;

(z)     Direct the FDIC-Receiver to pay the Claims from the assets of the Receivership in accordance with 12 U.S.C. § 1821(d)(11);

(aa)     Direct the FDIC-Receiver to provide Plaintiffs with an accounting of the disposition of assets of the Receivership if any Claim is not satisfied in full;

(bb)     Direct the FDIC-Receiver to provide Plaintiffs with an accounting of all property transferred from Plaintiffs in connection with the Receivership;

(cc)     Enter judgment in favor of Plaintiffs and against the Defendants with respect to all of the foregoing;

(dd)    Award Plaintiffs costs and attorneys fees as may be permitted by law; and

(ee)    Award Plaintiffs such other relief as may be just.

Dated September 2, 2010.                    Respectfully submitted,

                                            GREENBERG TRAURIG, P.A.
                                            Counsel for Plaintiffs
                                            1221 Brickell Avenue
                                            Miami, Florida 33131
                                            Telephone: (305) 579-0500
                                            Facsimile: (305) 579-0717


                                            By:  ___/s/ Mark D. Bloom_____
                                                    MARK D. BLOOM
                                                  Florida Bar No. 303836
                                                    bloomm@gtlaw.com
                                                 JACQUELINE BECERRA
                                                  Florida Bar No. 0025135
                                                    becerraj@gtlaw.com
                                                 SCOTT M. GROSSMAN
                                                  Florida Bar No. 0176702
                                                   grossmansm@gtlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF, who are authorized to receive electronically Notices of Electronic Filing in this adversary proceeding.

                                            ___/s/ Mark D. Bloom_____
                                                    MARK D. BLOOM

40

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this adversary proceeding:

Bruce J Berman - bberman@mwe.com; wjanke@mwe.com; graicht@mwe.com; knorcross@fdic.gov; slevine@fdic.gov

Mark D Bloom - bloomm@gtlaw.com, phillipsj@gtlaw.com; MiaLitDock@gtlaw.com; miaecfbky@gtlaw.com

Scott M. Grossman - grossmansm@gtlaw.com, jacksont@gtlaw.com; MiaLitDock@gtlaw.com; miaecfbky@gtlaw.com

Sameer K Kapoor - skapoor@kilpatrickstockton.com, tmeyers@kilpatrickstockton.com

*MIA 181,335,365v5*

**EXHIBIT A**

# BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 10/20/06 | $30,975 | CK DEP IFMG 10/20 |
| 10/27/06 | $234,904 | INTERCO TX SHARING 2005 |
| 10/31/06 | $300 | TX CRT XFR TO BFC RECOV |
| 10/31/06 | $7,923 | BUFS PAYROLL |
| 10/31/06 | $8,274 | BUFS PAYROLL |
| 10/31/06 | $58 | BUFS PAYROLL |
| 10/31/06 | $3,390 | REV BUFS PAYROLL |
| 11/01/06 | $293,227 | REV J103106EE |
| 11/06/06 | $23,201 | BUFS 2006 BONUS SALARY |
| 11/06/06 | $1,775 | BUFS 2006 BONUS FICA |
| 11/15/06 | $3,997 | BUFS PAYROLL |
| 11/15/06 | $3,997 | BUFS PAYROLL |
| 11/20/06 | $26,370 | CK DEP IFMG 11/20 |
| 11/30/06 | $3,997 | BUFS PAYROLL |
| 11/30/06 | $5,065 | BUFS PAYROLL |
| 11/30/06 | $277 | BUFS PAYROLL |
| 12/13/06 | $22,204 | R ORTIZ.RS TAXES REVERS |
| 12/15/06 | $3,997 | BUFS PAYROLL |
| 12/15/06 | $3,997 | BUFS PAYROLL |
| 12/15/06 | $1,226 | RSTK TX VT |
| 12/20/06 | $41,300 | CK DEP IFMG-12/20 |
| 12/21/06 | $902,973 | CLEAR INTERCO THROUGH 1 |
| 12/29/06 | $5,000 | BUFS 12/29/06 DEF DED |
| 12/31/06 | $404 | TX EFFECT AMTZ I/C GAIN |
| 01/12/06 | $1,000 | REV J012907A |
| 01/12/06 | $1,000 | REV J013107BB |
| 01/12/06 | $1,000 | REV J012907A |
| 01/02/07 | $1,036 | BUFS 123106 RSTK |
| 01/12/07 | $1,000 | MAT STATE OF ISRAEL-BU |
| 01/19/07 | $31,885 | CK DEP IFMG 01/19 |
| 01/23/07 | $67,187 | RS TAXES RETURNED |
| 01/29/07 | $2,000 | INC TAX REC |
| 02/01/07 | $99,990 | TRANS RS EXP.FORD SHULA |
| 02/20/07 | $25,905 | CK DEP IFMG 02/20 |
| 02/28/07 | $9,468 | BUFS DIRECT DEP REV |

# BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---:|---|
| 02/28/07 | $3,739 | BUFS PAY TAX REV |
| 02/28/07 | $885 | BUFS 401K REV |
| 02/28/07 | $4,708 | RCLS SNL FINANCIAL PPD |
| 03/02/07 | $4,230 | DIVIDEND PAID REIT |
| 03/14/07 | $417 | BFC PAYROLL - RETRO |
| 03/14/07 | $7,399 | BFC PAYROLL - SALARIES |
| 03/14/07 | $185 | BFC PAYROLL - SICK |
| 03/14/07 | $606 | BFC PAYROLL - FICA EMPL |
| 03/14/07 | $121 | STATE & FED UNEMPL |
| 03/20/07 | $46,203 | CK DEP IFMG 03/20 |
| 03/22/07 | $2,086,146 | CLR INTERCO THRU 022807 |
| 03/27/07 | $225 | DIVIDEND PAID REIT FEB |
| 03/27/07 | $225 | DIVIDEND PAID REIT MARC |
| 03/30/07 | $1,768 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $3,480 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $184 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,426 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $3,346 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,603 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,281 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $13,088 | NET PAY |
| 03/30/07 | $45 | DIVIDEND PAID REIT |
| 03/30/07 | $66,270 | TRANSF EXP MAR07 |
| 03/31/07 | $408 | TX EFFECT AMTZ I/C GAIN |
| 04/13/07 | $1,768 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $3,480 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $184 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,534 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $3,346 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,603 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,451 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $13,367 | NET PAY |
| 04/13/07 | $3,365 | BUFS PAYROLL REV |
| 04/13/07 | $3,365 | BUFS PAYROLL REV |
| 04/23/07 | $35,787 | CK DEP IFMG-4/23 |
| 05/15/07 | $1,290 | DIRECT DEPOSIT |
| 05/15/07 | $83 | MED REIMB & DEP CARE |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 05/15/07 | $400 | PAYROLL TAXES |
| 05/15/07 | $151 | 401K |
| 05/24/07 | $38,931 | CK DEP IFMG-5/23 |
| 06/14/07 | $5,764 | BUFS PAYROLL REV |
| 06/20/07 | $73,932 | CK DEP IFMG 06/20 |
| 06/25/07 | $1,448,716 | CLEAR INTERCO THROUGH 5 |
| 06/29/07 | $282 | BUFS PYRL TAXES |
| 06/29/07 | $7,732 | BUFS RSTK TX VT DTE |
| 06/29/07 | $1,364 | RSTK TX   VT DTE |
| 06/30/07 | $2,969 | TAX EFFECT AMTZ LC GAIN |
| 07/20/07 | $27,189 | CK DEP IFMG 07/20 |
| 08/02/07 | $440 | RS TAXES REVERSAL |
| 08/15/07 | $3,712 | BUFS PAYROLL |
| 08/15/07 | $3,907 | 0815 FILE 99797,99798 |
| 08/20/07 | $31,189 | CK DEP IFMG 08/20 |
| 08/31/07 | $3,939 | BUFS CC 592 PAYROLL |
| 09/14/07 | $2,054,419 | CLEAR INTERCO THRU 0831 |
| 09/24/07 | $55,399 | CK DEP IFMG 0924 |
| 09/28/07 | $50 | PAYROLL TAXES |
| 09/30/07 | $1,064 | TX EFFECT AMTZ I/C GAIN |
| 10/15/07 | $100 | NET PAY |
| 10/15/07 | $2,534 | BUFS 401K REV |
| 10/22/07 | $24,073 | CK DEP IFMG 10/22 |
| 11/06/07 | $63,085 | BFC BONUS-2007 SALARIES |
| 11/06/07 | $1,441 | BFC BONUS-2007 FICA |
| 11/06/07 | $21,715 | BUFC BONUS-2007 SALARIE |
| 11/06/07 | $1,661 | BUFC BONUS-2007 FICA |
| 11/06/07 | $55 | BUFC BONUS-2007 UNEMP |
| 11/21/07 | $43,516 | CJ DEO IFMG 11/21 |
| 11/30/07 | $1,178 | BUFS PAYROLL REV |
| 11/30/07 | $100 | GIFT CARD FILE #700008 |
| 11/30/07 | $32,892 | RCLS CLARITAS CC552 |
| 11/30/07 | $2,599,391 | CLEAR INTERCO THROUGH 1 |
| 12/01/07 | $80,000 | COR TR SFEES FROM BUFC- |
| 12/01/07 | $80,000 | COR TR SFEES FROM BUFC- |
| 12/15/07 | $3,446 | REV J121407A |
| 12/15/07 | $3,446 | REV BUFS RSTK TX VT |

# BankUnited Financial Corporation
# Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 12/21/07 | $66,492 | CK DEP IFMG-12/21 |
| 12/26/07 | $3,500 | RCLS PWHC-#1030938389-0 |
| 12/26/07 | $103,500 | RCLS PWHC-#1090940537-0 |
| 12/31/07 | $1,247 | RSTK TX VT DTE |
| 12/31/07 | $1,354 | BUFS PAYROLL REV |
| 12/31/07 | $376 | TX EFFECT AMTX LC GAIN |
| 01/02/08 | $2,606 | RSTK TX VT DTE |
| 01/02/08 | $389 | BUFS PAYROLL REV |
| 01/02/08 | $2,300 | BUFS PAYROLL REV |
| 01/15/08 | $117 | BUFS PAYROLL REV |
| 01/24/08 | $27,900 | CK DEP IFMG-1/24 |
| 01/31/08 | $117 | BUFS PAYROLL REV |
| 02/14/08 | $117 | BUFS PAYROLL 021508 |
| 02/25/08 | $478,259 | CK DEP IFMG 02/25 |
| 02/27/08 | $36,677 | W/T BUFS SETTLEMENT |
| 02/28/08 | $117 | BUFS PAYROLL |
| 02/29/08 | $500 | BUFS GIFT/AWARD 2406 |
| 02/29/08 | $1,000 | BUFS GIFT/AWARD 099769 |
| 02/29/08 | $700 | BUFS GIFT/AWARD 099775 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099781 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099790 |
| 02/29/08 | $1,000 | BUFS GIFT/AWARD 099793 |
| 02/29/08 | $750 | BUFS GIFT/AWARD 099789 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099783 |
| 02/29/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 02/29/08 | $1,024,763 | CLEAR INTERCO THROUGH 2 |
| 03/01/08 | $211 | INTERCO W/BU |
| 03/01/08 | $512 | BUFS SUIER RATE ADJ 2/2 |
| 03/12/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 03/12/08 | $1,875 | REV J033108AA |
| 03/12/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 03/14/08 | $6 | DEFAULT-DEDUCTIONS 002585 |
| 03/14/08 | $140 | BUFS PAYROLL |
| 03/19/08 | $4,437 | TRANSF DEPR EXP OCT 08 |
| 03/19/08 | $4,115 | TRANS DEPR EXP NOV 08 |
| 03/20/08 | $69,180 | DEPOSIT IFMG 3/20 |
| 03/20/08 | $500,000 | XFER LPL FINWIRE->BUFS |

**BankUnited Financial Corporation**

**Schedule of Intercompany Receivables**

For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 03/31/08 | $58,518 | INTERCO BUFS TX SHAR TR |
| 03/31/08 | $6,417 | BUFS PAYROLL |
| 03/31/08 | $1 | BUFS PAYROLL |
| 03/31/08 | $3,770 | BUFS PAYROLL |
| 03/31/08 | $664 | TX EFFECT AMTZ I/C GAIN |
| 03/31/08 | $54,402 | COR SERV FEE   BUFC-FYE0 |
| 04/25/08 | $309 | DEPOSIT IFMG 04/25 |
| 04/30/08 | $5,625 | CLEAR W/T 4/1/08 |
| 05/15/08 | $850 | GIFT CERTIFICATE |
| 05/23/08 | $3,669 | DEPOSIT IFMG 05/23 |
| 05/30/08 | $2,088 | BUFS PAYROLL REV |
| 05/30/08 | $270 | TO ADJ ENTRY FROM FSB T |
| 05/31/08 | $200 | GIFT CERT #700002 |
| 06/13/08 | $252 | RSTK TX VT DTE |
| 06/26/08 | $3,837,745 | CLEAR INTERCO THROUGH 5 |
| 06/30/08 | $346 | TX EFFECT AMTX I/C GAIN |
| 07/11/08 | $16 | RCLS PITNEY BOWES042108 |
| 07/14/08 | $1,820 | TRANS TXS D CAMNER |
| 07/21/08 | $0 | RR DONN-#1202531800 |
| 07/25/08 | $20,731 | SHULA BU CK141059 |
| 07/30/08 | $5,000 | PAY ADJ FILE 99794 #82 |
| 08/14/08 | $1,368 | BUFS PAYROLL REV |
| 08/29/08 | $25 | BUFS PAYROLL REV |
| 08/29/08 | $4,400 | CR FOR INV LF M SHAPIRO |
| 08/31/08 | $15,563 | DIRECT DEPOSIT |
| 08/31/08 | $15 | PAC CONTRIBUTIONS |
| 08/31/08 | $6,423 | PAYROLL TAXES |
| 08/31/08 | $135 | UNITED WAY |
| 08/31/08 | $1,617 | 401K |
| 08/31/08 | $925 | CR FOR INV LF M SHAPIRO |
| 09/04/08 | $100,000 | REV J082908FF |
| 09/26/08 | $4,887,554 | CLEAR INTERCO   THROUGH |
| 09/30/08 | $9 | PAYROLL TAXES |
| 09/30/08 | $235 | RSTK TX VT DTE |
| 09/30/08 | $1,253 | BUFS PAYROLL REV |
| 09/30/08 | $4,400 | COR 09/25/08 |
| 09/30/08 | $1,034 | TX EFFECT AMTZ I/C GAIN |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---|---|
| 09/30/08 | $955,276 | COR MNGMT FEE BFC-FYE08 |
| 09/30/08 | $95,424 | COR SERV FEE   BUFC-FYE0 |
| 10/15/08 | $111 | BUFS PAY TAX REV |
| 10/16/08 | $23,999 | COR SERV FEE   BUFC |
| 10/31/08 | $2,106 | BUFS PAYROLL REVERSALS |
| 10/31/08 | $5,962 | AJE 2 RCLS OCT08 |
| 10/31/08 | $456 | AJE 3 RCLS PAYROLL TAXE |
| 10/31/08 | $486 | AJE 10 RCLS OCT BENEFIT |
| 10/31/08 | $1,262 | AJE 12 BENEFITS-RESTRUC |
| 12/15/08 | $7 | PAYROLL TAXES |
| 12/15/08 | $261 | RSTK TX VT DTE |
| 12/15/08 | $350 | BUFS PAYROLL REV |
| 12/15/08 | $22 | BUFS PAYROLL |
| 12/30/08 | $15 | BUFS PAYROLL REV |
| 12/31/08 | $4,554,261 | CLEAR INTERCO THRU 11-3 |
| 12/31/08 | $408 | TX EFFECT AMTZ I/C GAIN |
| 12/31/08 | $422 | RSTK TX VT DTE |
| 12/31/08 | $33 | BUFS PAYROLL REV |
| 01/30/09 | $3,763 | DIRECT DEPOSIT |
| 01/30/09 | $10 | PAC CONTRIBUTIONS |
| 01/30/09 | $2,197 | PAYROLL TAXES |
| 01/30/09 | $75 | STDSP |
| 01/30/09 | $100 | UNITED WAY |
| 01/30/09 | $1,279 | 401K |
| 02/27/09 | $32,309 | TRANSF ANNUITY EXP FEB0 |
| 02/28/09 | $139,276 | COR MNGMT FEE BFC-FYE09 |
| 03/13/09 | $324,024 | CLEAR INTERCOM-BFC PAYR |
| 03/19/09 | $2,610 | RCLS HUMBERTO LOPEZ-#12 |
| 03/25/09 | $10 | RCLS EOI DIRECT 547883 |
| 03/31/09 | $42 | BUFS PAYROLL REV |
| 03/31/09 | $2,147 | TX EFFECT AMTZ L/C GAIN |
| 04/02/09 | $69,744 | CLEAR INTERCOM-BFC PAYR |
| 04/20/09 | $263,833 | CLEAR INTERCOM-BFC PAYR |
| 04/30/09 | $17,934,795 | 2008 TAX SETTLEMENT OF |
| 04/30/09 | $7,460 | 2008 TAX SETTLEMENT OF |
| 04/30/09 | $437 | RCLS PROC LOSSES |
| 04/30/09 | $52,105 | CLEAR INTERCOMPANY-BFC |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|-------|-------|
| 05/13/09 | $147,282 | CLEAR INTERCOM-BFC PAYR |
| **TOTAL:** | **$    46,902,483** | |