UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,

      Debtors.

_____/

BANKUNITED FINANCIAL
CORPORATION, BANKUNITED
FINANCIAL SERVICES, INC., CRE
AMERICA CORPORATION, and BU
REALTY CORPORATION,

      Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as Receiver
of BankUnited, FSB,

      Defendant.

_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

Adv. No. 10-02872-LMI

**DEFENDANT'S MEMORANDUM (A) IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT AND
FOR SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT AND (B) IN
SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON
<u>COUNTS I AND II OF THE AMENDED COMPLAINT</u>**

Defendant Federal Deposit Insurance Corporation, as Receiver ("FDIC-R") of

BankUnited, FSB ("BankUnited"), hereby opposes the Plaintiffs BankUnited Financial

Corporation ("BUFC"), BankUnited Financial Services, Inc., CRE America Corporation, and

BU Realty Corporation (collectively, "Plaintiffs") Motion for Partial Summary Judgment on

Count I of the Complaint and for Summary Judgment on Count II of the Complaint ("Plaintiffs'

Motion" or "Pl. Mot.") and cross moves for summary judgment ("FDIC-R's Cross Motion") on Counts I and II of the Amended Complaint ("Amended Complaint" or "Am. Compl."). In support thereof, the FDIC-R asserts as follows:

## PRELIMINARY STATEMENT

BUFC argues in its Motion that it is entitled to the tax refunds at issue because the Income Tax Allocation Agreement ("TAA") purportedly creates a debtor-creditor relationship in BUFC's favor. (Pl. Mot. at 14-17.) Yet the very TAA provisions and case law on which BUFC relies mandate just the opposite result – that BankUnited (and its successor, the FDIC-R) is the owner of the tax refunds. Accordingly, summary judgment on Counts I and II of the Amended Complaint should be granted to the FDIC-R.

As BUFC admits, a long line of cases holds that, in the absence of a tax sharing agreement that clearly states otherwise, the law imposes a constructive trust over any portion of a tax refund due by a parent to its subsidiary. The mere existence of a tax sharing agreement does not automatically destroy this principal-agent relationship. Rather, courts have held that a tax sharing agreement *may,* under certain circumstances, alter the principal-agent relationship that exists between the bank and the holding company and create a "debtor-creditor relationship." Where such a debtor-creditor relationship is created, courts have held that the "debtor" in that relationship owns any refund that it receives on behalf of the corporate affiliates and the affiliates are general unsecured creditors.

The essential facts here are undisputed. BUFC admits that the TAA provides that *BankUnited*, not BUFC has: (1) the right to receive tax refunds on behalf of the affiliated group; (2) the obligation to allocate any tax refunds to the members of the affiliated group; and (3) the right to be reimbursed by members of the affiliated group if BankUnited pays more than its proportional share of the taxes. The TAA thus reinforces the presumption that, should BUFC

receive a consolidated tax refund, it must hold in trust for BankUnited any portion of that tax refund attributable to BankUnited. Accordingly, summary judgment should be granted to the FDIC-R and the FDIC-R should be determined to be the owner of BankUnited's allocated share of the tax refunds at issue.

Alternatively, even if the Court is persuaded that the TAA created a debtor-creditor relationship between the parties, BankUnited is still entitled to summary judgment on Counts I and II of the Amended Complaint because *BankUnited* – not BUFC – is the debtor in any such relationship. The cases relied on by BUFC specifically hold that the "debtor" in the debtor-creditor relationship is the entity that has the right to receive tax refunds, the obligation to allocate any tax refunds amongst affiliated group members, and the right to reimbursement from the affiliated group for tax over-payments. Under the TAA, only BankUnited has those rights and obligations. Therefore, the FDIC-R owns the *entirety* of the tax refunds and none of the tax refunds can be part of the Chapter 11 estate. BUFC would be at most an unsecured creditor of BankUnited's receivership for any allocable portion of the refunds.

## STATEMENT OF UNCONTESTED FACTS

The Tax Allocation Agreement

On December 31, 1997, BankUnited and BUFC entered into the TAA. (Am. Compl. ¶ 16.) A true and complete copy of the TAA is attached hereto as Exhibit A. The TAA is governed by the laws of the State of Delaware. *See* TAA § 8.

The TAA defines "the Company" as BUFC. *Id.* at 1. "Recital A" of the TAA states that the purpose of the agreement is to define the appropriate methods "for the allocation of current and deferred income tax assets and liabilities between the Company, BankUnited and other

members of the Affiliated Group."[1]  Recital B states that the TAA sets out to "provide for the

settlement of income tax amounts between [BUFC], BankUnited and other members of the

Affiliated Group."  (*Id.*)

Importantly, as BUFC admits, Section 1 of the TAA specifically provides that

*BankUnited*, not BUFC, is responsible for "making all consolidated income tax payments on

behalf of the Affiliated Group. . . ."  (Am. Compl. ¶ 20; Pl. Mot. at 4.)  Section 1 of the TAA

states in pertinent part:

> 1. <u>Payment of Income Taxes.</u>  ***BankUnited*** shall be responsible for
> making all consolidated income tax payments on behalf of the Affiliated Group to
> the appropriate taxing authorities . . . .

TAA § 1 (emphasis added).

Similarly, pursuant to Section 4 of the TAA, after BankUnited pays the consolidated

income taxes on behalf of the Affiliated Group, the Group members are required to "reimburse"

BankUnited for each member's proportional share of any consolidated tax liability within 30

days after a tax return is filed or after BankUnited submits a consolidated income tax payment.

(Am. Compl. ¶ 20; Pl. Mot. at 4.)  Conversely, BankUnited is obligated to reimburse any

Affiliated Group member who has a net tax receivable.  (*Id.*)  As Section 4 of the TAA states:

> 4. <u>Settlement of Inter-Company Income Tax Receivables and Payables.</u>
> Within 30 days following the remittance ***by BankUnited*** of any income tax
> payment, any member of the Group having a net inter-company income tax
> payable as determined under Section 3 shall pay ***to BankUnited*** such amount as
> reimbursement for payment of its proportional share of the consolidated current
> income tax liability. . . .  Not less frequently than annually following the filing of
> any periodic income tax return or amended return, and within 30 days of such
> event, each member of the Group having a net inter-company income tax payable
> shall pay such amount ***to BankUnited***; and ***BankUnited*** shall reimburse any
> member of the Group for net inter-company income tax receivables.  Any income

---

[1] BUFC and BankUnited are members of an "Affiliated Group" (also referred to as "Group").  *See* TAA at 1.

tax refunds received *by BankUnited* shall be allocated among, and *paid to* the members of the Group in accordance with Sections 2 and 3.[2]

*Id.* § 4 (emphasis added).

Pursuant to Section 7 of the TAA, BUFC may (with the approval of the board of directors of BUFC and BankUnited) waive the reimbursement of any tax receivable from BankUnited and classify such refund as additional paid-in capital to BankUnited.  Section 7 provides:

> 7.    Treatment of Income Tax Losses by Company.  In consideration of [BUFC's] obligation and desire to provide additional sources of financial support to BankUnited, *[BUFC] may from time to time with the approval of the Board of Directors of [BUFC] and BankUnited contribute amounts of inter-company income tax receivables from BankUnited as additional paid-in capital to BankUnited in lieu of payment by BankUnited.*

*Id.* § 7 (emphasis added).

The Appointment of the FDIC as Receiver

On May 21, 2009, BankUnited was closed by the Office of Thrift Supervision ("OTS") and the FDIC was appointed as Receiver of BankUnited.  (Am. Compl. ¶ 11; Pl. Mot. at 3.)  On May 22, 2009, BUFC and certain affiliates each filed petitions under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for District of Florida (the "Bankruptcy Cases").  (Am. Compl. ¶ 11; Pl. Mot. at 3.)  The TAA was in effect on both of those dates.

The Tax Refunds

Prior to the Bankruptcy Cases, BankUnited, BUFC and the Affiliated Group sometimes elected to file consolidated federal income tax returns.  (Am. Compl. ¶¶ 20-21.)  The TAA is

---

[2] As provided in Section 2 of the TAA, BUFC and BankUnited must jointly "determine the current and deferred income tax assets and liabilities of each member of the Affiliated Group on a separate-entity basis."  TAA § 2.  Each member of the Group had the right to determine its own individual portion of the consolidated income tax assets and liabilities.  *Id.*  Under Section 3 of the TAA, "[e]ach member of the Group shall record an inter-company net income tax asset of liability as determined in Section 2."  TAA § 3.

silent as to which entity is responsible for filing the consolidated tax returns. However, as BUFC admits, the parent company's filing of the consolidated tax returns on behalf of an affiliated group "is solely for the convenience and protection of the Internal Revenue Service and is not intended to affect the determination of the entity to which the tax refund belongs." (Pl. Mot. at 10-11) (internal quotations and citation omitted).

On or about September 10, 2009, BUFC filed a consolidated tax return on behalf of the Affiliated Group for the fiscal year ending September 30, 2008 (the "2007 Tax Return"). (Am. Compl. ¶ 21; Pl. Mot. at 6.) On September 30, 2009, in connection with the 2007 Tax Return, BUFC filed a Form 1139 seeking a refund on behalf of the Affiliated Group of $5,566,878 (the "2007 Refund"). (Am. Compl. ¶ 22; Pl. Mot. at 6.)

On or about June 14, 2010, BUFC filed a consolidated tax return on behalf of the Affiliated Group for the fiscal year ending September 20, 2009 (the "2008 Tax Return"). (Am. Compl. ¶ 21; Pl. Mot. at 6.) On July 17, 2010, in connection with the 2008 Tax Return, BUFC filed a Form 1139 seeking a refund on behalf of the Affiliated Group of $42,552,226 (the "2008 Refund" and, collectively with the "2007 Refund," the "Tax Refunds"). (Am. Compl. ¶ 22; Pl. Mot. at 6.) On October 7, 2010, BUFC filed Forms 1120X seeking the 2008 Refund on behalf of the Affiliated Group.

On each of the Forms it filed, BUFC instructed the United States Treasury to issue the Tax Refunds directly to BUFC by wire transfer. (Am. Compl. ¶ 23; Pl. Mot. at 6.) Although BUFC filed claims for the Tax Refunds, the Tax Refunds are generated from taxes paid by BankUnited and by net operating losses that were largely BankUnited's.[3]

---

[3] BUFC attached what it asserts are true and complete copies of its tax filings to BUFC's Motion to Seal Certain Tax Documents [DE No. 82]. According to the schedule on page 29 of the 2008 Tax Return, titled Allocation of Current Consolidated Net Operating Losses to Member Corporations, a substantial majority of the Affiliated Group's

(continued...)

The FDIC-R filed a Proof of Claim in each of the Bankruptcy Cases. (Am. Compl. ¶ 15; Pl. Mot. at 4-5.)  In its Proof of Claim, the FDIC-R asserts its claims and rights (as against BUFC) in connection with the 2007 and 2008 Tax Refunds in the FDIC-R's capacity as receiver for BankUnited. (*See* Proof of Claim No. 103 at 3-4, § 7(a).)[4]

As stated in its Proof of Claim, the FDIC-R contends that "all federal, state and local tax related refunds that are outstanding based on filed consolidated tax returns or returns to be filed, are due and owing only to BankUnited . . . ." (*Id.* at 4.)  The Proof of Claim further states that "BankUnited was the principal operating entity for the [BUFC] enterprise and it was BankUnited that incurred significant losses which are the basis of pending tax refunds owed by the IRS, state and local tax authorities.  All such refunds are property of BankUnited and not the BUFC's estate . . . . " (*Id.* at 4, § 7(c).)

As a result of the dispute over the Tax Refunds,[5] the FDIC-R and BUFC and certain affiliates entered into a Stipulation Between the Debtors and the Federal Deposit Insurance Corporation with Respect to the Establishment of an Escrow Account [DE. No. 339] to hold the proceeds of the Tax Refunds in connection with the Bankruptcy Cases. (Am. Compl. ¶ 27; Pl. Mot. at 7.)

On September 2, 2010, Plaintiffs filed their Amended Complaint.  In Counts I and II of the Amended Complaint, Plaintiffs object to the FDIC-R's Proof of Claim and seek a declaration

---

approximately $3.75 billion consolidated loss was generated by BankUnited.  The FDIC-R was not given advance notice that any of these filings would be made nor was the FDIC-R consulted on them.

[4] For purposes of simplicity, only Proof of Claim number 103 filed against BUFC is referred to above and is cited throughout this document.  However, the same claim regarding the tax refunds was asserted in each of the other proofs of claim filed against BankUnited Financial Services, Inc. and CRE America Corporation.

[5] The FDIC-R has also moved for an order to lift the automatic stay in the Bankruptcy Cases so that the FDIC-R can file it own tax returns on behalf of the Affiliated Group [DE No. 683] or alternatively for an order granting relief from the stay.  At the request of the parties, a decision on that motion is being held in abeyance.

from the Court that the Tax Refunds are the property of BUFC. (Am. Compl. ¶¶ 131-51; Pl. Mot. at 8, 9-10.) On September 15, 2010, the FDIC-R answered the Amended Complaint.

Plaintiffs' Motion seeks summary judgment disallowing FDIC-R's claims asserting entitlement to the Tax Refunds. By this Opposition and Cross-Motion, the FDIC-R seeks an order denying Plaintiffs' Motion and granting the FDIC-R's cross-motion for summary judgment on Counts I and II of the Amended Complaint.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure[6] directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1985). Rather, the non-movant must provide specific facts demonstrating a material factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Summary judgment should be granted to the FDIC-R because (1) the TAA reinforces the default rule that BUFC (as parent) holds any tax refunds due to BankUnited in trust for BankUnited (as subsidiary) and (2) even if the TAA expressly or impliedly overrode the principal-agent relationship – which it did not – and created a debtor-creditor relationship between BUFC and BankUnited, the TAA makes BankUnited the debtor in that relationship.

---

[6] Rule 56 applies here through Rule 7056 of the Federal Rules of Bankruptcy Procedure.

Accordingly, no matter which theory the Court adopts, the FDIC-R is entitled to summary

judgment on Counts I and II of the Amended Complaint.

## ARGUMENT

### I.    THE TAX REFUNDS ATTRIBUTABLE TO BANKUNITED'S NET OPERATING LOSSES ARE THE PROPERTY OF THE FDIC-R AS A MATTER OF LAW.

A long line of cases beginning with *Western Dealer Mgmt., Inc. v. England (In re Bob

Richards Chrysler-Plymouth Corp., Inc.),* 473 F.2d 262 (9th Cir. 1973), holds that, absent a clear

agreement to the contrary, a parent holds the proceeds of any tax filing in trust for the members

of its affiliated group, and is under a duty to return the tax refund to the appropriate member.

*See, e.g.*, *Bob Richards,* 473 F.2d at 265 (finding where "there is no express or implied

agreement that the agent had any right to keep the refund" the principal agent relationship

dictates that the parent acts as "a trustee of a specific trust" and is therefore "under a duty to

return the tax refund to [the subsidiary]"); *Capital Bancshares v. FDIC*, 957 F.2d 203, 207 (5th

Cir. 1992) (holding that the FDIC was entitled to the tax refund because "in the absence of an

allocation agreement, allowing a parent to keep refunds arising solely from a subsidiary's losses

would constitute unjust enrichment"); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F.

Supp. 185, 188-89 (E.D. Mo. 1977), *aff'd*, 579 F.2d 449, 454-45 (8th Cir. 1978) (holding that,

"absent an express agreement," the bankrupt subsidiary was entitled to its share of the tax refund

generated by its losses and the unrecovered taxes it previously paid, and parent held this portion

in specific trust); *In re Revco D.S., Inc.*, 111 B.R. 631, 638 (Bankr. N.D. Ohio 1990) (holding

that the former subsidiary member of a consolidated group was entitled to the income tax refund

where "no express or implied agreement existed between [the subsidiary] and [parent] regarding

the ultimate disposition of any tax refund."); *Independent Bankgroup, Inc. v. FDIC (In re*

*Independent Bankgroup, Inc.)*, 217 B.R. 442, 448 (Bankr. D. Vt. 1998) (holding that tax refund

belonged to subsidiary under FDIC receivership in absence of a written agreement clearly to the

contrary); *In re Florida Park Banks, Inc.*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990) (holding

that FDIC, as receiver for bank subsidiary, was entitled to the entire tax refund of taxes

previously paid by the bank subsidiary where the court found there was "no agreement between

the parties as to the allocation of tax refunds").

In 1998, the FDIC, the Board of Governors of the Federal Reserve System, the Office of

the Comptroller of the Currency, and the OTS issued an Interagency Policy Statement on Income

Tax Allocation in a Holding Company Structure (the "Interagency Policy Statement").  The

Interagency Policy Statement codified the *Bob Richards* rule.  It also admonished corporations

not to mischaracterize in tax allocation agreements or otherwise tax refunds attributable to a bank

subsidiary as property of the parent holding company.  The Interagency Policy Statement reads

in pertinent part:

> Regardless of the treatment of an institution's tax loss for regulatory reporting and
> supervisory purposes, a parent company that receives a tax refund from a taxing
> authority obtains these funds as agent for the consolidated group on behalf of the
> group members.  Accordingly, an organization's tax allocation agreement or other
> corporate policies should not purport to characterize refunds attributable to a
> subsidiary depository institution that the parent receives from a taxing authority as
> the property of the parent.

Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63

Fed. Reg. 64757 (Nov. 23, 1998) (footnote omitted).

As the Interagency Policy Statement suggests, and as courts have recognized, the mere

existence of a tax sharing agreement between the parties does not automatically alter the

principal-agent relationship that exists between the parent and subsidiary.  *See BSD Bancorp,*

*Inc. v. FDIC,* No. 93-12207-A11, at 9-10 (S.D. Cal. Feb. 28, 1995) (holding that the FDIC, as

receiver of a subsidiary bank, was entitled to the tax refund where the principal-agent

relationship remained unaltered by the terms of the tax allocation agreement between the

parties).  Rather, the court must examine the terms of the tax sharing agreement and determine

whether the parties intended to "expressly or impliedly override the *Bob Richards* principal-

agent relationship."  *Id.* at 10.

The *BSD Bancorp* case (a copy of which is attached hereto as Exhibit B) is particularly

instructive.  There, the parent-holding company (like BUFC) argued that the mere existence of a

tax sharing agreement vitiated the default rule that the parent held the refund for the subsidiary in

trust.  *Id.* at 9.  The court rejected that argument as "an excessively narrow interpretation" of the

*Bob Richards* case and its progeny.  *Id.* at 9-10.  As the court explained:

> This Court interprets *Bob Richards* as holding that unless the corporation in a
> consolidated group agrees otherwise, the parent acts as their agent for payment of
> the tax and refunds.  This rule is like many other gap-filling rules in contract
> law which provide a default in the absence of applicable agreement by the parties,
> e.g., U.C.C. § 2-205 (offer by merchant in signed writing irrevocable "during the
> time stated or if no time is stated for a reasonable time").  Parties to a contract do
> not override a gap-filling simply by reaching explicit agreement on some other
> matter.  Rather, the terms of their agreement must expressly or impliedly override
> the gap-filling rule itself.  It is thus necessary to consider whether the terms of the
> tax allocation agreement expressly or impliedly override the *Bob Richards*
> principal-agent relationship.

*Id.* at 10.

In analyzing the tax sharing agreement at issue in that case, the court explicitly rejected

the very argument made by BUFC in this case that the agreement's use of the terms "reimburse"

and "receivable" severed the principal-agent relationship.  (Pl. Mot. at 15-16.)  Rather, "[i]n

deciding whether a transaction intended to create a debtor-creditor relationship . . . a court must

examine the economic reality of the transaction rather than the words used."  *BSD Bancorp*

at 10-11.  The "economic reality" in *BSD Bancorp* was that "except in the 'unusual'

circumstances in which the agreement allowed Bancorp to borrow the refund, the agreement

required Bancorp to give the Bank [subsidiary] its share of the refund in cash immediately."  *Id.*

at 11.  Thus, the tax sharing agreement itself "strongly suggest[ed] an intent to maintain a

principal-agent relationship unless Bancorp borrowed the refund pursuant to the terms of the

agreement." *Id.*

Here, the TAA likewise "strongly suggests" an "intent to maintain the principal-agent

relationship" between BUFC and BankUnited.  The TAA makes clear that *BankUnited*, not

BUFC, is the principal operating entity of the Affiliated Group for consolidated tax purposes.

Specifically:

- The TAA obligates ***BankUnited*** to make all consolidated income tax payments on behalf of the Affiliated Group.  *See* TAA § 1 ("*BankUnited* shall be responsible for making all consolidated income tax payments on behalf of the Affiliated Group") (emphasis added).

- The TAA obligates ***BankUnited*** to allocate and to pay to any member of the Affiliated Group any income tax refund received by BankUnited. TAA § 4 ("Any income tax refunds received by *BankUnited* shall be allocated among, and paid by BankUnited to the members of the Group") (emphasis added).

- The TAA obligates members of the Affiliated Group to reimburse ***BankUnited*** within 30-days for their proportional share of the consolidated tax liability.  TAA § 4 ("Within 30 days following the remittance by *BankUnited* of any income tax payment, any member of the Group having a net inter-company income tax payable as determined under Section 3 shall pay to *BankUnited* such amount as reimbursement for payment of its proportional share of the consolidated current income tax liability.")  (emphasis added).

The TAA is thus perfectly consistent with the "gap-filler" rule articulated by the court in *Bob Richards* and its progeny that the subsidiary (in this case, BankUnited) owns its portion of any consolidated tax refund.[7]

By BUFC's own calculation, BankUnited generated a substantial majority of the net operating losses that generated the Tax Refunds. *See* 2008 Tax Return at 29 (attached to DE No. 82). Where, as here, the tax refund sought constitutes either taxes paid by one of the consolidated group members or losses sustained by that member in the years at issue, that member is entitled to its share of the consolidated tax refund. *See Capital Bancshares*, 957 F.2d at 208 (holding that FDIC was entitled to the tax refund where the bank generated the losses and paid to the parent company a sum greater in aggregate than the disputed refund for its annual tax contribution); *FDIC v. Mercer Bancorp, Inc.*, No. 89-0849, 1990 WL 515173, at *2 (W.D. Mo. Dec. 5, 1990) (holding that FDIC, as receiver of subsidiary bank, was entitled to the tax refund because the bank was the entity who overpaid the tax that the IRS refunded and the entity upon whose business losses the refund was based).

Thus, the law imposes a constructive trust over BankUnited's portion of the Tax Refunds for the benefit of BankUnited's successor, the FDIC-R. The FDIC-R is therefore entitled to summary judgment on Counts I and II of the Amended Complaint.

---

[7] There is no basis for Plaintiffs' contention that *Bob Richards* "is no longer good law" after the Supreme Court's decision in *Atherton v. FDIC*, 519 U.S. 213 (1997). (Pl. Mot. at 18, 21.) Indeed, as the numerous cases cited herein and in Plaintiffs' Motion attest, courts have continued to apply the purportedly "federal common law" rule articulated in *Bob Richards* post-*Atherton*. *See also Bank One, NA (Chicago) v. FDIC*, No. 04-C-286-S, at 4 (W.D. Wisc. Mar. 31, 2005) (copy attached hereto as Exhibit C) (noting that *Bob Richards* "has met with virtually uniform approval by courts subsequently addressing the issue" of whether a parent company obtains an ownership interest in a tax refund); *Brant v. Fleet Capital Corp. (In re TCMI Elec.)*, 279 B.R. 552, 557 (N.D. Cal. 1999) ("*Bob Richards* has received nearly universal acceptance by a variety of different courts."). Moreover, assuming *arguendo* that state common law were to apply here, the outcome of this case would not change because the terms of the TAA dictate that BankUnited is entitled to the Tax Refunds no matter what law applies and even if the TAA creates a debtor-creditor relationship under state law (as discussed in the next section).

## II.    EVEN IF THE TAA OVERRIDES THE AGENCY RELATIONSHIP, BANKUNITED IS STILL THE OWNER OF THE TAX REFUNDS.

Even if the Court is persuaded by BUFC's argument that the TAA overrides the default principal-agent rule and "establishes a debtor-creditor relationship" between the parties (Pl. Mot. at 14-17), the FDIC-R is still entitled to summary judgment. BUFC's analysis ignores the plain language of the TAA that makes *BankUnited* the debtor in any such debtor-creditor relationship, and therefore the FDIC-R the owner of the Tax Refunds. BUFC would be merely a creditor – not the other way around.

As stated above, the TAA gives *BankUnited*, not BUFC: (1) the right to receive tax refunds on behalf of the affiliated group; (2) the obligation to allocate any tax refunds to the members of the group; and (3) the right to be reimbursed by members of the Group if BankUnited pays more than its proportional share of the taxes. By contrast, BUFC has the rights and obligations of a creditor under the TAA. For example, under Section 7 of the TAA, BUFC may (with the approval of the board of directors of BUFC and BankUnited) waive the (otherwise required) reimbursement of a refund by BankUnited. *See* TAA § 7 ("In consideration of [BUFC's] obligation and desire to provide additional sources of financial support to BankUnited, [BUFC] may from time to time with the approval of the Board of Directors of [BUFC] and BankUnited contribute amounts of inter-company income tax receivables from BankUnited as additional paid-in capital to BankUnited in lieu of payment by BankUnited."). Thus, even if the language of the TAA is read to create a debtor-creditor relationship, BankUnited would be the debtor and accordingly the owner the Tax Refunds. The Tax Refunds are, therefore, the property of BankUnited's receivership estate, not BUFC's Chapter 11 estate.

Indeed, by its own admission, BUFC is a creditor to BankUnited under the TAA. BUFC admits in "Attachment 11" of the proof of claim that it filed with the receivership ("BUFC's

Proof of Claim") that "[BankUnited] is liable to BUFC" and "any income tax refunds received
by [BankUnited] be allocated and paid by [BankUnited] to the Claimants."[8]  BUFC's Proof of
Claim further states the following:

> ***BUFC is a party to an Income Tax Allocation Agreement with [BankUnited]***,
> which provides for the sharing of certain tax attributes and refunds (local, state,
> and federal), and which provides that ***[BankUnited] is liable to BUFC*** for certain
> amounts.  Pursuant to this Income Tax Allocation Agreement, there may be inter-
> company income tax payables that are ***owed by [BankUnited]*** to any or all of the
> Claimants. . . .  The Income Tax Allocation Agreement also requires that ***any***
> ***income tax refunds received by [BankUnited] be allocated and paid by***
> ***[BankUnited] to the Claimants.***  To the extent that [BankUnited] received any
> income tax refunds before May 21, 2009, ***[BankUnited] may have failed to pay***
> each Claimant its proportionate share of these funds.  To the extent the Receiver
> has received any income tax refunds after May 21, 2009, ***the Receiver is liable*** to
> each Claimant for its proportionate share of these funds.

*See* Ex. D at Attachment 11 (emphasis added).

BUFC makes similar admissions of its status as a creditor under the TAA in its Amended
Complaint.  In describing the "Intercompany Advances," BUFC states in the Amended
Complaint that "[t]he amount due and owing to [BUFC] ***from [BankUnited]*** for intercompany
advances and payments for the period of October 2006 to May 21, 2009 was at least
$46,902,483."  (Am. Compl. ¶ 69) (emphasis added).  BUFC goes on to admit that "[t]he
foregoing amounts represent sums accrued or paid by [BUFC] ***as owed by [BankUnited]*** to
facilitate its operations or as inter-company income tax payables ***owed by*** [BankUnited] to any or
all of the Plaintiffs pursuant to certain tax sharing agreements."  (*Id.* ¶ 71) (emphasis added).

Finally, although it is the FDIC-R's position that the cases cited by BUFC in which tax
sharing agreements have been held to override the agency relationship are wrongly decided,[9]

---

[8] A true and complete copy of BUFC's Proof of Claim is attached hereto as Exhibit D.

[9] *See, e.g., Zucker v. F.D.I.C. (In re Netbank, Inc.),* Adv. No. 3:08-ap-00346-JAF, at 4, 17-19, 21 (Bankr. M.D. Fla.
Sep. 30, 2010) (attached to Pl. Mot. as Ex. B) (holding that refund was property of the parent holding company
(continued...)

those cases do not support BUFC's position – they undermine it. In contrast to the tax sharing agreements in those cases, the TAA vested *the bank subsidiary* (BankUnited) – *not* the parent holding company – with the powers to make tax payments on behalf of the consolidated group, allocate refunds among the group, and receive reimbursement from group members for tax overpayments. Thus, should the Court conclude that the TAA expressly or impliedly overrode the principal-agent relationship and created a debtor-creditor relationship between BUFC and BankUnited, the plain language of the TAA and the very cases on which BUFC relies dictate that BankUnited owns the Tax Refunds. BUFC is at most a creditor of BankUnited's receivership to the extent that BUFC is entitled to any portion of the Tax Refunds.

## CONCLUSION

Regardless of whether the relationship between the parties is viewed as a principal-agent relationship or a debtor-creditor relationship, the FDIC-R is entitled to summary judgment on Counts I and II of the Amended Complaint.

WHEREFORE, Defendant FDIC-R respectfully requests that this Court enter an Order: (i) denying Plaintiffs' Motion for Partial Summary Judgment on Count I of the Complaint and for Summary Judgment on Count II of the Complaint; (ii) granting Defendant's Cross-Motion for Partial Summary Judgment on Counts I and II of the Amended Complaint; (iii) declaring that

---

where tax sharing agreement required parent to pay the taxes, group members were required to reimburse the parent for their portion of parent's tax payments, and the parent was required to pay any group member, including the subsidiary bank, the proceeds of any tax refund resulting from a carry back of that member's losses); *In re Team Fin., Inc.*, Adv. No. 09-5084, 2010 WL 1730681, at *11-13 (Bankr. D. Kan. Apr. 27, 2010) (holding that parent owned refund because tax sharing agreement imposed "a contractual obligation" on the parent by stating, *inter alia*, that parent "shall pay" to any group member any (i) excess estimated tax paid by that member to the parent and (ii) any refund generated by that member's net operating losses); *Franklin Sav. Corp. v. Franklin Sav. Ass'n (In re Franklin Sav. Corp.)*, 159 B.R. 9, 26, 29 (Bankr. D. Kan. 1993) (holding that tax sharing agreement overrode agency relationship where agreement obligated the subsidiary "to pay [the parent] the amount computed as its separate tax liability under GAAP at such time as it would otherwise pay amounts owed to the Internal Revenue Service" and "[i]f [the subsidiary bank's] tax computation reflected a net operating loss or excess credits," then the subsidiary was entitled to "reimbursement" by the parent), *aff'd sub nom., Resolution Trust Corp. v. Franklin Sav. Corp. (In re Franklin Sav. Corp.)*, 182 B.R. 859 (Bankr. D. Kan. 1995).

BUFC holds BankUnited's allocated portion of the Tax Refunds in trust for the FDIC-R as receiver of BankUnited or, in the alternative, that the Tax Refunds are the property of the FDIC-R and BUFC has an unsecured claim against the receivership for its allocated portion of the Tax Refunds; and (iv) granting such further relief in favor of the FDIC-R as the Court may deem just and proper.

Dated: December 8, 2010                          Respectfully submitted,

                                                 McDERMOTT WILL & EMERY LLP

                                                 By:   /s/ Raquel A. Rodriguez
Of Counsel:                                      Raquel A. Rodriguez (Fla. Bar # 511439)
                                                 *rrodriguez@mwe.com*
Kathryn R. Norcross                              201 S. Biscayne Blvd., Suite 2200
Senior Counsel                                   Miami, FL 33131-4336
*knorcross@fdic.gov*                             Tel:  305.358.3500 / Fax:  305.347.6500
Sonya L. Levine                                         - and -
Counsel-Legal Division                           Geoffrey T. Raicht (*pro hac vice*)
*slevine@fdic.gov*                               *graicht@mwe.com*
FEDERAL DEPOSIT INSURANCE                         Andrew B. Kratenstein
CORPORATION                                      *akratenstein@mwe.com*
Legal Division                                   Taina Y. Rodriguez
3501 Fairfax Drive, VS-D-                         *trodriguez@mwe.com*
Arlington, VA  22226                             340 Madison Avenue
(703) 562-2783                                   New York, New York 10173-1922
                                                 Tel:  212.547.5400 / Fax:  212.547.5444

*Attorneys for Defendant*
*Federal Deposit Insurance Corporation, as Receiver for BankUnited, FSB*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


By:   /s/ Geoffrey T. Raicht
      Geoffrey T. Raicht


## Service List for Adversary Case 10-02872-LMI


## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case:

**Mark D Bloom** on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com; MiaLitDock@gtlaw.com; miaecfbky@gtlaw.com; reisinoa@gtlaw.com

**Scott M. Grossman** on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com; jacksont@gtlaw.com; MiaLitDock@gtlaw.com;
miaecfbky@gtlaw.com

**Sameer K Kapoor**, on behalf of Official Committee of Unsecured Creditors of Debtors
skapoor@kilpatrickstockton.com; tmeyers@kilpatrickstockton.com;
lcanty@kilpatrickstockton.com


## Manual Notice List

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

NONE


MIA 370509-1.084080.0021