# Exhibit D

**Federal Deposit Insurance Corporation as Receiver for:**
**10061 – BankUnited, FSB, Coral Gables, FL**

## PROOF OF CLAIM

SSN/Tax ID # (1) _65-0377773_

The undersigned, (2) _Joseph J. Luzinski, as Chief Restructuring Officer for BankUnited Financial Corporation, et al._
(Name of person making the claim)

says that the _BankUnited, FSB_ _____ now in liquidation is
(Name of Bank/Financial Institution)

justly indebted to (3) _BankUnited Financial Corporation and its subsidiaries_ _____ in the sum of
(Individual/Joint/Corporation/Partnership/Firm/Agency)

(4) _not less than four hundred fourteen million nine hundred thirty thousand nine hundred fifty t o and no_ _____ Dollars upon the following Claim:

| | Description of (invoice) claim: | Liability Number | Amount of Claim |
|---|---|---|---|
| **C**<br>**L**<br>**A**<br>**I**<br>**M**<br>**S** | (5)<br><br>See attached | FDIC will complete | See attached |
| | | Total Claim:(6) | See attached |

The undersigned further states that he/she makes this claim on behalf of

(7) _BankUnited Financial Corporation and its subsidiaries_ _____ ,

that no part of said debt has been paid, that

(8) _BankUnited Financial Corporation and its subsidiairies_ _____
(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9) _____     Chief Restructuring Officer
(Signature of Person making the Claim)     (Title)

FIRM _c/o Development Specialists, Inc._
(If applicable)

ADDRESS (10) _200 South Biscayne Blvd., Suite 1818_

CITY/STATE/ZIP _Miami, FL 33131_

TELEPHONE NUMBER _305-374-2717_

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. Section 007).

RLS7214

**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR:**

10061 - BankUnited, FSB, Coral Gables, FL

| | |
|---|---|
| Proof of Claims of: | ) |
| | ) |
| BankUnited Financial Corporation | ) |
| c/o Development Specialists, Inc. | ) |
| 200 South Biscayne Boulevard, Suite 1818 | ) |
| Miami, Florida 33131; | ) |
| | ) |
| BankUnited Financial Services, Incorporated; | ) |
| | ) |
| CRE America Corporation; and | ) |
| | ) |
| BU Realty, Inc. | ) |
| | ) |
| | ) |

## PROOF OF CLAIMS

Debtors and Debtors-in-Possession, BankUnited Financial Corporation (**"BUFC"**); BankUnited Financial Services, Incorporated, a wholly-owned subsidiary of BUFC (**"BUFS"**); CRE America Corporation, a wholly-owned subsidiary of BUFC (**"CRE,"** and, together with BUFC and BUFS, the **"Debtors"**); and BU Realty, Inc., also a wholly-owned, non-debtor subsidiary of BUFC (**"BU Realty"**), present this Proof of Claims against the receivership (the **"Receivership"**) of BankUnited, FSB (**"BUFSB"**), for which the FDIC acts as Receiver (**"FDIC-Receiver"**).[1] The Debtors and BU Realty are hereinafter referred to collectively as the **"Claimants."** Claimants believe that the aggregate amount of all of their liquidated and unliquidated claims against BUFSB and the Receivership estate are in excess of **$414,930,952**.

As more fully described below, Claimants have encountered great difficulty in obtaining reliable information from various third parties regarding possible claims and,

---

[1] Where appropriate, separate references to the FDIC in its corporate capacity may appear as **"FDIC-Corporate."**

as a result, reserve the right to assert additional claims and to supplement the evidence they have submitted herein as additional information becomes available to them.

For the convenience of the FDIC, the claims have been categorized into the following areas and are set forth in more detail in Attachments 1 through 18 hereto:

1.   Use of Real Property

2.   Unpaid Fees and Commissions

3.   Enterprise Value of BUFS

4.   Intellectual Property Use

5.   Customer List Use

6.   Guaranties

7.   Artwork and Other Personal Property

8.   PAC

9.   Employee Benefits

10.  Real, Personal and Other Property Taxes

11.  Income Tax Refunds

12.  Employee, Officer, and Director Claims

13.  Professional Fee Claims

14.  Intercompany Advances

15.  Services

16.  Fraudulent Transfers and Preferences

17.  Indemnification, Contribution and Reimbursement for Claims Against Debtors' Estates

18.  Other Amounts Due

Claimants hereby also assert a claim for interest at the maximum rate allowed by law on all amounts due to them, from the date that those amounts become due until

they are paid in full by the Receiver. In addition, as sole shareholder of BUFSB, BUFC hereby demands payment from the Receiver for the net assets remaining in the Receivership estate of BUFSB, after payment of all lawful, valid and enforceable claims having priority by law over BUFC's interest as a shareholder.

### RESERVATIONS OF RIGHTS

Claimants reserve the right to supplement both the claims filed in this Proof of Claims and the evidence being submitted in support of those claims. Claimants do so without prejudice to their position that: (1) claims need only be identified by the generic type of transaction that brought about the claims, rather than each specific transaction, and (2) Claimants are under no obligation to submit all of the evidence currently available in connection with any particular claim.

Claimants' reservation of rights is based primarily on the fact that much of the information and documentation they need in order to identify and support fully all of their claims, are in the exclusive possession of: (1) the FDIC-Receiver and other federal regulatory agencies, and/or (2) BankUnited, a *de novo* Federal savings association organized under the laws of the United States, with its principal place of business in Coral Gables, Florida (**"New Bank"**), which acquired most of the assets and certain of the liabilities of BUFSB from the FDIC-Receiver. The FDIC-Receiver has seized and continues to hold many of the records which are indispensable for a comprehensive filing of claims by Claimants, and to the evidentiary support necessary to sustain such claims. In addition, by letter dated August 25, 2009, New Bank has advised Claimants that certain of the documents and information that Claimants have requested from New Bank will not be made available to Claimants until *after* August 27, 2009 – the deadline

3

for filing this Proof of Claims.  The records Claimants have managed to obtain are for the most part incomplete and occasionally inconsistent.  As a result, Claimants have been unable to conduct the type of exhaustive research and analysis necessary to identify all of their claims against the FDIC-Receiver.  Claimants are particularly concerned that the FDIC-Receiver, or New Bank, its transferee, may be holding or may have transferred property that belongs to Claimants, which the FDIC-Receiver is obligated to return to Claimants and/or as to which Claimants are entitled to an equitable lien, constructive or resulting trust, turnover under 11 U.S.C. § 542, or other legal or equitable relief.  Claimants expressly reserve the rights to seek recovery under any or all of these or other remedies in law or equity.

Claimants believe that 12 U.S.C. § 1821(d), which governs the procedure for the presentation of claims in a receivership such as this, cannot reasonably be understood to preclude the presentation of claims of which Claimants only become aware after the date fixed by the FDIC-Receiver for the filing of claims in the Receivership, as long as such claims are presented within a period of time allowing for their orderly consideration and disposition together with other claims presented in the Receivership.  In analogous situations in bankruptcy cases, Federal Rules of Bankruptcy Procedure 3002 and 9006 allow certain creditors to file claims after the claims filing deadline.  Claimants believe that any contrary interpretation of the pertinent statutory sections would contravene various provisions of the Constitution of the United States, including the Due Process Clause and the Takings Clause of the Fifth Amendment.

In addition, Claimants hereby reserve their right to assert separately any claims against the FDIC-Receiver or any of its agents, including, possibly, New Bank, relating

to any mismanagement or mishandling of the Receivership, as these are not claims against the BUFSB Receivership estate itself. Claimants also reserve their right to assert separately claims against the FDIC-Corporate, the Office of Thrift Supervision, the Federal Home Loan Bank of Atlanta, and possibly other regulatory or governmental authorities relating to the collapse and intervention of BUFSB, since once again, these are not claims against the BUFSB Receivership estate. These claims may include, but are not limited to, a claim against the Federal Home Loan Bank of Atlanta, and possibly one or more other regulatory or governmental authorities, for receiving preferences and/or fraudulent transfers from BUFSB in the months preceding BUFSB's collapse. To the extent these claims are vigorously asserted and pursued by FDIC-Receiver, Claimants will not duplicate such claims unnecessarily.

Claimants may be entitled to payments for legal fees in whole or in part in connection with the filing of this Proof of Claims, the establishment of any claims set forth herein, or any subsequent litigation or administrative proceeding. Claimants do not waive any of their rights to receive such payments for legal fees.

**PAYMENT OF CLAIMS**

Claimants assert that they are entitled to payment in full of their allowable claims, notwithstanding 12 U.S.C. § 1821(i). This is because, among other things, pursuant to the Purchase and Assumption Agreement it entered into with New Bank, and otherwise, the FDIC has arranged for other creditors of BUFSB who did not have priority over Claimants to be paid in full the liabilities owing to them from BUFSB.

## RECEIVERSHIP EXPENSES

To the extent that any claims made herein represent payments made to the receivership estate of BUFSB by any of the Claimants, or expenses incurred by any of the Claimants for the benefit of or on behalf of the receivership estate of BUFSB, the Claimants hereby claim priority to other unsecured creditors of the receivership estate by analogy to 11 U.S.C. §§ 503 and 507(a)(1).

Dated August **26**, 2009.

Respectfully submitted,

By:_____
    Joseph J. Luzinski
    Chief Restructuring Officer
    c/o Development Specialists, Inc.
    200 South Biscayne Blvd., Suite 1818
    Miami, Florida 33131
    Telephone: (305) 374-2717
    Facsimile: (305) 374-2718
    Email: jluzinski@dsi.biz

**ATTACHMENT 1**
**USE OF REAL PROPERTY**

**A.    SUMMARY OF FACTS**

CRE owns an interest in real property located in New York City, New York. BUFSB and its employees, officers, or directors, may have used CRE's property without compensation to CRE.

BUFC, BUFS, and BU Realty may have had ownership, leasehold, or other interests in other real property.  BUFSB and its employees, officers, or directors, may have used the respective real property of BUFC, BUFS, and/or BU Realty, without compensation to BUFC, BUFS, and/or BU Realty.

**B.    CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 2**
**UNPAID FEES AND COMMISSIONS**

**A.     SUMMARY OF FACTS**

BUFS is due fees and commissions under that certain Financial Institution Services Agreement dated, March 8, 2008, between BUFSB, BUFS, LPL Financial Corporation and UVEST Financial Services, as to which BUFSB has received payment. BUFSB is liable to BUFS for such fees and commissions.

BUFSB is due fees and commissions under that certain Referral Agreement dated May 5, 2008 between R.E. Lee International (Cayman) Ltd., BUFSB and BUFS, as to which BUFSB has received payment.  BUFSB is liable to BUFS for such fees and commissions.

**B.     CLAIMS**

BUFS hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 3**
**ENTERPRISE VALUE OF BUFS**

**A.    SUMMARY OF FACTS**

BUFSB usurped and may have assigned or attempted to assign the enterprise value of BUFS for its own benefit.  BUFSB is liable to BUFS for such enterprise value.

**B.    CLAIMS**

BUFS hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 4**
**INTELLECTUAL PROPERTY USE**

**A.    SUMMARY OF FACTS**

Claimants are the owners of certain intellectual property, including without limitation, trademarks, service marks, trade names, trade secrets, copyrights, patents, and other intellectual property (the **"Intellectual Property"**).  BUFSB has been using and may have assigned or attempted to assign certain of the Intellectual Property without paying compensation to Claimants.  Claimants are entitled to compensation in connection with this use of the Intellectual Property.

**B.    CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 5**
**CUSTOMER LIST USE**

**A.    SUMMARY OF FACTS**

BUFS is the owner of certain customer lists and other proprietary trade information (the **"Customer Lists"**).  BUFSB or its Receivership estate has been using and may have assigned or attempted to assign certain of the Customer Lists without paying compensation to BUFS.  BUFS is entitled to compensation in connection with this use of the Customer Lists.

**B.    CLAIMS**

BUFS hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 6**
**GUARANTIES**

## A.  SUMMARY OF FACTS

BUFC may have executed guaranties assuring third parties of the performance of various contracts or satisfaction of obligations by BUFSB and/or its subsidiaries.  If BUFSB and/or its subsidiaries defaults on such contracts and/or obligations, BUFC may be liable to third parties as guarantor of such duties and/or obligations of BUFSB.

## B.  CLAIMS

BUFC, as guarantor, hereby asserts its right of reimbursement, contribution, subrogation and exoneration against the Receiver in connection with any and all guaranties given by BUFC.  BUFC hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 7**
**ARTWORK AND OTHER PERSONAL PROPERTY**

**A.    SUMMARY OF FACTS**

BUFC is the owner of a collection of artwork and other personal property (the **"Personal Property"**).  BUFSB or its Receivership estate may have been using certain of the Personal Property without paying compensation to BUFC.  BUFC is entitled to compensation in connection with this use of the Personal Property.

**B.    CLAIMS**

BUFC hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 8**
**PAC**

**A.    SUMMARY OF FACTS**

BUFC had established one or more political action committees (the **"PACs"**), including one known as the BankUnited Financial Corporation Political Action Committee (C00248310) (the **"BUFC PAC"**), which are "connected to" BUFC.  The PACs, including the BUFC PAC, hold certain funds as to which BUFC is entitled under applicable law.  Upon information and belief, as of June 30, 2009, the BUFC PAC had a balance of $88,869.

**B.    CLAIMS**

BUFC hereby demands turnover under 11 U.S.C. § 542 (or, in the alternative, an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC to payment of 100% of its claim described above) in the amount of $88,869, plus other presently unknown dollar amounts in respect of the claim described above.

**ATTACHMENT 9**
**EMPLOYEE BENEFITS**

## A.    SUMMARY OF FACTS

Before May 21, 2009, BUFSB had custody or control over funds belonging to BUFC and/or BUFS, which were to be used in connection with the funding of various employee benefit plans in which certain employees of BUFC and/or BUFS participated and for which BUFC and/or BUFS is or may be liable (collectively, the **"Plans"**) including, without limitation, the BankUnited Financial Corporation 401(k) Profit Sharing Plan (the **"401(k) Plan"**) and the BankUnited Financial Corp. Supplemental Tax Deferred Savings Plan (the **"Deferred Compensation Plan"**).  In addition, BUFSB has or may have failed to pay to BUFC and/or BUFS certain moneys BUFSB is obligated to pay BUFC and/or BUFS for use in connection with various Plans including, without limitation, employee payroll deferrals and company contributions (matching and discretionary) to be made to the 401(k) Plan and the Deferred Compensation Plan.  The funds owed by BUFSB to BUFC in connection with the Plans may include, but are not limited to, $39,600 in respect of the BUFC Supplemental Tax Deferred Savings Plan

## B.    CLAIMS

BUFC and/or BUFS hereby demand turnover under 11 U.S.C. § 542 (or, in the alternative, an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC and/or BUFS to payment of 100% of its claim described above) in the amount of $39,600, plus other presently unknown dollar amounts in respect of the claim described above.

**ATTACHMENT 10**
**REAL, PERSONAL AND OTHER PROPERTY TAXES**

**A.    SUMMARY OF FACTS**

BUFC may have made payments to various governmental entities in which BUFSB or its subsidiaries operated or had property subject to real, personal and other property taxes.   Such payments were or liabilities incurred by BUFSB and/or its subsidiaries for which BUFC may not have received reimbursement.

**B.    CLAIMS**

BUFC hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 11**
**INCOME TAX REFUNDS**

## A.    SUMMARY OF FACTS

BUFC is a party to an Income Tax Allocation Agreement with BUFSB, which provides for the sharing of certain tax attributes and refunds (local, state, and federal), and which provides that BUFSB is liable to BUFC for certain amounts.  Pursuant to this Income Tax Allocation Agreement, there may be inter-company income tax payables that are owed by BUFSB to any or all of the Claimants and that were outstanding as of May 21, 2009.  The Income Tax Allocation Agreement also requires that any income tax refunds received by BUFSB be allocated and paid by BUFSB to the Claimants.  To the extent that BUFSB received any income tax refunds before May 21, 2009, BUFSB may have failed to pay each Claimant its proportionate share of these refunds.  To the extent the Receiver has received any income tax refunds after May 21, 2009, the Receiver is liable to each Claimant for its proportionate share of these refunds.

## B.    CLAIMS

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 12**
**EMPLOYEE, OFFICER, AND DIRECTOR CLAIMS**

**A.    SUMMARY OF FACTS**

One or more of the Claimants may have paid compensation to employees, officers, and directors of BUFSB for services that may have provided benefits primarily or solely to BUFSB and its subsidiaries, and not to such Claimants.  Such Claimants are entitled to reimbursement for these sums.

**B.    CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 13**
**PROFESSIONAL FEE CLAIMS**

**A. SUMMARY OF FACTS**

BUFC paid professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, as to which BUFC is entitled to reimbursement.

**B. CLAIMS**

BUFC hereby demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

**ATTACHMENT 14**
**INTERCOMPANY ADVANCES**

**A.    SUMMARY OF FACTS**

The amount due and owing to the Debtors from BUFSB for intercompany advances and payments for the period of October 2006 to May 21, 2009 is $46,902,483. See attached **Exhibit 14.1**. Additional amounts may be due and owing for periods prior to October 2006. The foregoing amounts represent sums accrued or paid by the Debtors as owed by BUFSB to facilitate its operations or as inter-company income tax payables owed by BUFSB to any or all of the Debtors pursuant to certain tax sharing agreements. The advances and the tax sharing arrangement were made with the intention and understanding that they be repaid by BUFSB. This amount does not reflect any setoffs that may be asserted by BUFSB against one or more of the Debtors in respect of such intercompany transactions.

Other amounts may have been due and owing to BUFS, CRE, and BU Realty from BUFSB for intercompany advances made with the intention and understanding that they be repaid by BUFSB. The amount of these other intercompany advances is presently unknown.

**B.    CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above in the amount of $46,902,483, plus other presently unknown dollar amounts in respect of the claim described above.

**ATTACHMENT 15**
**SERVICES**

**A.    SUMMARY OF FACTS**

One or more of the Claimants have rendered services to BUFSB and/or its subsidiaries without receiving compensation for such services.  Claimants are entitled to reimbursement for these sums.

**B.    CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

## ATTACHMENT 16
## FRAUDULENT TRANSFERS AND PREFERENCES

### A.    SUMMARY OF FACTS

1.    BUFC is a bank holding company which, on May 22, 2009, filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.  BUFC, along with its Debtor affiliates BUFS and CRE, continue to operate as debtors-in-possession; no trustee or examiner has been appointed in the bankruptcy cases.  BU Realty has not filed for bankruptcy and continues to operate outside of bankruptcy.

2.    At all times relevant to this Proof of Claims, BUFC directly or indirectly owned 100% of the capital stock of BUFSB.

3.    In addition to BUFSB, BUFC also owned the capital stock of BUFS, CRE, and BU Realty.

4.    BUFSB in turn owned the capital stock of a number of separately incorporated subsidiaries.

5.    Upon information and belief, one or more of the Debtors were or may have been insolvent or were or may have been rendered insolvent by the transactions described in paragraphs 7, 8 and 9 below, and had unreasonably small capital, and/or had incurred debts beyond their respective ability to pay.  In this claim, the term "insolvent" is used with respect to each of the Debtors in the sense that the sum of each of the Debtors' respective debts exceeded all of its respective property, at a fair valuation.

6.    By February, 2009, and possibly even earlier than that, federal regulators, including the FDIC, had assumed effective control of BUFSB.  Among other things, BUFSB conceded to the regulators' extensive powers over itself and its operations; the regulators required the management of BUFC to keep them fully informed of their plans and to obtain their consent for taking many actions; and the managers cooperated with the regulators in achieving the regulators' goal of reducing their overall costs in handling the collapse and anticipated Receivership of BUFSB.

7.    Upon information and belief, in the two-year period beginning May 22, 2007, during which time one or more of the Debtors were insolvent or were rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors engaged in transactions that, directly and indirectly, transferred interests in property to BUFSB at a time when such Debtors were insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration.  Also, upon information and belief, one or more of those transactions may have been carried out with actual intent to hinder, delay, or defraud creditors of one or more of the Debtors.  Upon information and

belief, each of these transactions substantially and immediately diminished the net worth of one or more of the Debtors.

8.    Based on the evidence currently available to the Debtors, the following transactions (without limitation), occurring within two years of the filing of the Debtors' bankruptcy petitions, directly or indirectly transferred interests in property from BUFC, BUFS, and/or CRE, to BUFSB and/or BUFSB's subsidiaries under the circumstances described in paragraph 7 above.[2]

a.  In or about September, 2007, BUFC transferred $80 million to BUFSB,[3] without receiving any consideration in return for such transfer.

b.  Some time in or about July or August, 2008, BUFC transferred an additional $80 million to BUFSB,[4] without receiving any consideration in return for such transfer, but at the insistence of the OTS, such transfer was backdated to reflect such transfer as having been made as of June 30, 2008.

c.  On or about August 7, 2008, BUFC transferred $15 million to Bear Stearns, which transfer, upon information and belief, may have been for the benefit of BUFSB.  On or about August 13, 2008, BUFC received a transfer in the amount of $15 million from BUFSB.  It is presently unknown whether the August 13, 2008 $15 million transfer from BUFSB to BUFC is related to the August 7, 2008 $15 million transfer from BUFC to Bear Stearns.

d.  During the two years before their bankruptcy filings, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in Attachment 13 hereto for professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, and payments reflected as intercompany advances described in Attachment 14 hereto.  The value of the property transferred by the Debtors through such payments is currently unknown to Claimants.

e.  During the two years before their bankruptcy filings, one or more of the Debtors failed to collect market value payments for services rendered to BUFSB, including, for example, the payments described in Attachment 15 hereto.  The value of the property thus transferred by the Debtors is presently unknown to Claimants.

f.  To the extent that the transactions described herein are determined not to have been made by any of the Debtors to BUFSB and/or any subsidiaries of

---

[2] The monetary amounts set forth in this list are based on the evidence currently available to the Debtors, and are without prejudice to restatement as further information becomes available.

[3] See BankUnited Financial Corporation Form 10-K for the fiscal year ended September 30, 2007.

[4] See BankUnited Financial Corporation Form 10-Q for the period ended June 30, 2008.

BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the past two years are avoidable by the Debtors.

9.    Based on the evidence currently available to the Debtors, a number of transactions occurring more than two, but less than four years, before the filing of the Debtors' bankruptcy petitions, appear to have directly or indirectly transferred property or value from one or more of the Debtors to BUFSB and/or its subsidiaries, including the transfers set forth below.  Subject to further investigation, upon information and belief, at some point in time one or more of the Debtors may have been insolvent or may have been rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors may have engaged in transactions that, directly and indirectly, transferred interests in property to BUFSB at a time when such Debtors may have been insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration.  Upon information and belief, one or more of these transactions may have substantially and immediately diminished the net worth of one or more of the Debtors.[5]

a.  In or about June, 2005, BUFC transferred $30 million to BUFSB,[6] without receiving any apparent consideration in return for such transfer.

b.  In or about September, 2005, BUFC transferred $25 million to BUFSB,[7] without receiving any apparent consideration in return for such transfer.

c.  In or about December, 2005, BUFC transferred $15 million to BUFSB,[8] without receiving any apparent consideration in return for such transfer.

d.  In or about June, 2006, BUFC transferred $75 million to BUFSB,[9] without receiving any apparent consideration in return for such transfer.

e.  In or about September, 2006, BUFC transferred $40 million to BUFSB,[10] without receiving any apparent consideration in return for such transfer.

f.  During the period from four years before its bankruptcy filing to two years before its bankruptcy filing, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in Attachment 13 hereto for professional fees and expenses to

---

[5] *Supra*, note 2.

[6] *Supra*, note 3.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, and payments reflected as intercompany advances described in Attachment 14 hereto. The value of the property transferred by the Debtors through such payments is currently unknown to Claimants.

g. During the period from four years before its bankruptcy filing to two years before its bankruptcy filing, one or more of the Debtors failed to collect market value payments for services rendered to BUFSB, including, for example, the payments described in Attachment 15 hereto. The value of the property thus transferred by the Debtors is presently unknown to Claimants.

h. To the extent that the transactions described herein are determined not to have been made by any of the Debtors to BUFSB and/or any subsidiaries of BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the period from four years before its bankruptcy filing to two years before its bankruptcy filing are avoidable by the Debtors.

10. All of the transactions described in paragraphs 7, 8 and 9 above were made with the full knowledge and acquiescence (and, in some cases the insistence) of the federal regulators, and one or more of the transactions described in paragraphs 7, 8 and 9 above may have been made with the actual intent, held by both BUFC's then-managers and the federal regulators who controlled those managers, of hindering, delaying, or defrauding the creditors of one or more of the Debtors.

11. Upon information and belief, in the one-year period beginning May 22, 2008, during which time one or more of the Debtors were insolvent, one or more of the Debtors made one or more transfers (a) to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

12. Upon information and belief, in the ninety-day period beginning February 21, 2009, during which time one or more of the Debtors were insolvent, one or more of the Debtors made one or more transfers (a) to or for the benefit of one or more creditors, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code. Upon information and belief, and based on the evidence currently available to the Debtors, the foregoing transfers include (without limitation) a transfer

4

from BUFC to BUFSB in the amount believed to be approximately $7.9 million or more[11] made during the ninety-day period before the filing of the Debtors' bankruptcy petitions, in respect of claims by BUFSB against BUFC under the Income Tax Allocation Agreement discussed in Attachment 11.

13.    On May 21, 2009, the OTS closed BUFSB and appointed the FDIC as its receiver.  On this date, the FDIC entered into a Purchase and Assumption Agreement with New Bank providing for the sale of certain assets of BUFSB to New Bank and the assumption of certain liabilities of BUFSB by New Bank.

## B.    CLAIMS

14.    Sections 548 and 544(b) of the Bankruptcy Code provide for the avoidance of fraudulent transfers made by a Debtor.  Section 548 authorizes the avoidance of certain transfers of interests in property made on or within two years before the filing of the bankruptcy petition.  Under § 548(a)(1)(A), a transfer may be avoided if made with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.  Under § 548(a)(1)(B), a transfer may be avoided if less than reasonably equivalent value was received in exchange for the transfer and the Debtor either (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

15.    Section 544(b) of the Bankruptcy Code incorporates relevant state fraudulent transfer law, which is Florida state law with respect to the Debtors' claims against the FDIC as receiver for BUFSB.  The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 *et seq*., incorporated through 11 U.S.C. § 544(b), provides for the avoidance of transfers (A) made with actual intent to hinder, delay, or defraud any creditor of the debtor, or (B) made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and as to which the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) was insolvent at that time or became insolvent as a result of the transfer or obligation.  The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 *et seq*., incorporated through § 544(b), further provides for the avoidance of a transfer if the transfer was made to an insider for

---

[11] *Supra*, note 2.

an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

16.     Section 547(b) of the Bankruptcy Code provides for the avoidance of preferential transfers made by a Debtor.  Subject to certain applicable statutory defenses, a transfer of an interest of a debtor in property may be avoided if made (a) to or for the benefit of a creditor; (b) for or on account of an antecedent debt owed by the debtor before such transfer was made; (c) made while the debtor was insolvent; (d) made (i) on or within 90 days before the date of the filing of the debtor's bankruptcy petition or (ii) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (e) that enabled such creditor to receive more than such creditor would receive if (i) the debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

17.     Sections 544 and 548 cover not only direct transfers of property by the Debtors, but also all transactions in any form that effectively transfer value away from the Debtors and thereby reduce their respective net worth.

18.     The transfers of interests in property described in paragraphs 7, 8 and 9 above (and listed to the extent presently known in paragraphs 8 and 9 above) may be avoidable fraudulent transfers under §§ 548(a)(1)(A), 548(a)(1)(B), and 544(b) of the Bankruptcy Code.

19.     The transfers occurring on or after May 22, 2007 and described in paragraphs 7, 8 and 9 above (and listed to the extent presently known in paragraphs 8 and 9 above) may be avoidable under § 548(a)(1)(A) because (1) they took place within two years before the filing of the Debtors' Chapter 11 petitions; and (2) they may have been made with the actual intent to hinder, delay, or defraud the Debtors' creditors (such intent may have been held both by the BUFC management at the time and by the FDIC and other regulators, who were in control of BUFC and whose intent may be imputed for purposes of § 548(a)(1)(A)).

20.     The transfers occurring on or after May 22, 2007 and described in paragraphs 7, 8 and 9 above (and listed to the extent known in paragraphs 8 and 9 above) may be avoidable under § 548(a)(1)(B) because (1) they took place within two years before the filing of the Debtors' Chapter 11 petitions; (2) transfers by a parent to a subsidiary that will benefit only a third party are not transfers for reasonably equivalent value, and one or more of the respective Debtors may not have received reasonably equivalent value for the transfers made; and (3) one or more of the Debtors may have been insolvent or may have been rendered insolvent by these transfers, and/or may have been left with unreasonably small capital, and/or either may have intended or believed at the time that its debts were beyond its ability to pay, and/or such transfers may have been to or for the benefit of an insider, or such obligations may have been incurred to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

21.     The transfers described in paragraphs 7, 8 and 9 above (and listed to the extent known in paragraphs 8 and 9 above) may be avoidable under § 544(b) because they occurred more than two, but less than four years before the filing of the Debtors' Chapter 11 petitions, and may have been made (A) with actual intent (both management's and the FDIC's) to hinder, delay, or defraud any creditor of one or more of the Debtors; (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and one or more of the respective Debtors: (i) may have been engaged or may have been about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; (ii) may have intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) may have been insolvent at that time or may have become insolvent as a result of the transfer or obligation; or (C) to an insider for an antecedent debt, one or more of the respective Debtors may have been insolvent at that time, and the insider may have had reasonable cause to believe that such Debtor was insolvent.

22.     The transfers occurring on or after May 22, 2008 and described in paragraph 11 above may be avoidable under § 547(b) because (1) they took place within the year before the filing of the Debtors' Chapter 11 petitions; (2) one or more of the Debtors may have been insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) were made for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

23.     The transfers occurring on or after February 21, 2009 and described in paragraph 12 above may be avoidable under § 547(b) because (1) they took place within 90 days before the filing of the Debtors' Chapter 11 petitions; (2) one or more of the Debtors may have been insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, (b) were made for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

24.     The Debtors hereby demand allowance and payment in full of the claims described above, including without limitation the return of all of the interests in property (or their value) transferred pursuant to the transactions listed in paragraphs 7, 8, 9, 11 and 12 above in the amount of at least $367.9 million, as well as in all other presently unknown transactions described in paragraphs 7, 8, 9, 11 and 12 above, together with interest from the date of each transfer.

25.     The transfers of property described and set forth in paragraphs 7, 8, 9, 11, and 12 above may also be void and/or voidable by one or more of the Debtors on the separate grounds of:

        a.      failure of consideration;

        b.      unjust enrichment; and

        c.      unconscionability.

One or more of the Debtors accordingly may be entitled to an appropriate remedy to recover the value of all of the improperly transferred property, including the remedies of (1) an equitable lien, (2) a constructive trust, and (3) a resulting trust, each encompassing or comprising all of the assets of BUFSB to the extent necessary to provide full relief to one or more of such Debtors.

26.     At various times during the period covered by this claim, BUFSB may have engaged in a conspiracy or joint action with certain other parties, including federal regulators, the intent and result of which were to injure the Debtors and their creditors. As a result of this action, BUFSB may be liable to the Debtors for all losses occurring through those actions.

27.     BUFSB may be liable to the Debtors for indemnity or contribution with respect to any claims against the Debtors, including without limitation any claims asserted by any federal or state governments or regulatory agency as well as by any bank receivership.

28.     Because the claims set forth above are based on void and avoidable transactions, they should be entitled to priority ahead of claims asserted by BUFSB's depositors and other general creditors, all of which should be subordinated to the claims set forth herein.  Accordingly, the FDIC is obliged to provide full (100%) payment of each claim (with interest), not a reduced or "pro rata" percentage.

29.     To the extent that the FDIC may claim that insufficient funds remain in the Receivership to pay in full any or all of the claims asserted herein, FDIC-Corporate is responsible for full payment of those claims.

**ATTACHMENT 17**
**INDEMNIFICATION, CONTRIBUTION AND REIMBURSEMENT**

## A. SUMMARY OF FACTS

Persons or entities have asserted or may assert claims against Claimants for acts or omissions of BUFSB and/or BUFSB's subsidiaries. To the extent such claims are or have been asserted and Claimants are required to defend such claims and/or are determined to have any liability for such claims, Claimants assert claims against BUFSB for indemnification, contribution, and reimbursement, including (without limitation) with respect to the following:

- On September 16, 2008, a class action lawsuit was filed against Alfred Camner, Ramiro Ortiz and Humberto Lopez in the United States District Court for the Southern District of Florida, Case No. 08-CV-22572. The allegations of wrongdoing asserted against Messrs. Camner, Ortiz and Lopez involve or may involve acts or omissions that one or more of them committed for or on behalf of BUFSB and/or BUFSB's subsidiaries. Messrs. Camner, Ortiz and Lopez may have demanded indemnification from Claimants for the cost of their respective defense of this lawsuit, for which Claimants may have provided a limited indemnification prior to May 21, 2009. Currently, Messrs. Camner, Ortiz and Lopez are seeking relief from the automatic stay in effect in the Debtors' bankruptcy cases, in order to obtain reimbursement for their defense costs from Claimants' Directors and Officers insurance policies in effect from November 10, 2007 to November 10, 2008. Claimants hereby demand payment in full of the amounts paid to date by Claimants to Messrs. Camner, Ortiz and Lopez, at least to the extent those payments relate to allegations of wrongdoing by them in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries. Similarly, Claimants hereby demand payment in full for any proceeds paid by the insurers that issued Claimants' Directors and Officers policies for the period 2007-2008, at least to the extent those proceeds relate to the allegations of wrongdoing by Messrs. Camner, Ortiz and Lopez in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries.

- By letter dated January 6, 2009, Branch Banking & Trust Company (**"BB&T"**) issued a formal demand for money from Claimants, alleging that Claimants or their agents unlawfully entered the premises, removed appliances and equipment, and demolished parts of a house for which Claimants had foreclosed their mortgage interest and sold to BB&T via an auction held on April 30, 2008. BB&T alleges that the trespass, demolition and theft rendered the property unsalable. To the extent allegations of wrongdoing asserted by this plaintiff or other similarly situated plaintiffs relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Claimants demand payments in full for all corresponding defense costs and/or judgments or settlements.

- Capital One Bank has filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging negligence in permitting an individual to open a bank account in its name. To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Claimants demand payments in full for all corresponding defense costs and/or judgments or settlements.

- George W. Ward, Jr., et al. has filed a lawsuit in the Court of Common Pleas, Hamilton County, Ohio, claiming misrepresentation by a mortgage broker in a consumer mortgage loan matter. To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Claimants demand payments in full for all corresponding defense costs and/or judgments or settlements.

## B.    CLAIMS

Claimants hereby demand allowance and payment in full of the claim described above, including without limitation all corresponding defense costs and/or judgments or settlements, the dollar amount of which is unknown at this time.

**ATTACHMENT 18**
**OTHER AMOUNTS DUE**

**A.     SUMMARY OF FACTS**

Claimants may have other claims against BUFSB, as to which BUFSB is liable to Claimants.

**B.     CLAIMS**

Claimants hereby demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time.

*MIA 180,755,532v6*

**EXHIBIT 14.1**

## BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 10/20/06 | $30,975 | CK DEP IFMG 10/20 |
| 10/27/06 | $234,904 | INTERCO TX SHARING 2005 |
| 10/31/06 | $300 | TX CRT XFR TO BFC RECOV |
| 10/31/06 | $7,923 | BUFS PAYROLL |
| 10/31/06 | $8,274 | BUFS PAYROLL |
| 10/31/06 | $58 | BUFS PAYROLL |
| 10/31/06 | $3,390 | REV BUFS PAYROLL |
| 11/01/06 | $293,227 | REV J103106EE |
| 11/06/06 | $23,201 | BUFS 2006 BONUS SALARY |
| 11/06/06 | $1,775 | BUFS 2006 BONUS FICA |
| 11/15/06 | $3,997 | BUFS PAYROLL |
| 11/15/06 | $3,997 | BUFS PAYROLL |
| 11/20/06 | $26,370 | CK DEP IFMG 11/20 |
| 11/30/06 | $3,997 | BUFS PAYROLL |
| 11/30/06 | $5,065 | BUFS PAYROLL |
| 11/30/06 | $277 | BUFS PAYROLL |
| 12/13/06 | $22,204 | R ORTIZ.RS TAXES REVERS |
| 12/15/06 | $3,997 | BUFS PAYROLL |
| 12/15/06 | $3,997 | BUFS PAYROLL |
| 12/15/06 | $1,226 | RSTK TX VT |
| 12/20/06 | $41,300 | CK DEP IFMG-12/20 |
| 12/21/06 | $902,973 | CLEAR INTERCO THROUGH 1 |
| 12/29/06 | $5,000 | BUFS 12/29/06 DEF DED |
| 12/31/06 | $404 | TX EFFECT AMTZ I/C GAIN |
| 01/12/06 | $1,000 | REV J012907A |
| 01/12/06 | $1,000 | REV J013107BB |
| 01/12/06 | $1,000 | REV J012907A |
| 01/02/07 | $1,036 | BUFS 123106 RSTK |
| 01/12/07 | $1,000 | MAT STATE OF ISRAEL-BU |
| 01/19/07 | $31,885 | CK DEP IFMG 01/19 |
| 01/23/07 | $67,187 | RS TAXES RETURNED |
| 01/29/07 | $2,000 | INC TAX REC |
| 02/01/07 | $99,990 | TRANS RS EXP.FORD SHULA |
| 02/20/07 | $25,905 | CK DEP IFMG 02/20 |
| 02/28/07 | $9,468 | BUFS DIRECT DEP REV |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---|---|
| 02/28/07 | $3,739 | BUFS PAY TAX REV |
| 02/28/07 | $885 | BUFS 401K REV |
| 02/28/07 | $4,708 | RCLS SNL FINANCIAL PPD |
| 03/02/07 | $4,230 | DIVIDEND PAID REIT |
| 03/14/07 | $417 | BFC PAYROLL - RETRO |
| 03/14/07 | $7,399 | BFC PAYROLL - SALARIES |
| 03/14/07 | $185 | BFC PAYROLL - SICK |
| 03/14/07 | $606 | BFC PAYROLL - FICA EMPL |
| 03/14/07 | $121 | STATE & FED UNEMPL |
| 03/20/07 | $46,203 | CK DEP IFMG 03/20 |
| 03/22/07 | $2,086,146 | CLR INTERCO THRU 022807 |
| 03/27/07 | $225 | DIVIDEND PAID REIT FEB |
| 03/27/07 | $225 | DIVIDEND PAID REIT MARC |
| 03/30/07 | $1,768 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $3,480 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $184 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,426 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $3,346 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,603 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $1,281 | DEFAULT-DEDUCTIONS |
| 03/30/07 | $13,088 | NET PAY |
| 03/30/07 | $45 | DIVIDEND PAID REIT |
| 03/30/07 | $66,270 | TRANSF EXP MAR07 |
| 03/31/07 | $408 | TX EFFECT AMTZ I/C GAIN |
| 04/13/07 | $1,768 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $3,480 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $184 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,534 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $3,346 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,603 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $1,451 | DEFAULT-DEDUCTIONS |
| 04/13/07 | $13,367 | NET PAY |
| 04/13/07 | $3,365 | BUFS PAYROLL REV |
| 04/13/07 | $3,365 | BUFS PAYROLL REV |
| 04/23/07 | $35,787 | CK DEP IFMG-4/23 |
| 05/15/07 | $1,290 | DIRECT DEPOSIT |
| 05/15/07 | $83 | MED REIMB & DEP CARE |

# BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|------:|-------|
| 05/15/07 | $400 | PAYROLL TAXES |
| 05/15/07 | $151 | 401K |
| 05/24/07 | $38,931 | CK DEP IFMG-5/23 |
| 06/14/07 | $5,764 | BUFS PAYROLL REV |
| 06/20/07 | $73,932 | CK DEP IFMG 06/20 |
| 06/25/07 | $1,448,716 | CLEAR INTERCO THROUGH 5 |
| 06/29/07 | $282 | BUFS PYRL TAXES |
| 06/29/07 | $7,732 | BUFS RSTK TX VT DTE |
| 06/29/07 | $1,364 | RSTK TX  VT DTE |
| 06/30/07 | $2,969 | TAX EFFECT AMTZ LC GAIN |
| 07/20/07 | $27,189 | CK DEP IFMG 07/20 |
| 08/02/07 | $440 | RS TAXES REVERSAL |
| 08/15/07 | $3,712 | BUFS PAYROLL |
| 08/15/07 | $3,907 | 0815 FILE 99797,99798 |
| 08/20/07 | $31,189 | CK DEP IFMG 08/20 |
| 08/31/07 | $3,939 | BUFS CC 592 PAYROLL |
| 09/14/07 | $2,054,419 | CLEAR INTERCO THRU 0831 |
| 09/24/07 | $55,399 | CK DEP IFMG 0924 |
| 09/28/07 | $50 | PAYROLL TAXES |
| 09/30/07 | $1,064 | TX EFFECT AMTZ I/C GAIN |
| 10/15/07 | $100 | NET PAY |
| 10/15/07 | $2,534 | BUFS 401K REV |
| 10/22/07 | $24,073 | CK DEP IFMG 10/22 |
| 11/06/07 | $63,085 | BFC BONUS-2007 SALARIES |
| 11/06/07 | $1,441 | BFC BONUS-2007 FICA |
| 11/06/07 | $21,715 | BUFC BONUS-2007 SALARIE |
| 11/06/07 | $1,661 | BUFC BONUS-2007 FICA |
| 11/06/07 | $55 | BUFC BONUS-2007 UNEMP |
| 11/21/07 | $43,516 | CJ DEO IFMG 11/21 |
| 11/30/07 | $1,178 | BUFS PAYROLL REV |
| 11/30/07 | $100 | GIFT CARD FILE #700008 |
| 11/30/07 | $32,892 | RCLS CLARITAS CC552 |
| 11/30/07 | $2,599,391 | CLEAR INTERCO THROUGH 1 |
| 12/01/07 | $80,000 | COR TR SFEES FROM BUFC- |
| 12/01/07 | $80,000 | COR TR SFEES FROM BUFC- |
| 12/15/07 | $3,446 | REV J121407A |
| 12/15/07 | $3,446 | REV BUFS RSTK TX VT |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---:|---|
| 12/21/07 | $66,492 | CK DEP IFMG-12/21 |
| 12/26/07 | $3,500 | RCLS PWHC-#1030938389-0 |
| 12/26/07 | $103,500 | RCLS PWHC-#1090940537-0 |
| 12/31/07 | $1,247 | RSTK TX VT DTE |
| 12/31/07 | $1,354 | BUFS PAYROLL REV |
| 12/31/07 | $376 | TX EFFECT AMTX LC GAIN |
| 01/02/08 | $2,606 | RSTK TX VT DTE |
| 01/02/08 | $389 | BUFS PAYROLL REV |
| 01/02/08 | $2,300 | BUFS PAYROLL REV |
| 01/15/08 | $117 | BUFS PAYROLL REV |
| 01/24/08 | $27,900 | CK DEP IFMG-1/24 |
| 01/31/08 | $117 | BUFS PAYROLL REV |
| 02/14/08 | $117 | BUFS PAYROLL 021508 |
| 02/25/08 | $478,259 | CK DEP IFMG 02/25 |
| 02/27/08 | $36,677 | W/T BUFS SETTLEMENT |
| 02/28/08 | $117 | BUFS PAYROLL |
| 02/29/08 | $500 | BUFS GIFT/AWARD 2406 |
| 02/29/08 | $1,000 | BUFS GIFT/AWARD 099769 |
| 02/29/08 | $700 | BUFS GIFT/AWARD 099775 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099781 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099790 |
| 02/29/08 | $1,000 | BUFS GIFT/AWARD 099793 |
| 02/29/08 | $750 | BUFS GIFT/AWARD 099789 |
| 02/29/08 | $500 | BUFS GIFT/AWARD 099783 |
| 02/29/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 02/29/08 | $1,024,763 | CLEAR INTERCO THROUGH 2 |
| 03/01/08 | $211 | INTERCO W/BU |
| 03/01/08 | $512 | BUFS SUIER RATE ADJ 2/2 |
| 03/12/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 03/12/08 | $1,875 | REV J033108AA |
| 03/12/08 | $1,875 | INDEPENDENT FIN MARKETI |
| 03/14/08 | $6 | DEFAULT-DEDUCTIONS 002585 |
| 03/14/08 | $140 | BUFS PAYROLL |
| 03/19/08 | $4,437 | TRANSF DEPR EXP OCT 08 |
| 03/19/08 | $4,115 | TRANS DEPR EXP NOV 08 |
| 03/20/08 | $69,180 | DEPOSIT IFMG 3/20 |
| 03/20/08 | $500,000 | XFER LPL FINWIRE->BUFS |

# BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---|---|
| 03/31/08 | $58,518 | INTERCO BUFS TX SHAR TR |
| 03/31/08 | $6,417 | BUFS PAYROLL |
| 03/31/08 | $1 | BUFS PAYROLL |
| 03/31/08 | $3,770 | BUFS PAYROLL |
| 03/31/08 | $664 | TX EFFECT AMTZ I/C GAIN |
| 03/31/08 | $54,402 | COR SERV FEE   BUFC-FYE0 |
| 04/25/08 | $309 | DEPOSIT IFMG 04/25 |
| 04/30/08 | $5,625 | CLEAR W/T 4/1/08 |
| 05/15/08 | $850 | GIFT CERTIFICATE |
| 05/23/08 | $3,669 | DEPOSIT IFMG 05/23 |
| 05/30/08 | $2,088 | BUFS PAYROLL REV |
| 05/30/08 | $270 | TO ADJ ENTRY FROM FSB T |
| 05/31/08 | $200 | GIFT CERT #700002 |
| 06/13/08 | $252 | RSTK TX VT DTE |
| 06/26/08 | $3,837,745 | CLEAR INTERCO THROUGH 5 |
| 06/30/08 | $346 | TX EFFECT AMTX I/C GAIN |
| 07/11/08 | $16 | RCLS PITNEY BOWES042108 |
| 07/14/08 | $1,820 | TRANS TXS D CAMNER |
| 07/21/08 | $0 | RR DONN-#1202531800 |
| 07/25/08 | $20,731 | SHULA BU CK141059 |
| 07/30/08 | $5,000 | PAY ADJ FILE 99794 #82 |
| 08/14/08 | $1,368 | BUFS PAYROLL REV |
| 08/29/08 | $25 | BUFS PAYROLL REV |
| 08/29/08 | $4,400 | CR FOR INV LF M SHAPIRO |
| 08/31/08 | $15,563 | DIRECT DEPOSIT |
| 08/31/08 | $15 | PAC CONTRIBUTIONS |
| 08/31/08 | $6,423 | PAYROLL TAXES |
| 08/31/08 | $135 | UNITED WAY |
| 08/31/08 | $1,617 | 401K |
| 08/31/08 | $925 | CR FOR INV LF M SHAPIRO |
| 09/04/08 | $100,000 | REV J082908FF |
| 09/26/08 | $4,887,554 | CLEAR INTERCO   THROUGH |
| 09/30/08 | $9 | PAYROLL TAXES |
| 09/30/08 | $235 | RSTK TX VT DTE |
| 09/30/08 | $1,253 | BUFS PAYROLL REV |
| 09/30/08 | $4,400 | COR 09/25/08 |
| 09/30/08 | $1,034 | TX EFFECT AMTZ I/C GAIN |

# BankUnited Financial Corporation
## Schedule of Intercompany Receivables
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|---|---|---|
| 09/30/08 | $955,276 | COR MNGMT FEE BFC-FYE08 |
| 09/30/08 | $95,424 | COR SERV FEE   BUFC-FYE0 |
| 10/15/08 | $111 | BUFS PAY TAX REV |
| 10/16/08 | $23,999 | COR SERV FEE   BUFC |
| 10/31/08 | $2,106 | BUFS PAYROLL REVERSALS |
| 10/31/08 | $5,962 | AJE 2 RCLS OCT08 |
| 10/31/08 | $456 | AJE 3 RCLS PAYROLL TAXE |
| 10/31/08 | $486 | AJE 10 RCLS OCT BENEFIT |
| 10/31/08 | $1,262 | AJE 12 BENEFITS-RESTRUC |
| 12/15/08 | $7 | PAYROLL TAXES |
| 12/15/08 | $261 | RSTK TX VT DTE |
| 12/15/08 | $350 | BUFS PAYROLL REV |
| 12/15/08 | $22 | BUFS PAYROLL |
| 12/30/08 | $15 | BUFS PAYROLL REV |
| 12/31/08 | $4,554,261 | CLEAR INTERCO THRU 11-3 |
| 12/31/08 | $408 | TX EFFECT AMTZ I/C GAIN |
| 12/31/08 | $422 | RSTK TX VT DTE |
| 12/31/08 | $33 | BUFS PAYROLL REV |
| 01/30/09 | $3,763 | DIRECT DEPOSIT |
| 01/30/09 | $10 | PAC CONTRIBUTIONS |
| 01/30/09 | $2,197 | PAYROLL TAXES |
| 01/30/09 | $75 | STDSP |
| 01/30/09 | $100 | UNITED WAY |
| 01/30/09 | $1,279 | 401K |
| 02/27/09 | $32,309 | TRANSF ANNUITY EXP FEB0 |
| 02/28/09 | $139,276 | COR MNGMT FEE BFC-FYE09 |
| 03/13/09 | $324,024 | CLEAR INTERCOM-BFC PAYR |
| 03/19/09 | $2,610 | RCLS HUMBERTO LOPEZ-#12 |
| 03/25/09 | $10 | RCLS EOI DIRECT 547883 |
| 03/31/09 | $42 | BUFS PAYROLL REV |
| 03/31/09 | $2,147 | TX EFFECT AMTZ L/C GAIN |
| 04/02/09 | $69,744 | CLEAR INTERCOM-BFC PAYR |
| 04/20/09 | $263,833 | CLEAR INTERCOM-BFC PAYR |
| 04/30/09 | $17,934,795 | 2008 TAX SETTLEMENT OF |
| 04/30/09 | $7,460 | 2008 TAX SETTLEMENT OF |
| 04/30/09 | $437 | RCLS PROC LOSSES |
| 04/30/09 | $52,105 | CLEAR INTERCOMPANY-BFC |

**BankUnited Financial Corporation**
**Schedule of Intercompany Receivables**
For the Period October 1, 2006 - May 21, 2009

| Date | Debit | Notes |
|------|-------|-------|
| 05/13/09 | $147,282 | CLEAR INTERCOM-BFC PAYR |
| **TOTAL:** | **$    46,902,483** | |