## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BankUnited Financial Corporation, *et al.,* | Case No. 09-19940-LMI |
| Debtors. | (Jointly Administered) |
| BANKUNITED FINANCIAL CORPORATION, BANKUNITED FINANCIAL SERVICES, INC.; CRE AMERICA CORPORATION, and BU REALTY CORPORATION, | Adv. No. 10-02872-LMI |
| Plaintiffs, | |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of BankUnited, FSB, | |
| Defendant. | |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' CORRECTED[1] OBJECTION TO MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO RECONSIDER, AMEND OR MODIFY PURSUANT TO FED. R. CIV. P. 59(e), 60(b) AND SECTION 105(a) OF THE BANKRUPTCY CODE THE ORDER OF REFERRAL TO MEDIATION

## REQUEST FOR EXPEDITED HEARING

*Though the Defendant has stated that it consents to the entry of an order on its Motion to Reconsider without a hearing, the Committee believes that a hearing is warranted in this matter given the breach of confidentiality/ethics violation allegations raised by the Defendant.*

---

[1] The Objection is corrected to include Exhibit A, which did not upload completely with the original pleading.

US2008 2514530.8

*Moreover, the Committee asserts that an expedited hearing is both warranted and necessary. In particular, the Court's Mediation Order requires, among other things, that mediation be conducted no later than April 30, 2011. Given the limited time remaining before mediation must be completed, the Committee believes it is imperative to have a hearing on an expedited basis to allow the parties ample time to resolve these preliminary matters before they must turn their attention to the substantive issues that must be addressed in the mediation.[2]*

The official committee of unsecured creditors (the "Committee") for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby objects to the Motion of the Federal Deposit Insurance Corporation to Reconsider, Amend or Modify Pursuant to Fed. R. Civ. P. 59(e), 60(b) and Section 105(a) of the Bankruptcy Code the Order of Referral to Mediation [Adv. No. 122] (the "Motion to Reconsider"), filed in the above-captioned adversary proceeding on April 13, 2011.  In support of this Objection, the Committee hereby represents as follows:

## PRELIMINARY STATEMENT

1.     As the Committee expressed in its Response of the Official Committee of Unsecured Creditors to Plaintiffs' Notice Regarding Status of Settlement Discussions and Request For Referral to Mediation [Adv. No. 117] (the "Response"), the Committee is not optimistic that court-ordered mediation will be successful in this case.  This view is not borne of spite, capriciousness or disregard for the process or the parties — but rather is an opinion formed after observing these proceedings for the past four months, including the Defendant's sudden and unexplained withdrawal from settlement discussions on or about March 31, 2011, until which time the negotiations among the parties were completely professional and cordial.   The Committee's view on the likely outcome of mediation, however, should not be taken to mean

---

[2]    The Committee does not seek to delay the presently scheduled mediation and has been working cooperatively with the Plaintiffs, the Defendant and the mediator and already has participated in a pre-mediation session with the mediator.

US2008 2514530.8

that the Committee has any intention of impeding or otherwise delaying a process that the Plaintiffs and this Court believe to be a useful means of bringing the parties toward a successful resolution of the issues currently in dispute in this adversary proceeding and the contested matter initiated by the FDIC's stay relief motion. Because the Court has ordered mediation, the Committee believes its interests, and (more importantly) the interests of all of the unsecured creditors of the Debtors' estates that the Committee represents, will be better served if the Committee is a willing, active and <u>constructive</u> participant therein. This is consistent with the Committee's approach to, and participation in, the settlement negotiations with the Plaintiffs and the Defendant since they began nearly four months ago. This fact was explicitly recognized at the hearing held on February 24, 2011 (the "<u>February Hearing</u>") where the Plaintiffs described the Committee as having taken "an active role, and a constructive role in these negotiations." <u>See</u> Transcript of February 24, 2011 Hearing at 16:11 – 16:13, <u>BankUnited Financial Corporation v.</u> <u>Federal Deposit Insurance Corporation (In re BankUnited Financial Corporation, et al.)</u>, Case No. 10-2872 (the "<u>Transcript</u>").[3] Sitting on the sidelines in "timeout" because of unfounded and untrue allegations by the Defendant will not benefit anyone, and will likely do great harm to these estates.

      2.       It is under these circumstances that the Committee finds the Defendant's attack on the Committee puzzling, uninformed and, ultimately, irrelevant. The Plaintiffs, not the Committee, have (a) initiated and lead all telephonic and in-person conferences with the Defendant (many of which, on information and belief, were conducted <u>without</u> the Committee's participation); (b) delivered all written or oral offers to the Defendant; (c) received all written or

---

[3]     A copy of the Transcript is attached hereto as <u>Exhibit A</u>.

US2008 2514530.8

oral offers from the Defendant; (d) authored all pleadings filed on behalf of the Plaintiffs; and (e) otherwise taken the lead role with respect to every aspect of the settlement of these matters.[4] Thus, the Defendant's position that the Committee is to blame for the breakdown in settlement discussions is, in addition to being totally irrelevant, quite simply incorrect. For these reasons, there is no basis upon which to justify the exclusion of the Committee from the mediation.

3.     The Committee's interests lie in the resolution of these matters for the benefit of its constituency, not in continued and pointless delay and the incurrence of unnecessary professional fees. Ironically, the solution suggested by the Defendant — leaving the Plaintiffs to continuously update and consult with the Committee while discussions are ongoing only to risk a later objection by the Committee even if the parties present at the mediation agree — is likely to create more delay and expense for the Debtors' estates than simply letting the Committee participate in the mediation. Contrary to the Defendant's position, the best chance for the settlement of these matters is by leaving the Mediation Order as it currently exists, with the Committee having the option to participate. While the Committee will not be surprised if mediation is unsuccessful, it also recognizes that its interests are better served through thoughtful and earnest participation.

4.     Ultimately, the Defendant cannot satisfy the standards for reconsideration of the Mediation Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules"). Absent a showing of "extraordinary circumstances" or "extreme and unexpected hardship," reconsideration simply is not appropriate in the case. In addition, the Defendant's

---

[4]     Recognizing the important role of the Committee in these cases, the Plaintiffs appropriately consulted the Committee on all, or substantially all, aspects of the negotiations with the Defendant. The Plaintiffs and the Committee had no disagreements about what should be, and ultimately what was, communicated to the Defendant throughout the course of the negotiations.

- 4 -

citation to section 105(a) of title 11, United States Code (the "<u>Bankruptcy Code</u>") provides no further support for its request.

5.      The Committee also objects to and vigorously disputes the Defendant's accusation that the Committee's Response contained disclosures of confidential information, violations of Rule 408 of the Federal Rules of Evidence and violations of other unspecified rules of professional conduct. For the reasons set forth below, nothing contained in the Response was improper or otherwise violated any rule of procedure or conduct and, in fact, was a generic summary of information already disclosed to this Court at the February Hearing. In an effort to provide an update to this Court, Plaintiffs' counsel noted the existence of the settlement discussions between the parties, outlined the matters that were the subject of the settlement discussions (including a discussion of the possible inclusion or exclusion of the tax ownership issue referenced in the Committee's Response) and offered an opinion of the likely outcome. The Defendant was present at the February Hearing and agreed that the Plaintiffs' presentation was both accurate and free of any improper disclosures. The Defendant cannot now complain about the Committee's expression of an opinion on the same subject matter. Nonetheless, given the seriousness of these accusations, the Committee requests that an expedited hearing be held to determine the merits of the Motion to Reconsider and also to allow the Committee a forum to rebut the baseless and completely unsupported accusations set forth therein.

6.      For these reasons and the reasons set forth below, the Committee objects to the Motion to Reconsider and respectfully requests that it be denied.

## THE OBJECTION

### A.      There is No Basis To Reconsider the Mediation Order

7.      Through the Motion to Reconsider, the Defendant requests that the Court reconsider, amend, or modify the Mediation Order, pursuant to Rules 59(e) and 60(b) of the

US2008 2514530.8

Federal Rules of Civil Procedure (the "Federal Rules"), as well as the Court's general equitable powers under section 105(a) of title 11, United States Code (the "Bankruptcy Code"). The Committee submits that the Motion to Reconsider fails to offer a sufficient basis for reconsideration under either Rule 60(b) or section 105(a) of the Bankruptcy Code, and should accordingly be denied.

        8.     Rule 60(b) of the Federal Rules provides as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Though the Defendant has not specified which of the six bases set forth in Federal Rule 60(b) is the basis of its request, a plain reading of the Rule reveals that the first five subsections of Federal Rule 60(b) are plainly inapplicable to the present matter. Only subsection (b)(6), the so-called "catch-all" provision, could have any conceivable application to this matter. Accordingly, the Committee will limit its analysis to Federal Rule 60(b)(6).

        9.     Under Eleventh Circuit law, "[t]he vacation of a judgment under Rule 60(b)(6) is an extraordinary remedy." Booker v. Singletary, 90 F.3d 440, 442 (11th Cir. 1997). A movant seeking relief under that subsection must "show extraordinary circumstances to justify reopening a final judgment." White v. Jones, 2011 WL 118253, at *3 (11th Cir. Jan. 13, 2011) (citing Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)).

- 6 -

10.    It is not enough, however, simply to show that such extraordinary circumstances exist. A movant must also demonstrate that "absent [the requested] relief, an extreme and unexpected hardship will result." White, 2011 WL 118253, at *3 (citing Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984)).

11.    The Motion to Reconsider plainly fails to satisfy this standard. The Defendant has not alleged, let alone offered any factual support for, the existence of extraordinary circumstances or resulting extreme and unexpected hardship sufficient to justify reconsideration of the Mediation Order. Its sole basis for reconsideration is its baseless (and ultimately incorrect) allegation that the Committee may delay, complicate and reduce the likelihood of success of mediation — acts which are against the Committee's own interests. Even if these allegations were true (which they are not), they would not rise to the level of extreme hardship necessary to justify reconsideration. Accordingly, the Committee submits that the Motion to Reconsider fails to satisfy any of the requirements of Rule 60(b) of the Federal Rules, as interpreted in this Circuit, and should, therefore be denied.

12.    The Motion to Reconsider also references section 105(a) of the Bankruptcy Code as a possible basis for reconsideration. Section 105(a) permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry of the provisions of this title . . . ." 11 U.S.C. § 105(a). Section 105, however, cannot provide an independent basis to reconsider the Mediation Order. See In re Pan Am Corp., 162 B.R. 667, 672 (S.D.N.Y. 1993) (holding that Federal Rule 60, and not section 105(a) of the Bankruptcy Code, "is the [sole] basis upon which bankruptcy courts should exercise their discretionary power to grant relief from final orders"); In re Fleetwood Enters., Inc., 427 B.R. 852, 864 (Bankr. C.D. Cal. 2010) ("Relief under § 105(a) complements that under Fed. R. Civ. P. 60(b). But that power cannot be used to circumvent the

US2008 2514530.8

requirements of Fed. R. Civ. P. 60(b) or other clear statutory language.") (internal citations omitted).  Because the Defendant is ineligible under Federal Rule 60(b) (as discussed above), Section 105 of the Bankruptcy Code is of no help.

13.     The cases cited by the Defendant do not change this result.  In addition to arising out of dramatically different factual situations, such cases offer no discussion of the applicability of section 105(a) vis-à-vis Federal Rule 60(b)(6) and little more than bare recitations of a bankruptcy court's power to reconsider its own orders.  In view of the foregoing, and given the availability of Federal Rule 60(b) as a basis upon which to seek reconsideration or modification of the Mediation Order, the Committee submits that section 105(a) of the Bankruptcy Code is inapplicable to the present dispute.

14.     Accordingly, the Committee objects to the Motion to Reconsider on the grounds that the Defendant has not offered sufficient legal basis for the relief requested therein.

**B.      The Committee Has not Violated Rule 408 of the Federal Rules of Evidence, Nor Has it Violated any Other Rule of Procedure or Conduct**

15.     In the Response, the Committee described its opinion of the reasons for the breakdown in the settlement discussions with the Defendant.   In the Committee's view, settlement discussions failed as a result of:

> the Defendant's:   (a) unilateral decision to withdraw their own offer that they previously viewed as satisfactory (pending review and approval from decision makers within their organization); and (b) demand that any further settlement discussions must include the settlement of the tax refund ownership dispute (which had not previously been part of the discussions) on terms that were totally unacceptable to the Plaintiff and the Committee.

Response at 2.

16.     In its Motion to Reconsider, the Defendant seems to take significant issue with the Committee's inclusion of these generic statements.  In particular, the Defendant alleges that the

- 8 -

Response includes an inappropriate disclosure of "confidential settlement discussions." Motion to Reconsider at 2. Moreover, in a later footnote, the FDIC states that "[t]he Committee's apparent disregard for the sanctity of settlement discussions and potential (or actual) violation of Federal Rule of Evidence 408 and various other rules of ethics is troubling." Id. at 3 n. 1.

17.    These accusations are without merit. First, the generic statements provided by the Committee in its Response reflect, at worst, the Committee's <u>opinion</u> about the Defendant's <u>conduct</u> during settlement negotiations. The statement in the Response does not disclose the terms of any offer of settlement or any other information disclosed to the Plaintiffs or the Committee in the course of settlement (confidential or otherwise). Moreover, in an effort to provide an informative update to this Court, the Plaintiffs provided a relatively detailed summary of these matters at the February Hearing. <u>See</u> Transcript at 3:17 – 16:7. Among the issues presented by the Plaintiffs to the Court was: (a) the fact that the Plaintiffs and Defendant were in the midst of the settlement negotiations; (b) the progress of such settlement discussions; (c) a summary of the issues that were being considered in the settlement discussions and which issues would be left for this Court to decide; and (d) the Plaintiffs' opinion on whether the settlement discussion were likely to lead to a settlement agreement. <u>Id.</u>

18.    The Defendant's counsel participated in the February Hearing in person and raised no objection to either the disclosure of the fact of settlement nor the disclosure of other details of the settlement negotiations. In fact, immediately following the Plaintiffs' summary of the settlement discussions, counsel for the Defendant stated "I really echo [Plaintiffs' counsel's] comments to the Court, I think he did accurately describe the status of our discussions, without betraying any confidences of our negotiations over the past several months." Id at 19:19 – 22. The Defendant cannot now complain that the Committee's opinion on the same subject matter

- 9 -

(which revealed nothing that had not already been revealed) breaches a confidence or is otherwise improper.

19.     Second, disclosure by the Committee of its opinion of the progression of settlement negotiations (in contrast to an explicit disclosure of the terms of an offer of settlement) is not a violation of confidence, absent an explicit agreement to keep such an opinion confidential.  Of course, the Committee has not entered into any such agreement and, more importantly, (a) the fact that the parties were in the midst of settlement discussions was disclosed to this Court on numerous occasions, including at the February Hearing; and (b) the fact that the settlement discussions had broken down due to, in the Plaintiffs' opinion, "differences in substance and approach" also was previously disclosed.  See Plaintiffs' Notice Regarding Status of Settlement Discussions and Request For Referral to Mediation [Adv. No. 116] (the "Notice of Mediation") at 2.  There can be no procedural or ethical violation arising out of the Committee's response to the Plaintiffs' opinion with its own opinion.

20.     Moreover, the Defendant's citation to Rule 408 of the Federal Rules of Evidence as a source of support is equally unavailing.  Rule 408 of the Federal Rules of Evidence only restricts a parties use, as admissible evidence to prove liability or amount, of the fact of an offer to compromise or conduct or statements made during efforts to compromise.  See Fed. R. Evid. 408 ("Evidence of the following *is not admissible* on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction . . . .") (emphasis added); BPI Energy, Inc. v. IEC (Montgomery), LLC, 2007 WL 3355363, at *1 (S.D. Ill. Nov. 13, 2007) (finding Rule 408 inapplicable to allegations set forth in a party's complaint, on the basis that such allegations were not "evidence"); see also Carr v. Health Ins. Plan of Greater New York,

Inc., 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) (noting that Rule 408 is "not a blanket rule of inadmissibility for any and all statements in the settlement context"). Where, as here, a party does not seek to offer communications or impressions into evidence for any of the foregoing purposes (or at all), Rule 408 is simply not applicable. Of course, the Committee offered its opinion of the reasons settlement negotiations fell apart to (a) contrast its opinion of why discussions broke down with the Plaintiffs' opinion, as set forth in its Notice of Mediation; and (b) to substantiate its opinion that mediation will be of little benefit in this case. Under these circumstances, there simply is no basis upon which to argue that the Committee has violated Rule 408 of the Federal Rules of Evidence.

21.    Finally, the Defendant has alleged that the Committee has potentially or actually violated "various other rules of ethics." See Motion to Reconsider at 3 n.1. Despite the seriousness of this allegation, the Defendant did not further support its accusations with actual citations to the rules of conduct to which it refers or the facts upon which its allegations were based. Absent such further support, such allegations should be disregarded, and Defendant should be admonished to refrain from further allegations of such an inflammatory nature absent supporting evidence.

22.    Under these circumstances, the Committee objects to the Motion to Reconsider and requests that it be denied with prejudice.

Respectfully submitted this 15th day of April, 2011.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Todd C. Meyers
Todd C. Meyers
Georgia Bar No. 503756
Robbin S. Rahman
Georgia Bar No. 592151

- 11 -

1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
tmeyers@kilpatricktownsend.com

-and-

Kozyak Tropin & Throckmorton, P.A.

/s/ Corali Lopez-Castro
Corali Lopez-Castro, Esq.
Florida Bar No. 863830
2525 Ponce De Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800 (Telephone)
(305) 372-3508 (Facsimile)
clc@kttlaw.com

Counsel for the Official Committee of Unsecured
Creditors of BankUnited Financial Corporation, et al

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011, I electronically filed the foregoing document with
the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served
this day on all counsel of record or pro se parties identified below via transmission of Notices of
Electronic Filing generated by CM/ECF who are authorized to receive electronically Notices of
Electronic Filing in this adversary proceeding.

/s/ Todd C. Meyers
Todd C. Meyers

Mark D. Bloom
Email: bloomm@gtlaw.com

John R. Dodd
Email: doddj@gtlaw.com

Scott M. Grossman
Email: grossmansm@gtlaw.com

Geoffrey T. Raicht
Email: graicht@mwe.com F

US2008 2514530.8

# EXHIBIT A

Page 1

1            UNITED STATES BANKRUPTCY COURT

               SOUTHERN DISTRICT OF FLORIDA

2

3

4    IN RE:                CASE NO. 09-19940-LMI

5    BANKUNITED FINANCIAL CORPORATION,

6              Debtor.

     _____/

7

8    BANKUNITED FINANCIAL CORPORATION,

9              Plaintiff,

10   vs.                   ADV. NO. 10-2872-LMI

11   FEDERAL DEPOSIT INSURANCE CORPORATION,

12             Defendant.

     _____/

13

14             STATUS CONFERENCE

15             February 24, 2011

16        The above-entitled cause came on for hearing

17   before the Honorable Laurel Myerson Isicoff, one of the

18   Judges in the UNITED STATES BANKRUPTCY COURT, in and for

19   the SOUTHERN DISTRICT OF FLORIDA, at 51 SW 1st Avenue,

20   Miami, Miami-Dade County, Florida on February 24, 2011,

21   commencing at or about 9:00 a.m., and the following

22   proceedings were had.

23

24             Reported By:

               Cheryl L. Jenkins, RPR

25

1                      APPEARANCES:

2

             KOZYAK TROPIN & THROCKMORTON, by

3               CORALI LOPEZ-CASTRO, Esquire
     On behalf of the unsecured creditors' committee

4

5                  GREENBERG TRAURIG, by
                   MARK BLOOM, Esquire

6             On behalf of the plaintiffs

7

             McDERMOTT WILL & EMERY, by

8             GEOFFREY T. RAICHT, Esquire
                  On behalf of the FDIC

9

10                 ALSO PRESENT

11                JOSEPH LUZINSKI

12               - - - - - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1              THE COURT:  All right.  We're here on

2    BankUnited versus FDIC.  I'll take appearances.

3              MR. BLOOM:  Good morning, your Honor.

4    Mark Bloom, of Greenberg Traurig, on behalf of the

5    plaintiffs in the adversary proceeding, which include the

6    three debtors and their non-debtor affiliate, BU Realty.

7              Also present is their chief restructuring

8    officer, Joseph Luzinski.

9              THE COURT:  Thank you.

10             MR. RAICHT:  Good morning, your Honor.

11   Geoffrey Raicht, McDermott Will & Emery for the FDIC.

12             THE COURT:  Good morning.

13             MS. LOPEZ-CASTRO:  Good morning, your Honor.

14   Cori Lopez-Castro, local counsel for the unsecured

15   creditors' committee.

16             THE COURT:  All right.  Gentleman.

17             MR. BLOOM:  Thank you, your Honor.

18             We are here today at the joint request of

19   all of the parties in the adversary proceeding for a

20   status conference, which, with the Court's indulgence, was

21   continued from January 26th until today.

22             During the period of time since we initially

23   requested the status conference back in December, along

24   with a rollback of various deadlines in the adversary

25   proceedings, the parties have made considerable progress,

Page 4

1    substantial progress.  In fact, somewhere in that red well

2    I have Version 10 of the term sheet that's been

3    circulating among Mr. Raicht, and counsel for the

4    committee, and our firm, in reaching a far ranging

5    settlement, that if finalized and approved by the board of

6    directors of the FDIC and the debtors, and then, of

7    course, by the Court under Rule 9019, would reduce

8    substantially the judicial labor before this and other

9    Courts, and the expense to the estate by hundreds of

10   thousands of dollars, if not more.

11              Your Honor has commented from time to time,

12   often in the context of interim fee applications, that the

13   Court only sees the tip of the iceberg in terms of the

14   activity in the case.

15              The status conference today is an effort on

16   our part, without betraying the confidentiality of any

17   settlement negotiations, to give the Court a bit of a

18   glimpse between the surface to justify what we have been

19   doing in the time that we have asked for, and received the

20   Court's indulgence with repeated extensions of time, and

21   to lay out what's currently before this and other courts,

22   how that workload would be reduced by the settlement, how

23   the parties see the settlement process working through,

24   and what respectfully we would request of the Court in

25   order to accommodate that process.

1          First, if I could just briefly set out what

2    matters are pending in this and other courts.

3          The FDIC filed last year what we referred to

4    as the tax stay relief motion, it seeks alternatively a

5    determination from this Court that the automatic stay does

6    not apply to certain tax rights that it asserts,

7    principally to the filing of separate federal tax returns

8    for the fiscal year 2008, which was the year for these

9    debtors ending September 30th, 2009, that being the year

10   in which the bank was closed and the Chapter 11 cases were

11   filed, or alternatively the FDIC seeks stay relief.  That

12   matter has been fully briefed and is ripe for decision

13   but -- and I see your Honor's law clerk leaving the

14   Courtroom right now, in repeated telephone conversations

15   with the Court's law clerk, Mr. Raicht and I have asked

16   that the Court defer ruling while we negotiate the larger

17   settlement, of which the resolution of that dispute over

18   the right to file tax returns would be the centerpiece.

19              THE COURT:  Okay.

20              MR. BLOOM:  The next thing that's pending

21   before the courts is an appeal filed by the plaintiffs in

22   this litigation from Judge Huck's order to the

23   11th Circuit.  In that appeal we have been working with

24   the 11th Circuit mediator, and have jointly obtained,

25   again, extensions of briefing deadlines so as to

Page 6

1    accommodate the settlement negotiations.

2              There is also, of course, pending a separate

3    appeal in the District Court of litigation between the

4    FDIC and the committee on behalf of the estate with

5    respect to the rights to pursue certain causes of action

6    against directors or officers of the debtors.

7              But most of all what is before this Court,

8    and what we have asked for and obtained rollbacks of

9    discovery and other deadlines in, is this adversary

10   proceeding in which we conduct the status conference

11   today.  It asserts Counts 1 through 24, although we did

12   drop seven of those counts as part of the amended

13   complaint that we filed, such that 17 remain.

14             While the meat of that adversary proceeding

15   is in Counts 1 and 2, the devil is in the details of

16   Counts 3 through 24, and if the Court would permit me

17   briefly just to go through basically what that lawsuit is

18   about and how it will be affected by the settlement, I

19   think that might aid your Honor's understanding of why

20   we're here and what we're about to ask for, and I can

21   assure the Court it's nothing drastic or dramatic, it's an

22   effort to get us to the point where we can say, Judge,

23   we're done, we have settled, we've got a 9019 motion that

24   takes so much of this out of your and other judges'

25   courtrooms, out of your calendars, off your dockets, that

Page 7

1    everyone hopefully will be the better for it.

2                Count 1 is an objection that we have filed

3    to the FDIC's proofs of claim, which as they've been

4    amended downward in amount by the FDIC, still assert

5    claims against the lead debtor, BankUnited Financial

6    Corporation, in the amount of $1.467 billion for the

7    breach of alleged commitments by BUFC to maintain the

8    capital of its failed bank.  Those claims also assert

9    other indeterminant amounts against BUFC and the other two

10   debtors.

11               It's important to point out that if that

12   claim were allowed as presently filed, as a priority claim

13   under Section 507(a)(9) of the Bankruptcy Code, it would,

14   to use the phrase that's been coined in our discussions,

15   block out the sun, it would eliminate the prospect for any

16   recovery by any bondholders, or any other general

17   unsecured creditors under any form of plan, be it a

18   reorganization plan, or a liquidating plan, or even if we

19   converted to Chapter 7.  That claim would occupy a

20   priority that would preclude any funds passing through to

21   any other creditors.

22               The litigation in respect of that claim

23   that's founded on various documents could take -- well, on

24   the Colonial Bank case it took more than a year to get to

25   a point where the Court entered summary judgment.  It

Page 8

1    would involve significant lay and expert deposition and

2    testimony into the content, and meaning, and legal

3    significance of a number of the documents on which the

4    FDIC receiver could rely in support of that capital

5    maintenance claim.

6              Count 2 is another meaty controversy, it is

7    a declaratory judgment initiated by the plaintiffs with

8    respect to the right to receive as much as $50 million in

9    anticipated tax refunds that would be paid into the tax

10   escrow, as approved in a stipulation before this Court

11   some time ago, at the outside of the case.  That

12   $50 million would be paid upon approval by the IRS of tax

13   returns for fiscal years 2007 and 2008, ending 9-30-2008,

14   2009, respectfully.

15             Those are the returns, of course, that are

16   put into controversy by the FDIC's motion -- tax stay

17   relief motion, as we have referred to before.

18             The parties have filed cross-motions for

19   summary judgment on Count 2.  The cross-motions have been

20   fully briefed, and those could be set for argument in the

21   event that the right to refunds is not included in the

22   scope of the settlement.

23             The remaining 15 counts arise from the

24   extensive, historic pre-bankruptcy relationship between

25   BankUnited Financial Corporation, and the other plaintiffs

Page 9

1    on the one hand, and BankUnited Federal Savings Bank on

2    the other.  The FDIC, of course, is the receiver for

3    BankUnited Federal Savings Bank, and they form the basis

4    of the proof of claims -- the proofs of claim that we

5    filed in the BUFSB receivership.

6            The FDIC receiver did not, within the

7    statutory period applicable to such claims in the

8    receivership, either formally allow or disallow those

9    claims, or give us notice of their disallowance, and we

10   sought in the litigation in front of Judge Huck, which

11   jurisdictional had to be filed in District Court, we

12   sought summary judgment on -- to allow those claims on

13   that basis.

14           It is that denial that's the subject of our

15   appeal to the 11th Circuit, that I mention a few moments

16   ago.

17           If the appeal were to proceed, and the

18   briefing has been stayed by agreement of the parties, with

19   the cooperation of the 11th Circuit mediator, but if that

20   appeal were to proceed, and we were to prevail in the

21   11th Circuit, then it would seem to remain that this Court

22   could simply enter judgment for us on all of those counts

23   without having to address the merits of each and every

24   one.

25           On the other hand, if the appeal were

1  unsuccessful, and this is an area, as Judge Huck

2  commented, on which other circuit courts and even

3  commentators, have not written extensively, if the appeal

4  is unsuccessful, then the parties would need to take

5  extensive lay and expert discovery into those remaining 15

6  counts.

7          The discovery would be messy and expensive.

8  In fact, through Mr. Luzinski's office, the debtor has

9  already obtained estimates well in excess of $100,000 just

10  for the cost of an outside vendor to set up a data room, a

11  document room for all of the documents that would be

12  relevant to the discovery.

13          Again, it goes back -- the claims that are

14  at issue go back as long as the statutes of limitations

15  allow in respect of extensive internal dealings,

16  inter-company dealings between and among the various

17  entities.

18          In addition, many of the witnesses who would

19  have knowledge, and would be -- whose testimony would be

20  key on one side or the other, are themselves potential

21  targets of litigation to be brought either by the

22  committee or by the FDIC, depending upon the outcome of

23  the appeal from your Honor's ruling, and as such it is not

24  likely that it would be easy to obtain cooperation or

25  testimony from any of them, in light of the exposure that

1    they face based upon those other things.

2            So, all of this is intertwined in ways that

3    perhaps are not readily apparent from the record, and we

4    thought it would be helpful to set that out for the Court

5    so that your Honor can get a full perspective beyond maybe

6    the public tip of the iceberg.

7            THE COURT:  Okay.  Thank you.

8            MR. BLOOM:  Just to give a very brief flavor

9    of those remaining 15 counts, Counts 3 through 6 seek the

10   turnover of certain personal property and funds that fell

11   under the control of the FDIC, as receiver at the time

12   that the bank was closed, in May of '09, and of course in

13   addition to discovery and proof, you have the issue of the

14   FDIC contending that the receivership is insolvent and

15   unable to pay any allowed claims, while the debtor is

16   contending that these are different because these are

17   turnover counts that look to specifically identifiable

18   items of property, such that the insolvency of the

19   receivership of no moment because -- is of no moment

20   because that property is ours and not theres.

21           Counts 7 through 9 seek the avoidance of

22   insider preferences and fraudulent transfers, the

23   discovery of which would be cumbersome and protracted.

24   Being candid with the Court, those transfers go back for

25   the full four-year range under Section 544, they include

Page 12

1    certain insider preferences that were paid beyond the

2    90 days, and so these are not the type of slam dunk

3    preference or avoidance actions in which the debtor has a

4    strong presumption of insolvency, rebuttable presumption

5    of insolvency during the 90-day period, we would have to

6    prove insolvency at various points in time, and I say that

7    freely in front of Mr. Raicht because the nature of the

8    discussions that we've had have been so candid and far

9    ranging, that I don't think we have very many secrets left

10   from each other, at least not about this.

11              THE COURT:  Okay.

12              MR. BLOOM:  Counts 10 through 24, I won't go

13   through in any detail, but they include all of the typical

14   claims that one might expect would arise from companies --

15   between companies that were formerly aligned in their

16   interests, and now based upon the turn of events, find

17   themselves no longer aligned, but separately controlled,

18   with separate estates to which they owe separate fiduciary

19   duties, they include all kinds of claims for indemnity,

20   contribution, reimbursements, subrogation, compensation

21   for use of various personal and intangible property,

22   reimbursement for professional fees, inter-company claims

23   for advances, ledger advances, up to $47 million that were

24   made, as to which the paper trail would need to be checked

25   and run through extensively.

1    And so to the extent that the parties have

2    requested these multiple extensions from the Court, it is

3    not simply to prolong or put off the day of reckoning, but

4    rather to work behind the scenes constructively on a

5    settlement that would eliminate the need for us to go down

6    these many twisted and tortured and expensive paths.

7    Not surprisingly, I would add that the FDIC

8    receiver has raised multiple affirmative defenses, and

9    they are based in both fact and law, all of which would

10   have to be litigated, as well.

11   The settlement discussions to which I

12   referred, and the circulation of the 10 updated versions

13   of the term sheet, if successful, would address and

14   substantially resolve all but a very few of those issues,

15   and result in a tremendous savings of time and labor for

16   this and other courts, and money for the estates.

17   Without going too far into the substance of

18   the proposed settlement, I believe that I can tell the

19   Court the following:  First, as I mentioned, the

20   centerpiece of the settlement would be an agreement on the

21   form and content of an amended tax return, to be filed

22   jointly by parties for the fiscal year -- or for the

23   fiscal year ending September 30th, 2009, along with

24   certain related tax filings, they would be filed jointly

25   by the debtors and the FDIC receiver, it would eliminate

1   the need for the Court to rule on the FDIC receiver's tax

2   stay relief motion, which would be withdrawn, it would

3   unite the efforts of the debtors and the FDIC receiver

4   collectively to seek payment of that estimated $50 million

5   tax refund into the escrow agreement that was -- escrow

6   account that was established pursuant to this Court's

7   order, and hopefully expedite the payment of that refund,

8   it would address the FDIC receiver's issues about its

9   standing to pursue that refund in front of the IRS, and

10  would be a very helpful step toward resolving all of the

11  other issues, in that, except for certain carved out

12  claims that the parties were working as recently as

13  yesterday to narrow, it would result in the withdrawal of

14  the FDIC's proofs of claim against the estates, including

15  that $1.467 billion capital maintenance claim that

16  otherwise would be entitled to priority under

17  Section 507(a)(9), would result in the dismissal of our

18  Count 3 through 24 of the complaint, and a substantial

19  pairing back of our Count 1 objection to their claim, so

20  as to address only the limited claim that might be

21  preserved on the part of the FDIC.  As a result of that

22  settlement, we would also dismiss the 11th Circuit appeal.

23           So, if the parties can come to a final

24  agreement on the form and content of the amended tax

25  return, and our tax accountants at Morris & Brown, and the

1   FDIC's counterparts to our tax advisors, were working

2   through the day yesterday, and into the evening, looking

3   at information, there is a draft form of return that's

4   been circulated and amended between them several times,

5   don't know if there are 10 versions of that, like there

6   are of the term sheet, but it's been under extensive

7   review, if we can get that agreement together and resolve

8   the lingering issues about the scope of the so-called

9   carved out claims, then we would be prepared, subject to

10  formal approval by the boards of directors of the debtors

11  and the FDIC, to file a 9019 motion to approve the

12  settlement.

13          There also remains the possibility, that

14  when finally resolved, the settlement could include an

15  allocation of the tax refunds, but the parties are

16  prepared to proceed with the remainder of the settlement

17  even if the tax refund issue is not resolved.

18          If that refund issue is resolved, then the

19  settlement would include a dismissal of our Count 2, and a

20  resolution of the entire adversary proceeding, off the

21  table, off the docket, gone.

22          If there is no resolution of the tax refund,

23  then presumably the parties would ask that the Court set

24  oral argument on the pending cross-motions for summary

25  judgement that are directed to that count.

1              I should add that the settlement under

2    negotiation expressly does not include a resolution of the

3    issues regarding the competing rights of the committee, on

4    behalf of the estates, and the FDIC, on behalf of the

5    receivership, to pursue claims against the directors and

6    officers, that will be resolved on appeal, or perhaps by

7    separate negotiations involving separate parties.

8              THE COURT:  Okay.

9              MR. BLOOM:  To conclude, what do we request

10   of the Court to get this done?  And I believe I speak

11   jointly for the FDIC receiver, and also for the committee,

12   which has taken an active role, and a constructive role in

13   these negotiations.  We would ask the Court to give us a

14   deadline of March 31st by which we either reach and

15   document a settlement and file a Rule 9019 motion to

16   approve it, or file a statement with the Court advising

17   that there is not going to be any form of settlement

18   forthcoming.

19              That date may seem a bit far off based upon

20   how close the parties appear to be to a settlement, but in

21   candor, I'll tell the Court that the FDIC advised us from

22   the very outside of these negotiations that a formal

23   process of obtaining approval from its board of directors

24   can require 45 to 60 days notice to get on a calendar of a

25   meeting of their board of directors.  Certainly this is

1  not the only failed bank receivership on which those

2  people are working right now.

3           The debtors, for their part, would be

4  prepared to file the 9019 motion in advance of that formal

5  board approval by the FDIC, so as to help expedite that

6  process by letting the notice period for their meeting,

7  and the 9019 notice period run concurrently for at least a

8  bit of the time, with the hearing to be set on a date

9  convenient to the Court, after the FDIC receiver expects

10 that it would have obtained approval, or hopefully not

11 rejection, but some action from the board on the

12 settlement.

13          To accommodate that schedule, we would ask

14 once again, and hopefully for the last time, that the

15 Court roll back all of the adversary proceeding deadlines

16 that are set forth in Paragraph 2 of the December 22nd

17 order, which is Docket Entry Number 98, a rollback of

18 60 days.

19          With apologies to the Court for the lengthy

20 explanation, I think, quite frankly, that that explanation

21 was necessary, and hopefully helpful to the Court to

22 demonstrate why that extension is not sought for purposes

23 of delay, but rather because we are addressing a great

24 many issues, they are complex, they would be expensive to

25 resolve, they are intertwined and interrelated on many

1    levels, like a Rubrics Cube, even standing alone, for

2    example, we just ask the Court to consider the

3    complexities associated with two separate sets of

4    accountants, neither one of which had an involvement in

5    the prior tax returns that have been filed for prior

6    years.

7                Coming into the cases, coming into these

8    situations with literally thousands and thousands of

9    financial documents necessary to prepare tax returns, each

10   one having, at the outset, somewhat different sets of

11   documents, and maybe different information than the other

12   did, and beginning to work together to try and file a

13   consolidated tax return for a number of entities, covering

14   a tumultuous year, in which a loss in excess of $2 billion

15   is being reported.

16               The efforts on the tax fronts have been

17   extensive, the negotiations on all of the other fronts

18   have been extensive and in good faith.  We are not, I can

19   assure the Court, seeking to delay, there are other

20   deadlines running in this case as well, and we think it

21   would simply save considerable time, money and judicial

22   labor if the Court would indulge us this further bit and

23   accommodate the request that I believe we convey jointly

24   for those extensions.

25               If the Court has any questions for me, I'm

Page 19

1    happy to address them, and, if not, certainly Mr. Raicht

2    or Ms. Lopez-Castro may have something to add or change.

3             THE COURT:  Okay.  I have no questions for

4    you, Mr. Bloom and I thank you very much for the detailed

5    background.  I was actually not aware of the 11th Circuit

6    appeal, and so that was helpful to understand.

7             Judge Cristol always reminds me that we are

8    here to resolve disputes, not to create them, and so

9    within reason it makes sense to give the parties,

10   especially in something as complex as this, the

11   opportunity to resolve it, although I do fantasize about

12   ruling on that automatic stay tax refund issue.  So,

13   perhaps I'll just have to write a law review article.

14            Okay.  So, let me hear from Mr. Raicht, and

15   then Ms. Lopez-Castro, and then ---

16            MR. RAICHT:  Good morning, your Honor.

17   Geoff Raicht of McDermott Will & Emery on behalf of the

18   FDIC.

19            I really echo Mr. Bloom's comments to the

20   Court, I think that he did accurately describe the status

21   of our discussions, without betraying any confidences of

22   our negotiations over the past several months, and just to

23   -- I know your Honor has heard from him extensively, and

24   probably appreciates the reasons why, but as your Honor

25   knows, this is case that the FDIC and the debtor and the

Page 20

1    committee don't often agree on anything, and we are -- we

2    have made substantial progress, and we are close, as

3    Mr. Bloom said, we don't have a deal yet, but we are

4    close, and I think the extra time that we are requesting

5    to get it hopefully will get us there.

6            THE COURT:  Let me ask you a question,

7    having represented the FSLIC in the late '80s, I am

8    painfully aware of the approval process, and so I want to

9    ask you whether realistically -- you know, Mr. Bloom had

10   stated if you all settle by March 31st, that a motion, a

11   9090 motion would be filed, with a hearing set after an

12   anticipated FDIC board meeting date.

13           Realistically, do you have a feeling for

14   whether that would take place within a 90-day period, a

15   six-month period?

16           MR. RAICHT:  Well, my understanding,

17   your Honor, is that if we were to have a settlement

18   agreement in place, the FDIC can start its board approval

19   process, even without the motion being field.  So we can

20   get it going.

21           There is, as your Honor I'm sure is aware,

22   there is a bureaucratic, that's a bad word, I'm sure, but

23   there is a process that it has to go through, the FDIC,

24   you have to make a case to the board as to why this makes

25   sense, there is multiple -- not only layers within the

Page 21

1   legal department, but because we are dealing with

2   receivership assets, and in some capacity tax, there is

3   multiple silos that have to be brought into this, it is a

4   complicated process.

5               I am advised that once we have something

6   that is agreed, certainly at this level, and as I said to

7   Mr. Bloom, you know, when we tell Mr. Bloom that this is a

8   deal that we think can be done, it's not done at the

9   lowest level, we believe it has a high likelihood of

10  success, of course the board can do what it wants in its

11  wisdom, but I believe 60 days would be an appropriate

12  amount of time, especially if we can jump start it.

13              In other cases that I've worked on with the

14  FDIC, that has been a range that has worked, or at

15  least --

16              THE COURT:  Okay.

17              MR. RAICHT:  -- an expectation.

18              THE COURT:  All right.  Thank you.

19              All right.  Ms. Lopez-Castro, did you have

20  anything to add?

21              MS. LOPEZ-CASTRO:  No, your Honor.  They

22  have reflected accurately the tone of the negotiations and

23  what we're trying to accomplish in this Court, so I have

24  nothing to add.

25              THE COURT:  All right.  Well then here is

Page 22

1   what I -- I appreciate the status.  Obviously there is no

2   particular relief other than your request, Mr. Bloom, that

3   I roll back the deadlines in Docket Entry 68 an additional

4   60 days, which I will do, so just prepare an agreed order

5   resetting the deadlines.  I would then ask that since

6   we're talking about a hearing date sometime at the end of

7   May or early June, that you don't need to stop by

8   Ms. Sanabria and reserve the date now, you can get that

9   if, and hopefully when you file the 9019 motion soon after

10  the March 31st deadline, okay, and I thank you all very

11  much.

12              MS. LOPEZ-CASTRO:  Thank you.

13              THE COURT:  Congratulations on at least

14  trying.

15              (Laughter.)

16              THE COURT:  All right.  Have a good rest of

17  your day.

18              MR. RAICHT:  Thank you, your Honor.

19

20

21

22              (Thereupon, the hearing was concluded.)

23

24

25

Page 23

1

2

3                                CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE  :

7

8                I, Cheryl L. Jenkins, RPR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were taken before me at the date and place as stated in

12   the caption hereto on page 1; that the foregoing

13   computer-aided transcription is a true record of my

14   stenographic notes taken at said proceedings.

15                WITNESS my hand this 14th day of April,

16   2011.

17

18

19          _____

20                CHERYL L. JENKINS, RPR,

21            Court Reporter and Notary Public

             in and for the State of Florida at Large

22                Commission #DD 920461

                  December 27, 2013

23

24

25